Jahan C. Sagafi
Cal. Bar No. 224887
Katrina Eiland
Cal. Bar No. 275701
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
keiland@outtengolden.com

Thomas Saenz
Cal. Bar No. 159430
Victor Viramontes
Cal. Bar No. 214158
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile:   (213) 629-0266
tsaenz@maldef.org
vviramontes@maldef.org

*Attorney for Plaintiffs and the Proposed Class*
*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MITZIE PEREZ, individually and on behalf of all others similarly situated, and CALIFORNIA LEAGUE OF UNITED LATIN AMERICAN CITIZENS, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO & CO. and WELLS FARGO, N.A., <br><br> Defendants. | **CASE NO. 17 Civ. 454** <br><br> **COMPLAINT FOR VIOLATION OF 42 U.S.C. § 1981** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Mitzie Perez (the "Individual Plaintiff"), individually and on behalf of all others similarly situated, and the California League of United Latin American Citizens ("California LULAC") (collectively, "Plaintiffs") by their attorneys, bring the following allegations against Defendants Wells Fargo & Co. and Wells Fargo, N.A. ("Wells Fargo" or "Defendants"):

## SUMMARY OF CLAIM

1. Plaintiff Mitzie Perez, individually and on behalf of all others similarly situated, and California LULAC bring this case against Wells Fargo for unlawful discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981"), the Unruh Civil Rights Act, as codified by California Civil Code §§ 51 *et seq.*, and the Unfair Competition Law, as codified by California Business and Professions Code §§ 17200 *et seq.*

2. Wells Fargo, an American multinational banking and financial services holding company, outright refuses to extend loans to individuals who are not U.S. citizens or permanent residents. This company-wide policy and practice of denying individuals the right to contract for a loan based on alienage is discriminatory and unlawful under Section 1981, Sections 51(b) and 51.5 of the Unruh Civil Rights Act, and Section 17200 of the California Unfair Competition Law.

## PARTIES

*Plaintiff Mitzie Perez*

3. Plaintiff Mitzie Perez is a third-year undergraduate student at the University of California, Riverside, majoring in Gender & Sexuality Studies.

4. Ms. Perez has authorization to work in the U.S. under Deferred Action for Childhood Arrivals ("DACA").

*Plaintiff California LULAC*

5. Plaintiff California LULAC is a Latino organization with members and chapters located in many cities and towns throughout the State of California. Plaintiff California LULAC files this action individually as a distinguished Latino civil rights organization and on behalf of its DACA recipient members, who are also members of the proposed class. One of LULAC's primary functions and purposes is the improvement and advancement of educational

opportunities for persons of Latino and Mexican-American descent or nationality and the protection and defense of the civil rights of this major ethnic and national origin group. As an organization and on behalf of its members, California LULAC has championed the rights of Latino students for decades.

6. Plaintiff California LULAC's members include members of the proposed class. Defendants' policy of denying loans to DACA recipients affects many of California LULAC's members. Additionally, Defendants' policy impedes California LULAC's ability to carry out its mission to advance the educational attainment and civil rights of the Latino population in California and, more broadly, throughout the United States.

*Defendants*

7. Wells Fargo is an American multinational banking and financial services holding company headquartered in San Francisco, California. It is the fourth largest bank in the United States.

8. Wells Fargo & Co. is a Delaware corporation authorized to do business in this state.

9. Wells Fargo, N.A. is a South Dakota corporation authorized to do business in this state.

10. Wells Fargo offers consumers a range of financial services, including private student loans to help undergraduate and graduate students pay for eligible academic expenses.

11. Wells Fargo, by soliciting, conducting, and transacting business in the state of California, engages in continuous, permanent, and substantial activity within the state.

12. Wells Fargo is not a federal enclave and therefore is subject to Plaintiff's Section 1981 claim.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over Plaintiff's Section 1981 claim pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant conducts business within this district.

