Jahan C. Sagafi
Cal. Bar No. 224887
Nantiya Ruan
Cal. Bar No. 230488
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
nruan@outtengolden.com

Thomas Saenz,
Cal. Bar No. 159430
Victor Viramontes
Cal. Bar No. 214158
MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
tsaenz@maldef.org
vviramontes@maldef.org

*Attorney for Plaintiffs and the Proposed Class
(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MITZIE PEREZ, ANDRES ACOSTA, SERGIO BARAJAS, TERESA DIAZ VEDOY, VICTORIA RODAS, and SAMUEL TABARES VILLAFUERTE, individually and on behalf of all others similarly situated, and CALIFORNIA LEAGUE OF UNITED LATIN AMERICAN CITIZENS, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO & CO. and WELLS FARGO BANK, N.A., <br><br> Defendants. | **CASE NO. 17 Civ. 454** <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATION OF <u>42 U.S.C. § 1981</u>** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Mitzie Perez, Andres Acosta, Sergio Barajas, Teresa Diaz Vedoy, Victoria Rodas, and Samuel Tabares Villafuerte (the "Individual Plaintiffs"), individually and on behalf of all others similarly situated, and the California League of United Latin American Citizens ("California LULAC") (collectively, "Plaintiffs") by their attorneys, bring the following allegations against Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendants"):

## SUMMARY OF CLAIM

1. Plaintiffs Mitzie Perez, Andres Acosta, Sergio Barajas, Teresa Diaz Vedoy, Victoria Rodas, and Samuel Tabares Villafuerte, individually and on behalf of all others similarly situated, and California LULAC bring this case against Wells Fargo for unlawful discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981"), the Unruh Civil Rights Act, as codified by California Civil Code §§ 51 *et seq.*, and the Unfair Competition Law, as codified by California Business and Professions Code §§ 17200 *et seq.*

2. Wells Fargo, an American multinational banking and financial services holding company, outright refuses to extend loans and other financial products to individuals who are not U.S. citizens or permanent residents. This company-wide policy and practice of denying individuals the right to contract for a loan or other financial product based on alienage is discriminatory and unlawful under Section 1981, Sections 51(b) and 51.5 of the Unruh Civil Rights Act, and Section 17200 of the California Unfair Competition Law.

## PARTIES

*Plaintiff Mitzie Perez*

3. Plaintiff Mitzie Perez is a third-year undergraduate student at the University of California, Riverside, majoring in Gender & Sexuality Studies.

4. Ms. Perez has authorization to work in the U.S. under Deferred Action for Childhood Arrivals ("DACA").

*Plaintiff Andres Acosta*

5. Plaintiff Andres Acosta is a resident of Austin, Texas and a small business

owner. He has a bachelor's degree in construction science and a master's degree in real estate from Texas A&M University.

6. Mr. Acosta has authorization to work in the U.S. under DACA.

*Plaintiff Sergio Barajas*

7. Plaintiff Sergio Barajas is a part-time student at Chabott Community College in Hayward, California.

8. Mr. Barajas has authorization to work in the U.S. under DACA.

*Plaintiff Teresa Diaz Vedoy*

9. Plaintiff Teresa Diaz Vedoy is an undergraduate student at Cerritos College in Norwalk California, majoring in Anthropology.

10. Ms. Diaz Vedoy has authorization to work in the U.S. under DACA.

*Plaintiff Victoria Rodas*

11. Plaintiff Victoria Rodas is a second-year graduate student at Loyola Marymount University ("LMU"), studying counseling.

12. Ms. Rodas has authorization to work in the U.S. under DACA.

*Plaintiff Samuel Tabares Villafuerte*

13. Plaintiff Samuel Tabares Villafuerte is a third-year undergraduate student at California State Polytechnic University, Pomona, majoring in Engineering.

