UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITZIE PEREZ, et al.,<br>  Plaintiffs,<br>v.<br>WELLS FARGO BANK, N.A.,<br>  Defendant. | Case No.17-cv-00454-MMC (EDL)<br><br>**ORDER ON DISCOVERY DISPUTES FOLLOWING JANUARY 9, 2018 HEARING**<br><br>Re: Dkt. Nos. 96, 97 |

On January 9, 2018, the Court held a telephonic hearing with the parties regarding their discovery disputes involving Plaintiffs' objections to Defendant's subpoena to non-party Eric Samaniego and Defendant's objections to Plaintiffs' responses and objections to its document requests and interrogatories. For the reasons stated on the record and summarized below, the Court resolved those disputes as follows.

With respect to Defendant's subpoena to Mr. Samaniego, the Court invokes its authority under Rule 26(c) and issues a protective order forbidding the discovery by quashing the subpoena. As currently drafted, the discovery sought in the subpoena is significantly overbroad and not narrowly tailored to avoid undue burden on a non-party. The parties are ordered to further meet and confer on ways to narrow the requests to seek only relevant information that bears on the parties' claims and defenses and is proportionate to Mr. Samaniego's role as a non-party to this case. For example, Defendant's subpoena is disproportionate to the extent it requires Mr. Samaniego to produce documents that are already in the possession of a party to this case. Thus, if Defendant continues to seek communications or other documents exchanged between itself and Mr. Samaniego, Defendant is only entitled to obtain unique documents that it does not already have in its possession. To facilitate a response to such a request, Defendant would be required to inform Mr. Samaniego of the documents that it already has. The same limitation applies to

Defendant's request for any communications or documents exchanged between Plaintiff Rodas and Mr. Samaniego. Further, it was confirmed during the hearing that Defendant already has a copy of Mr. Samaniego's credit score from around the time of Plaintiff Rodas's credit application, which appears to demonstrate his viability as a co-signer. If Defendant seeks additional information about his creditworthiness as a co-signer, it needs to articulate a basis that justifies that additional discovery. The parties should consider this discussion and the additional guidance the Court provided during the hearing with respect to any further subpoena served on Mr. Samaniego or any other non-party.

The Court also considered the parties' disputes regarding Defendant's objections to Plaintiffs' responses and objections to certain document requests and interrogatories. The discovery requests at issue sought three main categories of documents and information, which the Court addresses in turn.

First, Defendant sought documents and information regarding Plaintiffs' credit history:

> **Document Request No. 10:** Any application for credit that You submitted to any entity in the last four years and all documents related thereto, including any notifications of approval or denial.
>
> **Interrogatory No. 5:** Identify each instance in which You sought credit from any entity in the last four years. For each such instance, identify the type of credit sought, the date on which you made the credit application, the outcome of the credit application, and all persons with whom you communicated regarding the credit application.

To date, Plaintiffs have provided responses to the interrogatory that provide information about credit applications they made as a result of Defendant's denial of their applications. Plaintiffs have also produced some documents associated with these credit applications, but Plaintiffs' counsel represented that they are not able to produce all related documents because they were not always retained. The Court orders Plaintiffs to complete their search for documents that are responsive to Document Request No. 10, and then send a written statement to Defendant within two weeks of this order that confirms that they have completed their search for these documents and commits to produce any additional responsive documents that are located by February 1, 2018.

2

Defendant also seeks documents and information about any other credit applications that Plaintiffs made to other lending institutions around the same time as they submitted their applications with Defendant but before Defendant denied those applications. Defendant's stated purpose for requesting these documents is that it needs to create a benchmark for the terms of the credit that it would have offered notwithstanding the allegedly discriminatory policy. Plaintiffs' counsel conceded that this information is relevant to Plaintiff Perez because she did not submit a credit application to Defendant. Accordingly, Plaintiffs are ordered to produce responsive documents and respond to the interrogatory regarding Plaintiff Perez.

Applications made before Plaintiffs' applications to Defendant are of some (albeit limited) relevance, especially if they are close in time, but the burden may also be modest. Thus, the parties are also ordered to meet and confer on whether Plaintiffs will produce responsive documents for the remaining Plaintiffs and, if so, what the applicable time period for responsive documents would be. Any time period should be limited (e.g., three to four months before Plaintiffs submitted their applications to Defendant).

Second, Defendant seeks Plaintiffs' credit reports for Plaintiffs and any co-signers who were included on their credit applications:

> **Document Request No. 6:** An authorization for Wells Fargo to obtain Your credit report.
>
> **Document Request No. 8:** For each person identified as a co-signer in Interrogatory Nos. 3 and 6, please produce an authorization for Wells Fargo to obtain the co-signer's credit report.

Defendant claims that it needs credit reports to the present day because that information goes to Plaintiffs' duty to mitigate their damages from Defendant's allegedly unlawful policy. Plaintiff Acosta has alleged that his credit as negatively affected by Defendant's denial of his credit application. Thus, Plaintiff Acosta's subsequent credit reports are directly relevant to his claims and Defendant's defenses. According to Plaintiffs' counsel, no other Plaintiff is making a similar claim of an adverse effect on his or her credit following Defendant's denial. As Defendant points out, however, subsequent credit reports could be relevant to the question of Plaintiffs' mitigation of damages. Still, as to all Plaintiffs, the request must be narrowly tailored to seek only

relevant documents. For example, as discussed during the hearing, if a Plaintiff only applied for a credit card from Defendant, then a subsequent credit report is only relevant to the extent it discloses information about subsequent applications for other credit cards, whereas information about unrelated types of credit would not be. Accordingly, the parties are ordered to meet and confer to narrow the requests in light of these considerations.

Third, Defendant has requested documents related to Plaintiffs' status under the Deferred Action for Childhood Arrivals ("DACA") program:

> **Document Request No. 1:** All documents referring to or referencing Your DACA status, including your DACA application and all documents related thereto.
>
> **Document Request No. 2:** All documents referring to Your continuing DACA status, and any documents or communications discussing whether Your DACA status will or will not continue or be renewed.

These requests are overbroad as currently drafted. The only DACA-related documents that are relevant to the claims and defenses in this case are documents that demonstrate whether Plaintiffs were or were not participants in the DACA program and whether their participation status has changed since the time of their credit applications with Defendant.

Plaintiffs stated that they have provided renewal documents, employment authorizations, Social Security cards, approval documents, and communications with the United States Citizenship and Immigration Services agency. Plaintiffs stated that they are withholding Plaintiffs' DACA applications, as well as text messages and emails with friends and family discussing political activism about and potential changes to the DACA program. These withheld documents are not relevant and need not be produced. However, Plaintiffs must provide a letter to Defendant that describes the documents that they are withholding, so that Defendant may have an opportunity to challenge the decision to withhold any documents it believes it is entitled to receive. Moreover, to the extent that Defendant seeks documents showing Plaintiffs' school and employment status, Plaintiffs offered to respond provided that Defendant propounds additional requests for those specific documents, which it must do.

**IT IS SO ORDERED.**

4

Dated: January 16, 2018

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge