Jahan C. Sagafi   (Cal. Bar No. 224887)
Relic Sun         (Cal. Bar No. 306701)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rsun@outtengolden.com
rdempsey@outtengolden.com

Thomas A. Saenz (Cal. Bar No. 159430)
Joel Marrero      (Cal. Bar No. 275601)
Andrés Gallegos  (Cal. Bar No. 313090)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile:  (213) 629-0266
tsaenz@maldef.org
jmarrero@maldef.org
agallegos@maldef.org

*Attorneys for Plaintiffs and the Proposed Class*
*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MITZIE PEREZ, ANDRES ACOSTA, SERGIO BARAJAS, TERESA DIAZ VEDOY, VICTORIA RODAS, and SAMUEL TABARES VILLAFUERTE, individually and on behalf of all others similarly situated, and CALIFORNIA LEAGUE OF UNITED LATIN AMERICAN CITIZENS,<br><br>          Plaintiffs,<br><br>     v.<br><br>WELLS FARGO BANK, N.A.,<br><br>          Defendant. | **CASE NO. 17-cv-00454-MMC**<br><br>**FOURTH AMENDED COMPLAINT FOR VIOLATIONS OF <u>42 U.S.C. § 1981 AND CALIFORNIA STATE LAW</u>**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Mitzie Perez, Andres Acosta, Sergio Barajas, Teresa Diaz Vedoy, Victoria Rodas, and Samuel Tabares Villafuerte (the "Individual Plaintiffs"), individually and on behalf of all others similarly situated, and the California League of United Latin American Citizens ("California LULAC") (collectively, "Plaintiffs") by their attorneys, bring the following allegations against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"):

## SUMMARY OF CLAIM

1.      Plaintiffs Mitzie Perez, Andres Acosta, Sergio Barajas, Teresa Diaz Vedoy, Victoria Rodas, and Samuel Tabares Villafuerte, individually and on behalf of all others similarly situated, and California LULAC bring this case against Wells Fargo for unlawful discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981"), the Unruh Civil Rights Act, as codified by California Civil Code §§ 51 *et seq.*, and the Unfair Competition Law, as codified by California Business and Professions Code §§ 17200 *et seq.*

2.      Wells Fargo, an American multinational banking and financial services company, outright refuses to extend certain types of credit to non-United States citizens who reside in the United States and hold either (i) Deferred Action for Childhood Arrivals ("DACA") status, (ii) temporary protected status, or (iii) another legally protected status under any United States visa.  Wells Fargo's policies of denying aliens with DACA and other legally protected statuses the right to contract for credit based on alienage or immigration status is discriminatory and unlawful under Section 1981, Sections 51(b) and 51.5 of the Unruh Civil Rights Act, and Section 17200 of the California Unfair Competition Law.

## PARTIES

### *Plaintiff Mitzie Perez*

3.      Plaintiff Mitzie Perez is a third-year undergraduate student at the University of California, Riverside, majoring in Gender & Sexuality Studies.

4.      Ms. Perez has authorization to work in the U.S. under DACA.

*Plaintiff Andres Acosta*

5.     Plaintiff Andres Acosta is a resident of Austin, Texas and a small business owner.  He has a bachelor's degree in construction science and a master's degree in real estate from Texas A&M University.

6.     Mr. Acosta has authorization to work in the U.S. under DACA.

*Plaintiff Sergio Barajas*

7.     Plaintiff Sergio Barajas is a part-time student at Chabot Community College in Hayward, California.

8.     Mr. Barajas has authorization to work in the U.S. under DACA.

*Plaintiff Teresa Diaz Vedoy*

9.     Plaintiff Teresa Diaz Vedoy is an undergraduate student at Cerritos College in Norwalk California, majoring in Anthropology.

10.     Ms. Diaz Vedoy has authorization to work in the U.S. under DACA.

*Plaintiff Victoria Rodas*

11.     Plaintiff Victoria Rodas is a second-year graduate student at Loyola Marymount University ("LMU"), located in Los Angeles, California, studying counseling.

12.     Ms. Rodas has authorization to work in the U.S. under DACA.

*Plaintiff Samuel Tabares Villafuerte*

13.     Plaintiff Samuel Tabares Villafuerte is a third-year undergraduate student at California State Polytechnic University, located in Pomona, California, majoring in Engineering.

