IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITZIE PEREZ, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant. | Case No. 17-cv-00454-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND IN PART DISMISS FOURTH AMENDED COMPLAINT**<br><br>Re: Dkt. No. 219 |

Before the Court is defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") "Motion to Strike Portions of the Fourth Amended Complaint and to Dismiss the Fourth Amended Complaint in Part," filed June 18, 2018. Plaintiffs have filed opposition, to which Wells Fargo has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Fourth Amended Complaint ("4AC"), plaintiffs, who seek to proceed individually and on behalf of a class, allege that Wells Fargo "outright refuses to extend certain types of credit to non-United States citizens," including persons who hold "Deferred Action for Childhood Arrival ('DACA') status." (See 4AC ¶ 2.)[2] The 4AC identifies the type or types of credit each individual plaintiff was allegedly denied.

First, consistent with the allegations made in the prior complaint, the Third Amended Complaint ("TAC"), plaintiffs allege as follows: (1) Mitzi Perez ("Perez") applied

---

[1] By order filed August 3, 2018, the Court took the matter under submission.

[2] Each individual plaintiff is a "DACA recipient." (See 4AC ¶¶ 38, 42, 53, 60, 66, 76.)

for a "student loan," which Wells Fargo denied "due to her citizenship status" (see 4AC ¶¶ 39-40); (2) Andres Acosta ("Acosta") applied for a "commercial equipment loan," which, "because he was neither a U.S. citizen nor a permanent resident," Wells Fargo denied and, additionally, "cancelled" a "credit card" previously issued to him (see 4AC ¶¶ 43, 46-47); (3) Sergio Barajas ("Barajas") applied for a "credit card" and was told his application could not be considered unless he had a "green card," which he did not have (see 4AC ¶¶ 54, 58); (4) Teresa Diaz Vedoy ("Diaz Vedoy") applied for a "personal loan" and a "credit card," both of which Wells Fargo denied because she was "not a permanent United States resident" (see 4AC ¶¶ 61, 64); (5) Victoria Rodas ("Rodas") applied for a "student loan," which Wells Fargo denied because she was "not a permanent resident" (see 4AC ¶¶ 71, 74); and (6) Samuel Tabares Villafuerte ("Tabares Villafuerte") applied for a "student credit card," which application Wells Fargo denied because he was "not a permanent resident" (see 4AC ¶¶ 77, 79).

Second, plaintiffs, for the first time in the 4AC, allege as follows: (1) after Acosta's application for a commercial equipment loan was denied and his credit card cancelled, he "began seeking a residential home mortgage," but was "deterred from applying to Wells Fargo" because he "believ[ed]" any such application "would be futile" (see 4AC ¶¶ 50-51); and (2) approximately two years before she applied for and was denied a student loan, Rodas "applied online to Wells Fargo for an auto loan" and her application was denied for the stated reason that "her Social Security number could not be validated in [Wells Fargo's] system" (see 4AC ¶ 67).

Plaintiffs allege that all of the above-referenced failures to provide credit constituted discrimination on the basis of alienage, in violation of 42 U.S.C. § 1981. Additionally, on behalf of Perez, Barajas, Diaz Vedoy, Rodas and Tabares Villafuerte, plaintiffs allege such failures constituted discrimination on the basis of said individuals' immigration status, in violation of the Unruh Civil Rights Act, § 51 of the California Civil Code, and constituted unfair business practices, in violation of the California Unfair Competition Law, § 17200 of the California Business & Professions Code.

2

**DISCUSSION**

By the instant motion, Wells Fargo moves to dismiss the claims alleged for the first time in the 4AC, specifically, the claims based on Wells Fargo's allegedly having deterred Acosta from applying for a home mortgage and having denied Rodas's application for an automobile loan. Wells Fargo also moves to strike from plaintiffs' proposed class definition the references to home mortgages and automobile loans. (See 4AC ¶ 86.e-f.)