16. Intradistrict assignment: Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred at Wells Fargo's headquarters located in San Francisco County.

## BACKGROUND

17. On June 15, 2012, President Obama announced that the Department of Homeland Security ("DHS") would no longer remove certain young immigrants under its authority to grant deferred action as embodied in DACA.

18. DACA's purpose, according to President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[1]

19. DACA is a form of deferred action, a discretionary grant of authorized stay by the federal government. Deferred action granted through DACA is valid for two years and is subject to renewal thereafter.

20. DACA mandates that persons who are granted deferred action will be eligible to obtain an Employment Authorization Document (an "EAD" or "federal work permit") and a Social Security number. In other words, those granted deferred action and in possession of an EAD are legally authorized to work in the United States, and can prove their identity.

---

[1] President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited January 30, 2017).

21.     As of March 31, 2016, the United States Citizenship and Immigration Services ("USCIS") has approved over 1.3 million initial and renewal requests for DACA.[2]

22.     There is no federal or state law or regulation that restricts banks from providing financial products to customers because the customer is an alien.  Under federal law, alienage is merely one factor among many used to verify enough information to confirm the true identity of the customer.

23.     For instance, the Federal Financial Institutions Examination Council ("FFIEC") provides uniform principles and standards to offer guidance for federal regulators.  The FFIEC annually publishes the Bank Secrecy Act/Anti-Money Laundering Examination Manual for Money Services, which contains a compliance program called the Customer Identification Program ("CIP"), as required by section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318.  Pursuant to CIP, institutions providing financial services, including banks, must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer.  The goal behind this requirement is to prevent the funding of terrorism both inside and outside of the United States.[3]

24.      According to the Bank Secrecy Act/Anti-Money Laundering Examination Manual, a bank's CIP must contain account-opening procedures detailing the identifying information that must be obtained from each customer.  At a minimum, the bank must obtain the following information from each customer before opening an account: 1) name, 2) date of birth, 3) address,

---

[2] USCIS, Number of I-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status: 2012-2016 (March 31), *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/I821d_performancedata_fy2016_qtr2.pdf (last visited January 30, 2017).

[3] *See* 12 C.F.R. 208.63(b), 211.5(m), 211.24(j) (Board of Governors of the Federal Reserve System); 12 C.F.R. 326.8(b) (Federal Deposit Insurance Corporation); 12 C.F.R. 748.2(b) (National Credit Union Administration); 12 C.F.R. 21.21 (Office of the Comptroller of the Currency); 12 C.F.R. 563.177(b) (Office of Thrift Supervision); and 31 C.F.R. 103.121 (FinCEN).

and 4) identification number (*e.g.*, Social Security number, taxpayer identification number or an alien identification number).[4]

25. The bank's procedure must also describe when it will use documents, non-documentary methods, or a combination of both. Federal banking agencies expect that banks will review an unexpired government-issued form of identification from most customers. The identification must include evidence of the customer's nationality or residence and bear a photograph or similar safeguard.[5]

26. Compliance with the CIP is to ensure that a bank verify enough information to form a reasonable belief that it knows the true identity of the customer.[6]

27. "Opening an account" and a financial services "customer" for purposes of the Bank Secrecy Act/Anti Money Laundering Examination Manual for Money Services includes an individual who has applied for a loan application.[7]

## STATEMENT OF FACTS

**Plaintiff Perez**

28. Ms. Perez is a DACA recipient with an EAD. She is a third-year student at UC Riverside.

29. On August 26, 2016, Ms. Perez sought a student loan through the Wells Fargo website to help pay for college and college-incurred debt. After answering a few preliminary questions, including that she was seeking a loan to pay student expenses, that she was a junior in college, and that she was neither a U.S. citizen nor a permanent resident, she was denied a loan, receiving a message that read: "Thank you for your interest in a Wells Fargo student loan.