14. Mr. Tabares Villafuerte has authorization to work in the U.S. under DACA.

*Plaintiff California LULAC*

15. Plaintiff California LULAC is a Latino organization with members and chapters located in many cities and towns throughout the State of California. Plaintiff California LULAC files this action individually as a distinguished Latino civil rights organization and on behalf of its DACA recipient members, who are also members of the proposed class. One of LULAC's primary functions and purposes is the improvement and advancement of educational opportunities for persons of Latino and Mexican-American descent or nationality and the protection and defense of the civil rights of this major ethnic and national origin group. As an

organization and on behalf of its members, California LULAC has championed the rights of Latino students for decades.

16. Plaintiff California LULAC's members include members of the proposed class. Wells Fargo' policy of denying loans and other financial products to DACA recipients affects many of California LULAC's members. Additionally, Wells Fargo' policy impedes California LULAC's ability to carry out its mission to advance the educational attainment and civil rights of the Latino population in California and, more broadly, throughout the United States.

*Defendants*

17. Wells Fargo is an American multinational banking and financial services holding company headquartered in San Francisco, California. It is the fourth largest bank in the United States.

18. Wells Fargo & Co. is a Delaware corporation authorized to do business in this state.

19. Wells Fargo Bank, N.A. is a South Dakota corporation authorized to do business in this state.

20. Wells Fargo offers consumers a range of financial products, including private student loans to help undergraduate and graduate students pay for eligible academic expenses.

21. Wells Fargo, by soliciting, conducting, and transacting business in the state of California, engages in continuous, permanent, and substantial activity within the state.

22. Wells Fargo is not a federal enclave and therefore is subject to Plaintiffs' Section 1981 claim.

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction over Plaintiffs' Section 1981 claim pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

24. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the claims occurred in this district and Wells Fargo conducts business within this district.

26. Intradistrict assignment: Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred at Wells Fargo's headquarters located in San Francisco County.

## BACKGROUND

27. On June 15, 2012, President Obama announced that the Department of Homeland Security ("DHS") would no longer remove certain young immigrants under its authority to grant deferred action as embodied in DACA.

28. DACA's purpose, according to President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[1]

29. DACA is a form of deferred action, a discretionary grant of authorized stay by the federal government. Deferred action granted through DACA is valid for two years and is subject to renewal thereafter.

30. DACA mandates that persons who are granted deferred action will be eligible to obtain an Employment Authorization Document (an "EAD" or "federal work permit") and a Social Security number. In other words, those granted deferred action and in possession of an EAD are legally authorized to work in the United States, and can prove their identity.

31. As of March 31, 2016, the United States Citizenship and Immigration Services ("USCIS") has approved over 1.3 million initial and renewal requests for DACA.[2]

---

[1] President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited March 6, 2017).
[2] USCIS, Number of I-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status: 2012-2016 (March 31), *available at* (footnote continued)

32. There is no federal or state law or regulation that restricts banks from providing financial products to customers because the customer is an alien. Under federal law, alienage is merely one factor among many used to verify enough information to confirm the true identity of the customer.

33. For instance, the Federal Financial Institutions Examination Council ("FFIEC") provides uniform principles and standards to offer guidance for federal regulators. The FFIEC annually publishes the Bank Secrecy Act/Anti-Money Laundering Examination Manual for Money Services, which contains a compliance program called the Customer Identification Program ("CIP"), as required by section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318. Pursuant to CIP, institutions providing financial services, including banks, must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer. The goal behind this requirement is to prevent the funding of terrorism both inside and outside of the United States.[3]

34. According to the Bank Secrecy Act/Anti-Money Laundering Examination Manual, a bank's CIP must contain account-opening procedures detailing the identifying information that must be obtained from each customer. At a minimum, the bank must obtain the following information from each customer before opening an account: 1) name, 2) date of birth, 3) address, and 4) identification number (*e.g.*, Social Security number, taxpayer identification number or an alien identification number).[4]

---

https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/I821d_performancedata_fy2016_qtr2.pdf (last visited March 6, 2017).

[3] *See* 12 C.F.R. 208.63(b), 211.5(m), 211.24(j) (Board of Governors of the Federal Reserve System); 12 C.F.R. 326.8(b) (Federal Deposit Insurance Corporation); 12 C.F.R. 748.2(b) (National Credit Union Administration); 12 C.F.R. 21.21 (Office of the Comptroller of the Currency); 12 C.F.R. 563.177(b) (Office of Thrift Supervision); and 31 C.F.R. 103.121 (FinCEN).