14.     Mr. Tabares Villafuerte has authorization to work in the U.S. under DACA.

*Plaintiff California LULAC*

15.     Plaintiff California LULAC is a Latino organization with members and chapters located in many cities and towns throughout the State of California.  Plaintiff California LULAC files this action individually as a distinguished Latino civil rights organization and on behalf of its DACA recipient members, who are also members of the proposed class.  One of LULAC's primary functions and purposes is the improvement and advancement of educational opportunities for persons of Latino and Mexican-American descent or nationality and the protection and defense of the civil rights of this

3

major ethnic and national origin group.  As an organization and on behalf of its members, California

LULAC has championed the rights of Latino students for decades.

16.     Plaintiff California LULAC's members include members of the proposed class.  Wells

Fargo's policies of denying loans and other Credit products to DACA recipients affects many of

California LULAC's members.  Additionally, Wells Fargo's policies impede California LULAC's

ability to carry out its mission to advance the educational attainment and civil rights of the Latino

population in California and, more broadly, throughout the United States.

*Defendant*

17.     Wells Fargo is an American multinational banking and financial services company

headquartered in San Francisco, California.  It is the fourth largest bank in the United States.

18.     Wells Fargo Bank, N.A. is a South Dakota corporation authorized to do business in this

state.

19.     Wells Fargo Bank, N.A. is a national bank and the primary United States operating

subsidiary of Wells Fargo.

20.     Wells Fargo Bank, N.A. offers consumers a range of financial and credit products,

including private student loans, credit cards, small business loans and credit products, personal loans,

auto loans, and home mortgages.

21.     Wells Fargo Bank, N.A., by soliciting, conducting, and transacting business in the state

of California, engages in continuous, permanent, and substantial activity within the state.

22.     Wells Fargo Bank, N.A. is not a federal enclave and therefore is subject to Plaintiffs'

Section 1981 claim.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over Plaintiffs' Section 1981 claim pursuant to

28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to

28 U.S.C. § 1367.

24.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201

and 2202.

4

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Wells Fargo conducts business within this district.

26.     Intradistrict assignment:  Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred at Wells Fargo's headquarters located in San Francisco County.

**BACKGROUND**

27.     On June 15, 2012, President Obama announced that the Department of Homeland Security ("DHS") would no longer remove certain young immigrants under its authority to grant deferred action as embodied in DACA.

28.     DACA's purpose, according to President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[1]

29.     DACA is a form of deferred action, a discretionary grant of authorized stay by the federal government.  Deferred action granted through DACA is valid for two years and is subject to renewal thereafter.

30.     DACA mandates that persons who are granted deferred action will be eligible to obtain an Employment Authorization Document (an "EAD" or "federal work permit") and a Social Security number.  In other words, those granted deferred action and in possession of an EAD are legally authorized to work in the United States, and can prove their identity.

31.     As of March 31, 2016, the United States Citizenship and Immigration Services ("USCIS") has approved over 1.3 million initial and renewal requests for DACA.[2]

---

[1]   President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited March 6, 2017).

[2]   USCIS, Number of I-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status: 2012-2016 (March 31), *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/I821d_performancedata_fy2016_qtr2.pdf (last visited March 6, 2017).

32.     There is no federal or state law or regulation that restricts banks from providing financial products to customers because the customer is an alien.  Under federal law, alienage is merely one factor among many used to verify enough information to confirm the true identity of the customer.

33.     For instance, the Federal Financial Institutions Examination Council ("FFIEC") provides uniform principles and standards to offer guidance for federal regulators.  The FFIEC annually publishes the Bank Secrecy Act/Anti-Money Laundering Examination Manual for Money Services, which contains a compliance program called the Customer Identification Program ("CIP"), as required by section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318.  Pursuant to CIP, institutions providing financial services, including banks, must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer.  The goal behind this requirement is to prevent the funding of terrorism both inside and outside of the United States.[3]

34.     According to the Bank Secrecy Act/Anti-Money Laundering Examination Manual, a bank's CIP must contain account-opening procedures detailing the identifying information that must be obtained from each customer.  At a minimum, the bank must obtain the following information from each customer before opening an account: 1) name, 2) date of birth, 3) address, and 4) identification number (*e.g.*, Social Security number, taxpayer identification number or an alien identification number).[4]

35.     The bank's procedure must also describe when it will use documents, non-documentary methods, or a combination of both.  Federal banking agencies expect that banks will review an unexpired government-issued form of identification from most customers.  The identification must include evidence of the customer's nationality or residence and bear a photograph or similar safeguard.[5]

---

[3]     *See* 12 C.F.R. 208.63(b), 211.5(m), 211.24(j) (Board of Governors of the Federal Reserve System); 12 C.F.R. 326.8(b) (Federal Deposit Insurance Corporation); 12 C.F.R. 748.2(b) (National Credit Union Administration); 12 C.F.R. 21.21 (Office of the Comptroller of the Currency); 12 C.F.R. 563.177(b) (Office of Thrift Supervision); and 31 C.F.R. 103.121 (FinCEN).