**A. Motion To Dismiss**

**1. Acosta: Home Mortgage**

As noted, plaintiffs allege Wells Fargo violated § 1981 by deterring Acosta from applying for a home mortgage. Wells Fargo argues plaintiffs have failed to allege facts to support a finding that, had Acosta applied for a home mortgage, Wells Fargo would have denied such application on the basis that Acosta is not a citizen or a permanent resident.

Under the "futile gesture doctrine," a plaintiff who has not submitted an application can establish a discrimination claim by "demonstrat[ing]" he had "a reasonable belief that the [defendant] was so biased that resort to its procedures would have been futile." See Stiefel v. Bechtel Corp., 624 F.3d 1240, 1246 (9th Cir. 2010) (internal quotation and citation omitted) (noting futile gesture doctrine applies to employment discrimination claims under Title VII and Americans with Disabilities Act); see also Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1451-52 (4th Cir. 1990) (finding futile gesture doctrine applicable to § 1981 claim based on racial discrimination in housing). The doctrine has been explained by the Supreme Court, in the context of an employment discrimination claim, as follows:

> The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
>
> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential

3

> applicants more subtly but just as clearly by an employer's actual practices by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 365-366 (1977).

Here, the issue presented is whether plaintiffs have alleged sufficient facts to support a finding that Acosta reasonably believed Wells Fargo would deny any application he submitted for a home mortgage on the basis of his alienage and/or immigration status. Plaintiffs argue their allegations suffice, in particular, their allegation that Wells Fargo at an earlier time had told Acosta an application he had submitted for a commercial equipment loan was denied "because he was neither a U.S. citizen nor a permanent resident" and that such denial "was pursuant to Wells Fargo's policy." (See 4AC ¶¶ 45-46.) Plaintiffs also rely on their allegation that, "[s]hortly after Wells Fargo denied him the [commercial equipment] loan, Wells Fargo also abruptly cancelled . . . Acosta's credit card account" (see 4AC ¶ 47); given such temporal proximity, plaintiffs contend, a trier of fact could infer Wells Fargo's reason on both of those occasions was the same.

As Wells Fargo points out, however, plaintiffs allege that, one year prior to Acosta's applying for the commercial equipment loan, Acosta applied for and obtained an automobile loan,[3] which loan plaintiffs do not allege was cancelled. Unlike credit cards and the commercial equipment loan for which Acosta applied, home mortgages, like automobile loans, are secured transactions. Consequently, even assuming plaintiffs' allegations would support a finding that Acosta reasonably could have believed Wells Fargo has a policy against making unsecured loans of any type to persons who are not

---

[3]The Court understands the "loan from Wells Fargo's dealership services" (see 4AC ¶ 45) to be an automobile loan.

4

citizens or permanent residents, plaintiffs' allegations are insufficient to support a finding that Acosta reasonably could have believed Wells Fargo has a policy of not making secured loans to such persons. Compare Gifford v. Atchison, Topeka & Santa Fe Ry. Co., 685 F.2d 1149, 1154 (9th Cir. 1982) (holding plaintiff who did not apply for position of "wire chief" could rely on futile gesture doctrine to support gender discrimination claim "because of [employer's] prior refusal to hire women for the position of wire chief" and its "well-known policy of excluding women from the job"), with Stiefel, 624 F.3d at 1246 (holding plaintiff who did not apply for position for which he would need accommodation could not rely on futile gesture doctrine to support disability discrimination claim, where plaintiff "admitted [employer] accommodated the disabilities of other employees").

Accordingly, to the extent plaintiffs' § 1981 claim is based on Wells Fargo's having deterred Acosta from applying for a home mortgage, the claim is subject to dismissal.

**2. Rodas: Automobile Loan**

As noted, plaintiffs allege Wells Fargo violated federal and state statutes by denying Rodas an automobile loan. Wells Fargo argues plaintiffs have failed to plead sufficient facts to support a finding that such denial was based on alienage or immigration status.