---

[4] Fed. Fin. Inst. Examination Council, Bank Secrecy Act/Anti-Money Laundering Examination Manual 54 (2010), *available at* http://www.ffiec.gov/bsa_aml_infobase/documents/bsa_aml_man_2010.pdf (last visited January 30, 2017).
[5] *Id.* at 54 n.48.
[6] *Id.* at 52-4.
[7] *Id.* at 53.

1  However, based on information you provided, we do not have a student loan option that meets
2  your needs.  This could be due to the school you selected, your field of study, and/or your
3  citizenship status."

4  30.  In an attempt to better understand the reason for the denial, Ms. Perez returned to
5  the prior screen and changed the response to the question about citizenship to "I am a permanent
6  resident alien," and she received information about a student loan option.  At the top of the
7  screen there was a note that read: "Based on the citizenship status you provided, a U.S. citizen
8  cosigner will be required for this application."  Ms. Perez was thus denied a student loan due to
9  her citizenship status.  Had Ms. Perez been allowed to apply for a loan, she would have had a
10 cosigner available to meet Wells Fargo's cosigner requirement.

11 31.  As a result of Wells Fargo's denial, Ms. Perez was forced to cover her entire
12 tuition using various credit cards.

13 32.  Had Wells Fargo allowed Ms. Perez to proceed with her loan application, Ms.
14 Perez would have provided Wells Fargo with personal identification documents including her
15 EAD, Social Security number, license and passport—all of which serve to confirm Ms. Perez's
16 identity in order to fulfill CIP requirements, *see infra* pp. 4-6 (section on "CIP Requirements").

17 **Defendants' Policy is Unlawful and Harms Plaintiffs**

18 33.  Wells Fargo's refusal to offer Plaintiff Perez and other DACA recipients who are
19 members of California LULAC an opportunity to contract for private loans because of its arbitrary
20 citizenship requirements is a violation of 42 U.S.C. § 1981.

21 34.  Wells Fargo's refusal to offer Plaintiff Perez and DACA recipients who are
22 members of California LULAC an opportunity to contract for private loans violates California's
23 Unruh Civil Rights Act.

24 35.  Wells Fargo's refusal to offer Plaintiff Perez and DACA recipients who are
25 members of California LULAC an opportunity to contract for private loans violates the California
26 Unfair Competition Law.

27
28

36. In addition, Defendants' unlawful policy harms California LULAC's ability to carry out its mission and forces it to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans from Defendants.

37. There is an actual and substantial controversy between Plaintiffs and Defendants.

## CLASS ACTION ALLEGATIONS

38. Plaintiff Perez brings her class allegations under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of a class defined as follows: All persons within the jurisdiction of the United States who were denied the right to contract for a loan or other financial product by Wells Fargo because they were not U.S. citizens despite satisfying Wells Fargo's CIP requirements between January 30, 2013 and the date of judgment in this action (the "Class").

39. Plaintiff Perez is a member of the Class.

40. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. Wells Fargo has offices throughout the United States, USCIS has approved over 1.3 million initial and renewal requests for DACA, and there are thousands of people who do not meet Wells Fargo's citizenship status requirements. Plaintiffs do not know the precise number of Class members as this information is in Wells Fargo's possession.

41. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether it is Wells Fargo's policy or practice to reject loan applicants because they are not U.S. citizens or permanent residents despite satisfying CIP requirements; (2) whether Wells Fargo's policy as set forth above deprives Plaintiff Perez and the Class of the right to contract in violation of Section 1981; (3) whether Wells Fargo's policy as set forth above deprives Plaintiff Perez and the Class of rights Under the Unruh Civil Rights Act; (4) whether Wells Fargo's policy as set forth above deprives Plaintiff Perez and the Class of rights under the California Unfair Competition Law; (5) whether the Plaintiff Perez and the Class suffered harm by reason of Defendant's unlawful policy; (6) whether Plaintiff Perez and the Class are entitled to compensatory damages; (7) whether Plaintiff Perez and the Class are entitled to punitive damages;

(8) what equitable and injunctive relief for the Class is warranted; and (9) the scope of a resulting permanent injunction.