[4] Fed. Fin. Inst. Examination Council, Bank Secrecy Act/Anti-Money Laundering Examination Manual 54 (2010), *available at* http://www.ffiec.gov/bsa_aml_infobase/documents/bsa_aml_man_2010.pdf (last visited March 6, (footnote continued)

35. The bank's procedure must also describe when it will use documents, non-documentary methods, or a combination of both. Federal banking agencies expect that banks will review an unexpired government-issued form of identification from most customers. The identification must include evidence of the customer's nationality or residence and bear a photograph or similar safeguard.[5]

36. Compliance with the CIP is to ensure that a bank verify enough information to form a reasonable belief that it knows the true identity of the customer.[6]

37. "Opening an account" and a financial services "customer" for purposes of the Bank Secrecy Act/Anti Money Laundering Examination Manual for Money Services includes an individual who has applied for a loan application.[7]

## STATEMENT OF FACTS

**Plaintiff Perez**

38. Ms. Perez is a DACA recipient with an EAD and Social Security number. She is a third-year student at UC Riverside.

39. On August 26, 2016, Ms. Perez sought a student loan through the Wells Fargo website to help pay for college and college-incurred debt. After answering a few preliminary questions, including that she was seeking a loan to pay student expenses, that she was a junior in college, and that she was neither a U.S. citizen nor a permanent resident, she was denied a loan, receiving a message that read: "Thank you for your interest in a Wells Fargo student loan. However, based on information you provided, we do not have a student loan option that meets your needs. This could be due to the school you selected, your field of study, and/or your citizenship status."

40. In an attempt to better understand the reason for the denial, Ms. Perez returned to

---

2017).
[5] *Id.* at 54 n.48.
[6] *Id.* at 52-4.
[7] *Id.* at 53.

the prior screen and changed the response to the question about citizenship to "I am a permanent resident alien," and she received information about a student loan option. At the top of the screen there was a note that read: "Based on the citizenship status you provided, a U.S. citizen cosigner will be required for this application." Ms. Perez was thus denied a student loan due to her citizenship status. Had Ms. Perez been allowed to apply for a loan, she would have had a cosigner available to meet Wells Fargo's cosigner requirement.

41. As a result of Wells Fargo's denial, Ms. Perez was forced to cover her entire tuition using various credit cards.

**Plaintiff Acosta**

42. Mr. Acosta is a DACA recipient with an EAD and Social Security number. He works at a real estate company and is a small business owner in Austin, Texas. He has a bachelor's degree in construction science and a master's degree in real estate from Texas A&M University.

43. On or around August 2015, Mr. Acosta applied for a commercial equipment loan at a local Wells Fargo branch in Austin, Texas. A personal banker from the branch assisted him with his application. Mr. Acosta informed the Wells Fargo personal banker that he was neither a U.S. citizen nor a permanent resident. The personal banker told Mr. Acosta that he will just go ahead and submit Mr. Acosta's application and await a response.

44. A couple of days later, the same Wells Fargo personal banker called Mr. Acosta and told him to return to the branch to provide further documentation for his Social Security number. Mr. Acosta provided a copy of his Social Security card, his EAD, and his driver's license.

45. At the time of his commercial equipment loan application, Mr. Acosta already had a Wells Fargo credit card which he maintained in good standing and a loan from Wells Fargo's dealership services, both of which he obtained in 2014. He also maintained both personal and business checking accounts with Wells Fargo.

46. Within two weeks after he provided additional documentation, the same Wells

Fargo personal banker called Mr. Acosta and informed him that Wells Fargo did not approve his loan application because he was neither a U.S. citizen nor a permanent resident. The Wells Fargo personal banker told Mr. Acosta that this was pursuant to Wells Fargo's policy. A few days later, Mr. Acosta received a letter in the mail from Wells Fargo confirming his loan denial.