[4]     Fed. Fin. Inst. Examination Council, Bank Secrecy Act/Anti-Money Laundering Examination Manual 54 (2010), *available at* http://www.ffiec.gov/bsa_aml_infobase/documents/bsa_aml_man_2010.pdf (last visited March 6, 2017).

[5]     *Id.* at 54 n.48.

36.     Compliance with the CIP is to ensure that a bank verify enough information to form a reasonable belief that it knows the true identity of the customer.[6]

37.     "Opening an account" and a financial services "customer" for purposes of the Bank Secrecy Act/Anti Money Laundering Examination Manual for Money Services includes an individual who has applied for a loan application.[7]

## STATEMENT OF FACTS

**Plaintiff Perez**

38.     Ms. Perez is a DACA recipient with an EAD and Social Security number.  She is a third-year student at UC Riverside.

39.     On August 26, 2016, Ms. Perez sought a student loan through the Wells Fargo website to help pay for cost of attendance and college-incurred debt.  After answering a few preliminary questions, including that she was seeking a loan to pay student expenses, that she was a junior in college, and that she was neither a U.S. citizen nor a permanent resident, she was denied a loan, receiving a message that read: "Thank you for your interest in a Wells Fargo student loan.  However, based on information you provided, we do not have a student loan option that meets your needs.  This could be due to the school you selected, your field of study, and/or your citizenship status."

40.     In an attempt to better understand the reason for the denial, Ms. Perez returned to the prior screen and changed the response to the question about citizenship to "I am a permanent resident alien," and she received information about a student loan option.  At the top of the screen there was a note that read: "Based on the citizenship status you provided, a U.S. citizen cosigner will be required for this application."  Ms. Perez was thus denied a student loan due to her citizenship status.  Had Ms. Perez been allowed to apply for a loan, she would have had a cosigner available to meet Wells Fargo's cosigner requirement.

41.     Ms. Perez suffered a loss of money as a result of Wells Fargo's denial of her student loan application because she was forced to finance her cost of attendance using various credit cards with interest rates higher than she would have received through a student loan.  Ms. Perez suffered further

---

[6]  *Id.* at 52-4.
[7]  *Id.* at 53.

losses of money because she was then unable to meet all her credit card payment obligations and incurred resulting financial penalties.

**Plaintiff Acosta**

42.     Mr. Acosta is a DACA recipient with an EAD and Social Security number.  He works at a real estate company and is a small business owner in Austin, Texas.  He has a bachelor's degree in construction science and a master's degree in real estate from Texas A&M University.

43.     On or around August 2015, Mr. Acosta applied for a commercial equipment loan for approximately $13,000 at a local Wells Fargo branch in Austin, Texas.  Mr. Acosta wanted to use the loan to purchase a truck and expand his construction business.  A personal banker from the branch assisted him with his application.  Mr. Acosta informed the Wells Fargo personal banker that he was neither a U.S. citizen nor a permanent resident.  The personal banker told Mr. Acosta that he would just go ahead and submit Mr. Acosta's application and await a response.

44.     A couple of days later, the same Wells Fargo personal banker called Mr. Acosta and told him to return to the branch to provide further documentation for his Social Security number.  Mr. Acosta provided a copy of his Social Security card, his EAD, and his driver's license.

45.     At the time of his commercial equipment loan application, Mr. Acosta already had a Wells Fargo credit card which he maintained in good standing and a loan from Wells Fargo's dealership services, both of which he obtained in 2014.  He also maintained both personal and business checking accounts with Wells Fargo.

46.     Within two weeks after he provided additional documentation, the same Wells Fargo personal banker called Mr. Acosta and informed him that Wells Fargo did not approve his loan application because he was neither a U.S. citizen nor a permanent resident.  The Wells Fargo personal banker told Mr. Acosta that this was pursuant to Wells Fargo's policy.  A few days later, Mr. Acosta received a letter in the mail from Wells Fargo confirming his loan denial.