In support of their claim that Wells Fargo's denial was discriminatory, plaintiffs rely on the follow allegation:

> In approximately July 2014, . . . Rodas applied online to Wells Fargo for an auto loan. [She] had DACA status and an EAD and Social Security number at the time she submitted this application. Shortly after she applied online, [she] recalls following up on her application in person at a Wells Fargo branch, where she was told that her Social Security number could not be validated in their system. As a result, Wells Fargo subsequently denied her application.

(See 4AC ¶ 67.) Plaintiffs argue such allegation suffices to state a claim under both § 1981 and §51,[4] for the asserted reason that "[i]t is plausible on the face of the 4AC that

---

[4] Plaintiffs do not oppose dismissal of their § 17200 claim to the extent it is based on Wells Fargo's denial of Rodas's application for an automobile loan. (See Pls.' Opp. at 14:28.)

5

1  Rodas's Social Security number prevented her from receiving a loan because it identified
2  her to Wells Fargo as neither a citizen nor legal permanent resident." (See Pls.' Opp. at
3  12:11-13.) As plaintiffs acknowledge, however, Social Security numbers are "assigned
4  entirely at random." (See id. at 12:8-9.) Under such circumstances, a claim based on
5  Wells Fargo's alleged ability to identify Rodas's status from such number cannot be
6  deemed plausible and, consequently, fails.[5] See Bell Atlantic Corp. v. Twombly, 550 U.S.
7  544, 570 (2007) (holding complaint failing to "state a claim that is plausible on its face" is
8  subject to dismissal).

9  Accordingly, to the extent plaintiffs' claims are based on Wells Fargo's denial of
10 Rodas's application for an automobile loan, the claims are subject to dismissal.

11 **B. Motion to Strike**

12 Wells Fargo seeks an order striking from the 4AC's proposed class definition all
13 references to home mortgages and automobile loans.

14 By order filed May 9, 2018, the Court granted Wells Fargo's motion to strike from
15 the proposed class definition, as set forth in the TAC, the references to home mortgages
16 and automobile loans. (See Order, filed May 9, 2018, at 6:21-23.) In so doing, the Court
17 found plaintiffs had not identified any plaintiff whose claim was "typical" of those of
18 putative class members who unsuccessfully had sought a home mortgage or automobile
19 loan (see id. at 5:24 - 6:6 (citing Fed. R. Civ. P. 23(a)(3))), and afforded plaintiffs leave to
20 amend to add, either on behalf of an existing plaintiff or a new plaintiff, a discrimination
21 claim based on Wells Fargo's denial of an application for a home mortgage and/or an
22 automobile loan.

23 //

---

[5]Plaintiffs, citing a page on the Social Security Administration's website, assert that a Social Security card issued to a citizen or a permanent resident states the individual's name and number only, whereas a Social Security card issued to a DACA recipient additionally includes the statement "Valid For Work Only with DHS Authorization." (See id. at 11:21 - 12:3 (citing www.ssa.gov/ssnumber/cards.htm).) Plaintiffs, however, do not allege in the 4AC, or assert in the opposition that they could amend to add an allegation, that Rodas showed her card to Wells Fargo when she sought an automobile loan.

In the 4AC, plaintiffs, as noted, added discrimination claims based on their allegations that Wells Fargo deterred Acosta from applying for a home mortgage and denied Rodas's application for an automobile loan. As discussed above, however, those new claims are subject to dismissal.

Accordingly, plaintiffs' having failed to cure the deficiencies identified in the Court's May 9 order, the references in the proposed class definition to home mortgages and automobile loans will be stricken.

## CONCLUSION

For the reasons stated above, Wells Fargo's Motion to Strike Portions of the Fourth Amended Complaint and to Dismiss the Fourth Amended Complaint in Part is hereby GRANTED. Specifically, plaintiffs' claims based on Wells Fargo's allegedly having deterred Acosta from applying for a home mortgage and having denied Rodas's application for an automobile loan are hereby DISMISSED, and the references in the proposed class definition to home mortgages and automobile loans are hereby STRICKEN.

**IT IS SO ORDERED.**

Dated: August 15, 2018

MAXINE M. CHESNEY
United States District Judge