42. Plaintiff Perez's claims are typical of the claims of the Class: (1) Plaintiff was within the jurisdiction of the United States and not a citizen of the United States; (2) Plaintiff sought a loan from Wells Fargo; and (3) Plaintiff was refused due to her alienage status. All of these claims are substantially shared by each and every class member. All of the claims arise from the same course of conduct by Defendants, and the relief sought is common.

43. Plaintiff Perez will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff Perez has no conflict with any class member. Plaintiff Perez is committed to the goal of having Wells Fargo revise its lending requirements to stop discriminating against Plaintiff Perez and others who are not U.S. citizens.

44. Plaintiff Perez has retained counsel competent and experienced in complex discrimination class actions.

45. The universe of people affected by Wells Fargo's unlawful policy is ascertainable through Defendants' records and therefore the proposed class is ascertainable.

46. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wells Fargo has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. Wells Fargo has refused to extend financial services to anyone who does not fit its citizenship requirements, *i.e.*, the Class. The Class members are entitled to injunctive relief to end Wells Fargo's common, uniform, unfair, and discriminatory policy and/or practice and other make-whole relief.

47. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The Class members have been damaged and are entitled to recovery as a result of Wells Fargo's

1  common, uniform, unfair, and discriminatory policies and practices. Damages are capable of
2  measurement on a classwide basis. The propriety and amount of punitive damages are based on
3  Wells Fargo's conduct, making these issues common to the Class. Plaintiff Perez and the Class
4  will rely on common evidence to resolve their legal and factual questions. There are no pending
5  actions raising similar claims. Defendants engage in continuous, permanent, and substantial
6  activity in California. There will be no undue difficulty in the management of this litigation as a
7  class action.

**FIRST CLAIM FOR RELIEF**
**Alienage Discrimination**
**(42 U.S.C. § 1981)**

48. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

49. Plaintiff Perez brings this claim on her own behalf and on behalf of the Class.

50. Plaintiff California LULAC brings this claim on its behalf.

51. Plaintiff Perez is a person within the jurisdiction of the United States.

52. Plaintiff Perez is an alien.

53. Plaintiff Perez satisfied Wells Fargo's CIP requirements to obtain a private loan.

54. Plaintiff Perez has the right to make and enforce contracts in the United States and is entitled to the full and equal benefits of the law.

55. Wells Fargo intentionally discriminated against Plaintiff Perez and the Class on the basis of alienage by denying them the opportunity to contract for a loan.

56. Wells Fargo's intentional discrimination against Plaintiff Perez and the Class interfered with their right to make and enforce contracts for financial products.

57. Defendant's policy and practice of denying loans based on Plaintiff Perez's and the Class's alienage harmed Plaintiff Perez and the Class and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981. Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans from Defendants.

58. Plaintiffs and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiff Perez and the Class she seek to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

59. Defendant's conduct has caused, and continues to cause, Plaintiff Perez and the members of the Class substantial losses in earnings and other work benefits.

**SECOND CLAIM FOR RELIEF**
**Violation of the Unruh Civil Rights Act**
**(California Civil Code §§ 51 and 52 *et seq.*)**

60. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

61. Plaintiff Perez brings this claim on her own behalf and on behalf of the Class.

62. Plaintiff California LULAC brings this claim on its behalf.

63. Plaintiff Perez is a person within the jurisdiction of the United States.

64. Plaintiff Perez is an alien who holds DACA status.

65. Plaintiff Perez satisfied Wells Fargo's CIP requirements to obtain a private loan.

66. Plaintiff Perez is entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever no matter her immigration status and no business establishment of any kind whatsoever may refuse to contract with Plaintiff Perez because of her immigration status.