47. Shortly after Wells Fargo denied him the loan, Wells Fargo also cancelled Mr. Acosta's credit card account without giving him notice and sent his outstanding credit card balance to its Wells Fargo Collections Department.

48. Mr. Acosta called Wells Fargo's customer service line to request re-activation of his credit card. The Wells Fargo customer representative who he spoke with told him that they would investigate and follow up. He did not hear back from Wells Fargo and his credit card was not reactivated.

49. As a result of Wells Fargo's loan denial and cancellation of his credit card, Mr. Acosta was forced to pay off the outstanding credit card balance using money he was saving to purchase a home.

**Plaintiff Barajas**

50. Mr. Barajas is a DACA recipient with an EAD and Social Security number. He is a part-time student at Chabott Community College in Hayward, California.

51. On or about March 2016, Mr. Barajas applied for a Wells Fargo credit card in person at a Wells Fargo branch in San Lorenzo, California. Mr. Barajas believed that because he already had a checking and savings account with Wells Fargo, that he could also obtain a credit card from the bank. Mr. Barajas wanted to use the credit card to pay for his educational expenses so that he could attend school full-time.

52. He filled out the Wells Fargo credit card application form and submitted it to a personal banker.

53. On or around June 22, 2016, Mr. Barajas received a letter from Wells Fargo asking him for his Social Security number.

54. Mr. Barajas went back to the San Lorenzo branch in person and provided Wells

Fargo with a copy of his Social Security card, EAD, and driver's license. The personal banker assisting him made copies of his documents and uploaded them with his application.

55. Later the same day, Wells Fargo called Mr. Barajas to request a copy of his "green card." The Wells Fargo representative told him that if he did not have a green card, Wells Fargo would deny his credit card application. Left with no choice, Mr. Barajas instructed the Wells Fargo representative to cancel his application.

56. As a result of Wells Fargo's denial of his credit card application, Mr. Barajas could not attend school full-time and had to start the semester later than he wanted.

**Plaintiff Diaz Vedoy**

57. Ms. Diaz Vedoy is a DACA recipient with an EAD. She is an undergraduate student at Cerritos College.

58. On or about January 28, 2017, Ms. Diaz Vedoy visited a Wells Fargo branch office seeking a personal loan and credit card to help pay for college-incurred debt and for her parents' immigration application. After completing paperwork for both applications and leaving the Wells Fargo branch office, she later received a telephone call asking her to return to the Wells Fargo branch office and provide a copy of her Social Security card.

59. On or about February 7, 2017, Ms. Diaz Vedoy returned to the Wells Fargo branch office with her Social Security card. A Wells Fargo employee made a photocopy of Ms. Diaz Vedoy's Social Security card and returned it to her.

60. In early February 2017, Ms. Diaz Vedoy received a letter from Wells Fargo dated February 8, 2017, stating that her application for a personal loan and credit card were denied because she was "not a permanent United States resident."

61. As a result of Wells Fargo's denial, Ms. Diaz Vedoy's parents are unable to complete their immigration application and she was forced to cover her college-related expenses using various credit cards.

**Plaintiff Rodas**

62. Ms. Rodas is a DACA recipient with an EAD and Social Security number. She is a second-year graduate student at LMU, studying counseling.

63. In early June 2016, Ms. Rodas contacted Wells Fargo in order to inquire about applying for a student loan for her summer session. The Wells Fargo representative informed Ms. Rodas that she would need a co-signer because she was not a U.S. citizen, and that she would need to fill out her application online.

64. Soon thereafter, Ms. Rodas submitted a Wells Fargo student loan application online. She noted in her application that she was a "Non-Resident Alien," and submitted her EAD and Social Security card.

65. Ms. Rodas obtained a co-signer, who also submitted paperwork by mail in connection with Ms. Rodas's application.

66. On or around June 13, 2016, a Wells Fargo representative contacted Ms. Rodas, requesting that she submit either an I-20 or an I-94 form. Ms. Rodas informed the Wells Fargo representative that she did not have either of those forms because she did not have the visas associated with those forms. The Wells Fargo representative suggested that she contact LMU and ask if they would assist her in obtaining an S-1 visa for international students. At Wells Fargo's behest, Ms. Rodas contacted LMU to inquire about the S-1 visa and LMU told her she was not qualified for such a visa. Ms. Rodas then resubmitted information to Wells Fargo regarding her DACA status.