47.     Shortly after Wells Fargo denied him the loan, Wells Fargo also abruptly cancelled Mr. Acosta's credit card account without giving him notice and sent his outstanding credit card balance—which was approximately $4,400—to its Wells Fargo Collections Department, where it quickly accrued interest.

48.     Mr. Acosta called Wells Fargo's customer service line to request re-activation of his credit card.  The Wells Fargo customer representative who he spoke with told him that they would investigate and follow up.  He did not hear back from Wells Fargo and his credit card was not reactivated.

49.     Mr. Acosta suffered a loss of money as a result of Wells Fargo's denial of his commercial loan application because he had to take out a loan with the truck dealership directly at a higher interest rate than he would have obtained through a lending bank.

50.     In the fall of 2015, shortly after Mr. Acosta applied for the commercial equipment loan from Wells Fargo, he also began seeking a residential home mortgage to finance the purchase of a house.  Mr. Acosta considered applying for a mortgage from Wells Fargo, but because Wells Fargo had already denied him a commercial equipment loan because of his lack of U.S. citizenship and permanent residency status and subsequently canceled his business credit card for the same reason, Mr. Acosta believed that applying to Wells Fargo for a home mortgage would be futile.

51.     Mr. Acosta was deterred from applying to Wells Fargo for a residential home mortgage because of its discriminatory loan and credit policies.

52.     Mr. Acosta subsequently applied a home mortgage through University Federal Credit Union (UFCU) Mortgage Services in approximately February 2016, and received the mortgage in approximately March 2016.

**Plaintiff Barajas**

53.     Mr. Barajas is a DACA recipient with an EAD and Social Security number.  He is a part-time student at Chabot Community College in Hayward, California, pursuing an Associate's degree in Nursing.

54.     On or about March 2016, Mr. Barajas applied for a Wells Fargo credit card in person at a Wells Fargo branch in San Lorenzo, California.  Mr. Barajas believed that because he already had a checking and savings account with Wells Fargo, that he could also obtain a credit card from the bank.  Mr. Barajas wanted to use the credit card to pay for his educational expenses, such as tuition and books, so that he could attend school full-time.  Full-time tuition was then approximately $2,000 per semester.

55.     He filled out the Wells Fargo credit card application form and submitted it to a personal banker.

56.     On or around June 22, 2016, Mr. Barajas received a letter from Wells Fargo asking him for his Social Security number.

57.     Mr. Barajas went back to the San Lorenzo branch in person and provided Wells Fargo with a copy of his Social Security card, EAD, and driver's license.  The personal banker assisting him made copies of his documents and uploaded them with his application.

58.     Later the same day, Wells Fargo called Mr. Barajas to request a copy of his "green card."  The Wells Fargo representative told him that if he did not have a green card, Wells Fargo would deny his credit card application.  Left with no choice, Mr. Barajas instructed the Wells Fargo representative to cancel his application.

59.     Mr. Barajas suffered a loss of money as a result of Wells Fargo's denial of his credit card application because he was forced to withdraw approximately $600 from his savings account to pay for his tuition.

**Plaintiff Diaz Vedoy**

60.     Ms. Diaz Vedoy is a DACA recipient with an EAD.  She is an undergraduate student at Cerritos College.

61.     On or about January 28, 2017, Ms. Diaz Vedoy visited a Wells Fargo branch office seeking a personal loan for approximately $6,000 and a credit card to help pay for college-incurred debt and for her parents' immigration application.  Ms. Diaz Vedoy's parents' immigration application cost approximately $5,000, inclusive of attorneys' fees, and Ms. Vedoy also wanted to use the Wells Fargo credit card to consolidate the balances from three other cards and save on interest rate payments.

62.     After completing paperwork for both applications and leaving the Wells Fargo branch office, she later received a telephone call asking her to return to the Wells Fargo branch office and provide a copy of her Social Security card.

63.     On or about February 7, 2017, Ms. Diaz Vedoy returned to the Wells Fargo branch office with her Social Security card.  A Wells Fargo employee made a photocopy of Ms. Diaz Vedoy's Social Security card and returned it to her.

10

64.     In early February 2017, Ms. Diaz Vedoy received a letter from Wells Fargo dated February 8, 2017, stating that her application for a personal loan and credit card were denied because she was "not a permanent United States resident."