67. Wells Fargo intentionally discriminated against Plaintiff Perez and the Class on the basis of immigration status by denying them the opportunity to contract for a loan, and in doing so denied them the full and equal services of its business.

68. Wells Fargo's intentional discrimination against Plaintiff Perez and the Class interfered with their right to full and equal services and their right to make and enforce contracts for financial products.

69. Defendant's policy and practice of denying loans based on Plaintiff Perez's and the Class's immigration status harmed Plaintiff Perez and the Class and constitutes unlawful

COMPLAINT UNDER 42 U.S.C. § 1981
No. 17 Civ.454

discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act.  Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans from Defendants.

70. Pursuant to the Section 52(a) of the Unruh Civil Rights Act, Plaintiff Perez and the Class are entitled to actual damages suffered, statutory damages of up to three times the amount of actual damages suffered per violation, but no less than $4,000, and attorney's fees.  Pursuant to Section 52(c) of the Unruh Civil Rights Act, Plaintiffs and the Class are also entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

**THIRD CLAIM FOR RELIEF**
**Violation of Unfair Competition Law**
**(California Business and Professions Code §§ 17200 *et seq.*)**

71. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

72. Plaintiff Perez brings this claim on her own behalf and on behalf of the Class.

73. Plaintiff California LULAC brings this claim on its behalf.

74. Wells Fargo's policy and practice of denying loans based on Plaintiff Perez's and the Class's alienage and immigration status harmed Plaintiff Perez and the Class and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act and 42 U.S.C. Section 1981.  Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans from Defendants.

75. Wells Fargo's violations of Sections 51(b) and 51.5 of the Unruh Civil Rights Act and 42 U.S.C. Section 1981 constitute unfair business practices in violation of Section 17200 of the California Unfair Competition Law.

76. Plaintiffs and the Class are entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

77. Under the California Unfair Competition Law, Plaintiffs and the Class are entitled to injunctive relief and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class pray for relief as follows:

78. Certification of the case as a class action on behalf of the proposed Class;

79. Designation of Plaintiff Mitzie Perez as a representative on behalf of the Class;

80. Designation of Plaintiffs' counsel of record as Class counsel;

81. A declaratory judgment that the practices complained of herein are unlawful and violate Section 1981, the Sections 51(b) and 51.5 of the Unruh Civil Rights Act, and Section 17200 *et seq.* of the California Unfair Competition Law;

82. A preliminary and permanent injunction against Defendants and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

83. All damages sustained as a result of Wells Fargo's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

84. Statutory damages to the extent allowable by law;

85. Exemplary and punitive damages in an amount commensurate with Wells Fargo's ability to pay and to deter future conduct;

86. Injunctive remedies including restitution;

87. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

88. Pre-judgment and post-judgment interest, as provided by law; and

89. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:   San Francisco, California            Respectfully submitted,
         January 30, 2017

                                              **OUTTEN & GOLDEN LLP**

                                              By:   Jahan C. Sagafi

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi
Cal. Bar No. 224887
Katrina Eiland
Cal. Bar No. 275701
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:   (415) 638-8810
jsagafi@outtengolden.com
keiland@outtengolden.com

Adam T. Klein*
Ossai Miazad*
Michael N. Litrownik*
Olivia J. Quinto*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile:   (646) 509-2060
atk@outtengolden.com
om@outtengolden.com
mlitrownik@outtengolden.com
ojq@outtengolden.com

Patrick David Lopez*
601 Massachusetts Avenue
Second Floor West Suite
Washington DC, 20001
Telephone:  (202) 847-4400
Facsimile:   (202) 847-4410
pdl@outtengolden.com

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
Thomas A. Saenz
Victor Viramontes
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:   (213) 629-0266
tsaenz@maldef.org
vviramontes@maldef.org
*pro hac vice application forthcoming*

**Attorneys for Plaintiffs and the Proposed Class**