67. Ms. Rodas called Wells Fargo sometime in July 2016 to follow-up on her student loan application. A Wells Fargo representative informed Ms. Rodas that her application had been denied because she was not a permanent resident. Ms. Rodas later received confirmation about her denial in the mail.

**Plaintiff Tabares Villafuerte**

68. Mr. Tabares Villafuerte is a DACA recipient with an EAD. He is a third-year student at California State Polytechnic University, Pomona, California.

FIRST AMENDED COMPLAINT
CASE NO. 17 Civ. 454

69. In January 2017, Mr. Tabares Villafuerte visited a Wells Fargo branch office in Riverside, California, seeking a student credit card to build a positive credit history. After completing the credit card application with a personal banker and leaving the Wells Fargo branch office, he later received a telephone call from the personal banker asking him to return to the branch office and provide a copy of his Social Security card.

70. Mr. Tabares Villafuerte returned soon thereafter to the Wells Fargo branch office with his Social Security card. The Wells Fargo representative made a photocopy of Mr. Tabares Villafuerte's Social Security card, as well as his work authorization card and driver's license, and returned them to him.

71. Soon thereafter, Mr. Tabares Villafuerte received a phone call from the same personal banker informing him that Wells Fargo denied his credit card application because his Social Security number was "a different kind of social." Then a few days later, he received a letter dated January 30, 2017, from Wells Fargo stating that his application for a credit card was denied because he was "not a permanent United States resident."

**Wells Fargo's Policy is Unlawful and Harms Plaintiffs**

72. Wells Fargo's refusal to offer Plaintiffs and other non-U.S. citizens who are members of California LULAC an opportunity to contract for private loans or other financial products because of its arbitrary citizenship requirements is a violation of 42 U.S.C. § 1981.

73. Wells Fargo's refusal to offer Plaintiffs and other non-U.S. citizens who are members of California LULAC an opportunity to contract for private loans or other financial products violates California's Unruh Civil Rights Act.

74. Wells Fargo's refusal to offer Plaintiffs and other non-U.S. citizens who are members of California LULAC an opportunity to contract for private loans or other financial products violates the California Unfair Competition Law.

75. In addition, Wells Fargo's unlawful policy harms California LULAC's ability to carry out its mission and forces it to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans and other

FIRST AMENDED COMPLAINT
CASE NO. 17 Civ. 454

financial products from Wells Fargo.

76. There is an actual and substantial controversy between Plaintiffs and Wells Fargo.

## CLASS ACTION ALLEGATIONS

77. Plaintiffs Perez, Acosta, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte bring their class allegations under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of a class defined as follows: All persons within the jurisdiction of the United States who were denied the right to contract for a loan or other financial product by Wells Fargo because they were not U.S. citizens between January 30, 2013 and the date of final judgment in this action (the "Class").

78. Plaintiffs Perez, Acosta, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are members of the Class.

79. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. Wells Fargo has offices throughout the United States, USCIS has approved over 1.3 million initial and renewal requests for DACA, and there are thousands of people who do not meet Wells Fargo's citizenship status requirements. Plaintiffs do not know the precise number of Class members as this information is in Wells Fargo's possession.

80. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether it is Wells Fargo's policy or practice to reject applicants for loans or other financial products because they are not U.S. citizens or legal permanent residents; (2) whether Wells Fargo's policy as set forth above deprives Plaintiffs and the Class of the right to contract in violation of Section 1981; (3) whether Wells Fargo's policy as set forth above deprives Plaintiffs and the Class of rights Under the Unruh Civil Rights Act; (4) whether Wells Fargo's policy as set forth above deprives Plaintiffs and the Class of rights under the California Unfair Competition Law; (5) whether the Plaintiffs and the Class suffered harm by reason of Wells Fargo's unlawful policy; (6) whether Plaintiffs and the Class are entitled to compensatory damages; (7) whether Plaintiffs and the Class are entitled to punitive damages; (8) what equitable and injunctive relief for the Class is warranted; and (9) the scope of a resulting permanent

injunction.