65.     Ms. Diaz Vedoy suffered a loss of money as a result of Wells Fargo's denial of credit because she was forced to take out $3,000 from her personal savings to pay for her parents' immigration application and cover other college-related expenses on credit cards with higher interest rates.

**Plaintiff Rodas**

66.     Ms. Rodas is a DACA recipient with an EAD and Social Security number.  She is a second-year graduate student at LMU, studying counseling.

67.     In approximately July 2014, Ms. Rodas applied online to Wells Fargo for an auto loan. Ms. Rodas had DACA status and an EAD and Social Security number at the time she submitted this application.  Shortly after she applied online, Ms. Rodas recalls following up on her application in person at a Wells Fargo branch, where she was told that her Social Security number could not be validated in their system.  As a result, Wells Fargo subsequently denied her application.

68.     Ms. Rodas believes that Wells Fargo's denial of her auto loan was based on Wells Fargo's discriminatory policies, including the policy pursuant to which she was denied a student loan.

69.     The reason Wells Fargo denied Ms. Rodas an auto loan in July 2014 was because she was neither a U.S. citizen nor permanent resident, and therefore did not have the "right" kind of Social Security number.

70.     In early June 2016, Ms. Rodas contacted Wells Fargo to inquire about applying for a student loan to pay for her summer session.  The Wells Fargo representative informed Ms. Rodas that she would need a co-signer because she was not a U.S. citizen, and that she would need to fill out her application online.

71.     Soon thereafter, Ms. Rodas submitted a Wells Fargo student loan application online.  She noted in her application that she was a "Non-Resident Alien," and submitted her EAD and Social Security card.

72.     Ms. Rodas obtained a co-signer, who also submitted paperwork by mail in connection with Ms. Rodas's application.

73.     On or around June 13, 2016, a Wells Fargo representative contacted Ms. Rodas, requesting that she submit either an I-20 or an I-94 form.  Ms. Rodas informed the Wells Fargo representative that she did not have either of those forms because she did not have the visas associated with those forms.  The Wells Fargo representative suggested that she contact LMU and ask if they would assist her in obtaining an S-1 visa for international students.  At Wells Fargo's behest, Ms. Rodas contacted LMU to inquire about the S-1 visa and LMU told her she was not qualified for such a visa.  Ms. Rodas then resubmitted information to Wells Fargo regarding her DACA status.

74.     Ms. Rodas called Wells Fargo sometime in July 2016 to follow-up on her student loan application.  A Wells Fargo representative informed Ms. Rodas that her application had been denied because she was not a permanent resident.  Ms. Rodas later received confirmation about her denial in the mail.

75.     Ms. Rodas suffered a loss of money as a result of Wells Fargo's denial of her student loan application because she ended up borrowing approximately $5,000 from various family members and had to pay some educational expenses from her own savings.  Because she owed family members so much money, Ms. Rodas was also forced to work more hours at her job, cutting into her time for academic studies and forcing her to only take one class during the Fall semester.

**Plaintiff Tabares Villafuerte**

76.     Mr. Tabares Villafuerte is a DACA recipient with an EAD.  He is a third-year student at California State Polytechnic University, Pomona, California.

77.     In January 2017, Mr. Tabares Villafuerte visited a Wells Fargo branch office in Riverside, California, seeking a student credit card to build a positive credit history and to pay for educational expenses.  After completing the credit card application with a personal banker and leaving the Wells Fargo branch office, he later received a telephone call from the personal banker asking him to return to the branch office and provide a copy of his Social Security card.

78.     Mr. Tabares Villafuerte returned soon thereafter to the Wells Fargo branch office with his Social Security card.  The Wells Fargo representative made a photocopy of Mr. Tabares Villafuerte's Social Security card, as well as his work authorization card and driver's license, and returned them to him.

79.     Soon thereafter, Mr. Tabares Villafuerte received a phone call from the same personal banker informing him that Wells Fargo denied his credit card application because his Social Security number was "a different kind of social." Then a few days later, he received a letter dated January 30, 2017, from Wells Fargo stating that his application for a credit card was denied because he was "not a permanent United States resident."

80.     Mr. Tabares Villafuerte suffered a loss of money as a result of Wells Fargo's denial of his student credit card application because he was forced to use over $2,000 of his personal savings for his educational expenses.

**Wells Fargo's Policies Are Unlawful and Harm Plaintiffs**

81.     Wells Fargo's refusal to offer Plaintiffs and other non-U.S. citizens who are members of California LULAC an opportunity to contract for credit because of its arbitrary citizenship requirements is a violation of 42 U.S.C. § 1981.