81. Plaintiffs' claims are typical of the claims of the Class: (1) Plaintiffs were within the jurisdiction of the United States and not a citizen of the United States; (2) Plaintiffs sought loans and/or other financial products, including credit cards, from Wells Fargo; and (3) Plaintiffs were refused due to their alienage status. All of these claims are substantially shared by each and every class member. All of the claims arise from the same course of conduct by Wells Fargo, and the relief sought is common.

82. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have no conflict with any class member. Plaintiffs are committed to the goal of having Wells Fargo revise its policies to stop discriminating against Plaintiffs and others who are not U.S. citizens or legal permanent residents.

83. Plaintiffs have retained counsel competent and experienced in complex discrimination class actions.

84. The universe of people affected by Wells Fargo's unlawful policy is ascertainable through Wells Fargo's records and therefore the proposed class is ascertainable.

85. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wells Fargo has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. Wells Fargo has refused to lend or extend credit to anyone who does not fit its citizenship requirements, *i.e.*, the Class. The Class members are entitled to injunctive relief to end Wells Fargo's common, uniform, unfair, and discriminatory policy and/or practice and other make-whole relief.

86. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The Class members have been damaged and are entitled to recovery as a result of Wells Fargo's

common, uniform, unfair, and discriminatory policies and practices. Damages are capable of measurement on a classwide basis. The propriety and amount of punitive damages are based on Wells Fargo's conduct, making these issues common to the Class. Plaintiffs and the Class will rely on common evidence to resolve their legal and factual questions. There are no pending actions raising similar claims. Wells Fargo engages in continuous, permanent, and substantial activity in California. There will be no undue difficulty in the management of this litigation as a class action.

**FIRST CLAIM FOR RELIEF**
**Alienage Discrimination**
**(42 U.S.C. § 1981)**

87.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

88.  Plaintiffs bring this claim on their own behalf and on behalf of the Class.

89.  Plaintiff California LULAC brings this claim on its behalf.

90.  Plaintiffs are persons within the jurisdiction of the United States.

91.  Plaintiffs are aliens.

92.  Plaintiffs have the right to make and enforce contracts in the United States and are entitled to the full and equal benefits of the law.

93.  Wells Fargo intentionally discriminated against Plaintiffs and the Class on the basis of alienage by denying them the opportunity to contract for a loan or other financial product.

94.  Wells Fargo's intentional discrimination against Plaintiffs and the Class interfered with their right to make and enforce contracts for financial products.

95.  Wells Fargo's policy and practice of denying loans or other financial products based on Plaintiffs' and the Class's alienage harmed Plaintiffs and the Class and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981. Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain loans or other financial products from Wells Fargo.

96.  Plaintiffs and the Class have no plain, adequate, or complete remedy at law to

redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiffs and the Class they seek to represent are now suffering, and will continue to suffer, irreparable injury from Wells Fargo's discriminatory acts and omissions.

97. Wells Fargo's conduct has caused, and continues to cause, Plaintiffs and the members of the Class substantial losses in earnings and other work benefits.

## SECOND CLAIM FOR RELIEF
### Violation of the Unruh Civil Rights Act
### (California Civil Code §§ 51 and 52 *et seq.*)

98. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

99. Plaintiffs bring this claim on their own behalf and on behalf of the Class.

100. Plaintiff California LULAC brings this claim on its behalf.

101. Plaintiffs are persons within the jurisdiction of the United States.

102. Plaintiffs are aliens who hold DACA status.

103. Plaintiffs are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever no matter their immigration status and no business establishment of any kind whatsoever may refuse to contract with Plaintiffs because of their immigration status.