82.     Wells Fargo's refusal to offer Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and other non-U.S. citizens who are members of California LULAC an opportunity to contract for credit violates California's Unruh Civil Rights Act.

83.     Wells Fargo's refusal to offer Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and other non-U.S. citizens who are members of California LULAC an opportunity to contract for credit violates the California Unfair Competition Law.

84.     In addition, Wells Fargo's unlawful policies harm California LULAC's ability to carry out its mission and forces it to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans and other financial products from Wells Fargo.

85.     There is an actual and substantial controversy between Plaintiffs and Wells Fargo.

13

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs Perez, Acosta, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte bring their class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of six classes, each consisting of all non-United States citizens who resided in the United States and who held either (i) DACA status, (ii) temporary protected status, or (iii) another legally protected status under any United States visa at the relevant time they applied or attempted to apply for credit from Wells Fargo ("Covered Non-Citizen Residents") from January 30, 2013 through the date of final judgment in this action ("Covered Period"), defined as follows:

    a.   All Covered Non-Citizen Residents who applied or attempted to apply for a Wells Fargo student loan and did not receive that loan during the Covered Period (the "Student Loan Class");

    b.   All Covered Non-Citizen Residents who applied or attempted to apply for a Wells Fargo unsecured credit card and did not receive that credit card during the Covered Period (the "Credit Card Class");

    c.   All Covered Non-Citizen Residents who held a 25% or greater ownership interest in a business and applied or attempted to apply for a Wells Fargo Business Direct credit product for that business and did not receive that credit product during the Covered Period (the "Business Direct Class");

    d.   All Covered Non-Citizen Residents who applied, attempted to apply for a Wells Fargo personal loan and did not receive that personal loan during the Covered Period (the "Personal Loan Class");

    e.   All Covered Non-Citizen Residents who applied or attempted to apply for a Wells Fargo automobile loan and did not receive that automobile loan during the Covered Period (the "Auto Loan Class");

    f.   All Covered Non-Citizen Residents who applied or attempted to apply for a Wells Fargo residential home mortgage and did not receive that home mortgage during the Covered Period, or who were deterred from applying to Wells Fargo for a residential home mortgage during the Covered Period (the "Home Mortgage Class");

14

87.     Plaintiffs Perez and Rodas are members of the Student Loan Class.

88.     Plaintiffs Barajas, Diaz Vedoy, and Tabares Villafuerte are members of the Credit Card Class.

89.     Plaintiff Acosta is a member of the Business Direct Class and the Home Mortgage Class.

90.     Plaintiff Diaz Vedoy is a member of the Personal Loan Class.

91.     Plaintiff Rodas is a member of the Auto Loan Class.

92.     Upon information and belief, Class Members in each of the six classes are so numerous that joinder of all of them is impracticable.  Plaintiffs believe there are hundreds of Class Members in each of the six classes.  Wells Fargo has offices throughout the United States and is one of the largest consumer lenders in the country, USCIS has approved over 1.3 million initial and renewal requests for DACA, and several hundred thousand individuals have held temporary protected status or legally protected status under U.S. visas.  Plaintiffs do not know the precise number of Class Members in each class as this information is in Wells Fargo's possession.

93.     There are questions of law and fact common to the six classes, and these questions predominate over any questions affecting only individual members.  Common questions include, for each class, among others: (1) whether Wells Fargo maintains policies that categorically exclude Plaintiffs and Class Members outright from credit because of Plaintiffs' and Class Members' alienage or immigration status; (2) whether Wells Fargo's policies as set forth above deprives Plaintiffs and Class Members of the right to contract in violation of Section 1981; (3) whether Wells Fargo's policies as set forth above deprive Plaintiffs and Class Members in the Student Loan, Credit Card, Personal Loan and Auto Loan classes of rights under the Unruh Civil Rights Act; (4) whether Wells Fargo's policies as set forth above deprive Plaintiffs and Class Members in the Student Loan, Credit Card, Personal Loan, and Auto Loan classes of rights under the California Unfair Competition Law; (5) whether Plaintiffs and the Class Members suffered harm by reason of Wells Fargo's unlawful policies; (6) whether Plaintiffs and Class Members are entitled to compensatory damages; (7) whether Plaintiffs and Class Members are entitled to punitive damages; (8) what equitable and injunctive relief for each of the six classes is warranted; and (9) the scope of a resulting permanent injunction.