104. Wells Fargo intentionally discriminated against Plaintiffs and the Class on the basis of immigration status by denying them the opportunity to contract for a loan or other financial products, and in doing so denied them the full and equal services of its business.

105. Wells Fargo's intentional discrimination against Plaintiffs and the Class interfered with their right to full and equal services and their right to make and enforce contracts for financial products.

106. Wells Fargo's policy and practice of denying loans or other financial products based on Plaintiffs' and the Class's immigration status harmed Plaintiff and the Class and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act. Plaintiff California LULAC has also been harmed, as it has been forced to divert

1  resources from its primary advocacy projects in order to assist its members who are adversely
2  affected by their inability to obtain loans or financial products from Wells Fargo.

3  107.  Pursuant to the Section 52(a) of the Unruh Civil Rights Act, Plaintiffs and the Class
4  are entitled to actual damages suffered, statutory damages of up to three times the amount of actual
5  damages suffered per violation, but no less than $4,000, and attorney's fees.  Pursuant to Section
6  52(c) of the Unruh Civil Rights Act, Plaintiffs and the Class are also entitled to injunctive and
7  other equitable relief against such unlawful practices in order to prevent future damages, for which
8  there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

**THIRD CLAIM FOR RELIEF**
**Violation of Unfair Competition Law**
**(California Business and Professions Code §§ 17200 *et seq.*)**

108.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

109.  Plaintiffs bring this claim on their own behalf and on behalf of the Class.

110.  Plaintiff California LULAC brings this claim on its behalf.

111.  Wells Fargo's policy and practice of denying loans or other financial products to Plaintiffs and the Class based on their alienage and immigration status harmed Plaintiffs and the Class and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act and 42 U.S.C. Section 1981.  Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans or other financial products from Wells Fargo.

112.  Wells Fargo's violations of Sections 51(b) and 51.5 of the Unruh Civil Rights Act and 42 U.S.C. Section 1981 constitute unfair business practices in violation of Section 17200 of the California Unfair Competition Law.

113.  Plaintiffs and the Class are entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

114.  Under the California Unfair Competition Law, Plaintiffs and the Class are entitled

to injunctive relief and attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and the Class pray for relief as follows:

115. Certification of the case as a class action on behalf of the proposed Class;

116. Designation of Plaintiffs Perez, Acosta, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte as a representatives on behalf of the Class;

117. Designation of Plaintiffs' counsel of record as Class counsel;

118. A declaratory judgment that the practices complained of herein are unlawful and violate Section 1981, the Sections 51(b) and 51.5 of the Unruh Civil Rights Act, and Section 17200 *et seq.* of the California Unfair Competition Law;

119. A preliminary and permanent injunction against Wells Fargo and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

120. All damages sustained as a result of Wells Fargo's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

121. Statutory damages to the extent allowable by law;

122. Exemplary and punitive damages in an amount commensurate with Wells Fargo's ability to pay and to deter future conduct;

123. Injunctive remedies including restitution;

124. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

125. Pre-judgment and post-judgment interest, as provided by law; and

126. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

| | | | |
|---|---|---|---|
| Dated: | San Francisco, California<br>March 6, 2017 | | Respectfully submitted, |
| | | By: | /s/ *Jahan C. Sagafi*<br>Jahan C. Sagafi |

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi
Cal. Bar No. 224887
Nantiya Ruan
Cal. Bar No. 230488
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
nruan@outtengolden.com

Adam T. Klein*
Ossai Miazad*
Michael N. Litrownik*
Olivia J. Quinto*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile:   (646) 509-2060
atk@outtengolden.com
om@outtengolden.com
mlitrownik@outtengolden.com
ojq@outtengolden.com

Patrick David Lopez*
601 Massachusetts Avenue
Second Floor West Suite
Washington DC, 20001
Telephone: (202) 847-4400
Facsimile:   (202) 847-4410
pdl@outtengolden.com

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
Thomas A. Saenz
Victor Viramontes
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:   (213) 629-0266
tsaenz@maldef.org

vviramontes@maldef.org

*pro hac vice application forthcoming*

**Attorneys for Plaintiffs and the proposed Class**