94.     Plaintiffs' claims are typical of the claims of the Class Members in each of the six classes: (1) Plaintiffs were within the jurisdiction of the United States and held legally protected status; (2) Plaintiffs applied, attempted to apply, or were deterred from applying for credit from Wells Fargo; and (3) Plaintiffs did not receive that credit because of their alienage or immigration status.  Each of these claims is substantially shared by every Class Member in each of the six Classes.  Each of the claims arises from the same course of conduct by Wells Fargo, and the relief sought is common.

95.     Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in each of the six classes.  Plaintiffs have no conflict with any Class Member.  Plaintiffs are committed to the goal of having Wells Fargo change its business practices to stop discriminating against Plaintiffs and others who hold DACA status, temporary protected status, or other legally protected statuses.

96.     Plaintiffs have retained counsel competent and experienced in complex discrimination class actions.

97.     The universe of people affected by Wells Fargo's unlawful policies is ascertainable through Wells Fargo's company records and its website records, logs, and data and therefore each of the six proposed classes is ascertainable.

98.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wells Fargo has acted and/or refused to act on grounds generally applicable to each of the six classes, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class Members as a whole. Wells Fargo excludes Class Members in each of the six classes outright from credit due to alienage or immigration status.  The Class Members in each of the six classes are entitled to injunctive relief to end Wells Fargo's common, unfair, and discriminatory policies and other make-whole relief.

99.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members in each of the six classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable.  The Class Members have been damaged and are entitled to recovery because of Wells Fargo's common, unfair, and discriminatory policies.  Damages are capable of measurement on a classwide basis.  The

FOURTH AMENDED COMPLAINT
CASE NO. 17-cv-00454-MMC

propriety and amount of punitive damages are based on Wells Fargo's conduct, making these issues common each of the six classes.  Plaintiffs and the Class Members will rely on common evidence to resolve their legal and factual questions, including applicable credit policies in the relevant period.  There are no pending actions raising similar claims.  Wells Fargo engages in continuous, permanent, and substantial activity in California.  There will be no undue difficulty in the management of this litigation as a class action.

## FIRST CLAIM FOR RELIEF
### Alienage Discrimination
### (42 U.S.C. § 1981)

100.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

101.    Plaintiffs bring this claim on their own behalf and on behalf of each of the six classes.

102.    Plaintiff California LULAC brings this claim on its behalf.

103.    Plaintiffs are persons within the jurisdiction of the United States.

104.    Plaintiffs are aliens.

105.    Plaintiffs have the right to make and enforce contracts in the United States and are entitled to the full and equal benefits of the law.

106.    Wells Fargo intentionally discriminated against Plaintiffs and the Class Members in each of the six classes because of alienage by denying them the opportunity to contract for credit, or by deterring them from applying for credit in the first place.

107.    Wells Fargo's intentional discrimination against Plaintiffs and the Class Members in each of the six classes interfered with their right to make and enforce contracts for credit.

108.    Wells Fargo's policies of denying credit based on Plaintiffs' and the Class Members' alienage harmed Plaintiffs and the Class Members and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981.  Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain loans or other credit products from Wells Fargo.

109.    Plaintiffs and the Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of

securing complete and adequate relief.  Plaintiffs and the Class Members they seek to represent are now suffering, and will continue to suffer, irreparable injury from Wells Fargo's discriminatory acts and omissions.

110.    Wells Fargo's conduct has caused, and continues to cause, Plaintiffs and the Class Members substantial losses in earnings and other work benefits.

### SECOND CLAIM FOR RELIEF
**Violation of the Unruh Civil Rights Act**
**(California Civil Code §§ 51 and 52 et seq.)**

111.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

112.    Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte bring this claim on their own behalf and on behalf of the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class.

113.    Plaintiff California LULAC brings this claim on its behalf.

114.    Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are persons within the jurisdiction of the United States.

115.    Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are aliens who hold DACA status.

116.    Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever no matter their immigration status and no business establishment of any kind whatsoever may refuse to contract with Plaintiffs because of their immigration status.

117.    Wells Fargo intentionally discriminated against Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class on the basis of immigration status by denying them the opportunity to contract for credit, and in doing so denied them the full and equal services of its business.

118.    Wells Fargo's intentional discrimination against Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class,

and Personal Loan Class and Auto Loan Class interfered with their right to full and equal services and their right to make and enforce contracts for credit.

119.    Wells Fargo's policies of denying credit based on the immigration status of Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte, and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class harmed Plaintiffs and the Class Members and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act.  Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain loans or financial products from Wells Fargo.

120.    Pursuant to the Section 52(a) of the Unruh Civil Rights Act, Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class are entitled to actual damages suffered, statutory damages of up to three times the amount of actual damages suffered per violation, but no less than $4,000, and attorneys' fees.  Pursuant to Section 52(c) of the Unruh Civil Rights Act, Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class are also entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

**THIRD CLAIM FOR RELIEF**
**Violation of Unfair Competition Law**
**(California Business and Professions Code §§ 17200 et seq.)**

121.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

122.    Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte bring this claim on their own behalf and on behalf of the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class.

123.    Plaintiff California LULAC brings this claim on its behalf.

124.    Wells Fargo's policies of denying credit to Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class based on their alienage and immigration status harmed Plaintiffs and

the Class and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act and 42 U.S.C. Section 1981. Plaintiff California LULAC has also been harmed, as it has been forced to divert resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain student loans or other financial products from Wells Fargo.

125. Wells Fargo's violations of Sections 51(b) and 51.5 of the Unruh Civil Rights Act and 42 U.S.C. § 1981 constitute unfair business practices in violation of Section 17200 of the California Unfair Competition Law.

126. Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class are entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

127. Under the California Unfair Competition Law, Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the Student Loan Class, Credit Card Class, Personal Loan Class and Auto Loan Class are entitled to injunctive relief and attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and the Class Members in each of the six classes pray for relief as follows:

128. Certification of the case as a class action on behalf of the proposed Class Members in the Student Loan Class, Credit Card Class, Business Direct Class, Personal Loan Class, Auto Loan Class, and Home Mortgage Class.

129. Designation of Plaintiffs Perez and Rodas as representatives on behalf of the Student Loan Class.

130. Designation of Plaintiffs Barajas, Diaz Vedoy, and Tabares Villafuerte as representatives on behalf of the Credit Card Class.

131. Designation of Plaintiff Acosta as a representative on behalf of the Business Direct Class. Designation of Plaintiff Diaz Vedoy as a representative on behalf of the Personal Loan Class.

132. Designation of Plaintiff Rodas as a representative on behalf of the Auto Loan Class.

133.   Designation of Plaintiff Acosta as a representative on behalf of the Home Mortgage Class.

134.   Designation of Plaintiffs' counsel of record as Class Counsel;

135.   A declaratory judgment that the practices complained of herein are unlawful and violate Section 1981, the Sections 51(b) and 51.5 of the Unruh Civil Rights Act, and Section 17200 *et seq.* of the California Unfair Competition Law;

136.   A preliminary and permanent injunction against Wells Fargo and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

137.   All damages sustained as a result of Wells Fargo's conduct, according to proof;

138.   Statutory damages to the extent allowable by law;

139.   Exemplary and punitive damages in an amount commensurate with Wells Fargo's ability to pay and to deter future conduct;

140.   Injunctive remedies including restitution;

141.   Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

142.   Pre-judgment and post-judgment interest, as provided by law; and

143.   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Washington, DC
      May 24, 2018

Respectfully submitted,

By:   /s/ *Patrick David Lopez*
     **OUTTEN & GOLDEN LLP**

Patrick David Lopez*
Daniel S. Stromberg*
601 Massachusetts Avenue
Second Floor West Suite
Washington DC, 20001
Telephone: (202) 847-4400
Facsimile:  (202) 847-4410
pdl@outtengolden.com
dstromberg@outtengolden.com

21

Jahan C. Sagafi    (Cal. Bar No. 224887)
Relic Sun          (Cal. Bar No. 306701)
Rachel Dempsey (Cal. Bar No. 310424)
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rsun@outtengolden.com
rdempsey@outtengolden.com

Ossai Miazad*
Michael N. Litrownik*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL FUND
Thomas A. Saenz   (Cal. Bar No. 159430)
Joel Marrero        (Cal. Bar No. 275601)
Andrés Gallegos     (Cal. Bar No. 313090)
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile:  (213) 629-0266
tsaenz@maldef.org
jmarrero@maldef.org
agallegos@maldef.org

*admitted *pro hac vice*

**Attorneys for Plaintiffs and the proposed Class**

FOURTH AMENDED COMPLAINT
CASE NO. 17-cv-00454-MMC