Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rsun@outtengolden.com
rdempsey@outtengolden.com

Thomas A. Saenz (Cal. Bar No. 159430)
Joel Marrero (Cal. Bar No. 275601)
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
tsaenz@maldef.org
jmarrero@maldef.org

*Attorneys for Plaintiffs and the Proposed Class*
*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

MITZIE PEREZ, ANDRES ACOSTA, SERGIO BARAJAS, TERESA DIAZ VEDOY, VICTORIA RODAS, and SAMUEL TABARES VILLAFUERTE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

Defendant.

**CASE NO. 17-cv-00454-MMC**

**FIFTH AMENDED COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1981 AND CALIFORNIA STATE LAW**

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiffs Mitzie Perez, Andres Acosta, Sergio Barajas, Teresa Diaz Vedoy, Victoria Rodas, and Samuel Tabares Villafuerte ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, bring the following allegations against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"):

**SUMMARY OF CLAIM**

1. Plaintiffs bring this case against Wells Fargo for unlawful discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981") and the Unruh Civil Rights Act, as codified by California Civil Code §§ 51 *et seq.*

2. Several business lines of Wells Fargo, an American multinational banking and financial services company, outright refuse to extend certain types of credit to non-United States citizens who reside in the United States and hold Deferred Action for Childhood Arrivals ("DACA") status. These business lines include Education Financial Services ("EFS"), which offers student loans, Consumer Financial Services ("CFS"), which offers unsecured credit cards and unsecured personal loans,[1] and Business Direct ("BD"), which offers secured and unsecured small business credit cards and loans. Wells Fargo's policies of denying aliens with DACA status the right to contract for credit based on alienage or immigration status is discriminatory and unlawful under Section 1981 and Sections 51(b) and 51.5 of the Unruh Civil Rights Act.

**PARTIES**

***Plaintiff Mitzie Perez***

3. Plaintiff Mitzie Perez was an undergraduate student at the University of California, Riverside from Fall 2016 to Winter 2017, majoring in Gender & Sexuality Studies.

4. Ms. Perez has authorization to work in the U.S. under DACA.

***Plaintiff Andres Acosta***

5. Plaintiff Andres Acosta is a resident of Austin, Texas and a small business owner. He has a bachelor's degree in construction science and a master's degree in real estate from Texas A&M University.

---

[1] CFS also offers secured credit cards and secured personal loans, which are not a part of Plaintiffs' claims in this action.

6. Mr. Acosta has authorization to work in the U.S. under DACA.

***Plaintiff Sergio Barajas***

7. Plaintiff Sergio Barajas is a student at Chabot Community College in Hayward, California.

8. Mr. Barajas has authorization to work in the U.S. under DACA.

***Plaintiff Teresa Diaz Vedoy***

9. Plaintiff Teresa Diaz Vedoy is a recent graduate of Cerritos College in Norwalk, California, where she majored in Anthropology.

10. Ms. Diaz Vedoy has authorization to work in the U.S. under DACA.

***Plaintiff Victoria Rodas***

11. Plaintiff Victoria Rodas is a graduate student at Loyola Marymount University ("LMU"), located in Los Angeles, California, studying counseling.

12. Ms. Rodas has authorization to work in the U.S. under DACA.

***Plaintiff Samuel Tabares Villafuerte***

13. Plaintiff Samuel Tabares Villafuerte is an undergraduate student at California State Polytechnic University, located in Pomona, California, majoring in Engineering.

14. Mr. Tabares Villafuerte has authorization to work in the U.S. under DACA.

***Defendant***

15. Wells Fargo is an American multinational banking and financial services company headquartered in San Francisco, California. It is the fourth largest bank in the United States.

16. Wells Fargo Bank, N.A. is a South Dakota corporation authorized to do business in this state.

17. Wells Fargo Bank, N.A. is a national bank and the primary United States operating subsidiary of Wells Fargo.

18. Wells Fargo Bank, N.A. offers consumers a range of financial and credit products, including private student loans, credit cards, small business loans and credit products, personal loans, auto loans, and home mortgages.

19. Wells Fargo Bank, N.A., by soliciting, conducting, and transacting business in the state of California, engages in continuous, permanent, and substantial activity within the state.

20. Wells Fargo Bank, N.A. is not a federal enclave and therefore is subject to Plaintiffs' Section 1981 claim.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction over Plaintiffs' Section 1981 claim pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

22. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

23. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Wells Fargo conducts business within this district.

24. Intradistrict assignment: Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred at Wells Fargo's headquarters located in San Francisco County.

**BACKGROUND**

25. On June 15, 2012, President Obama announced that the Department of Homeland Security ("DHS") would no longer remove certain young immigrants under its authority to grant deferred action as embodied in DACA.

26. DACA's purpose, according to President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[2]

---

[2] President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited June 28, 2019).

27. DACA is a form of deferred action, a discretionary grant of authorized stay by the federal government. Deferred action granted through DACA is valid for two years and is subject to renewal thereafter.

28. DACA mandates that persons who are granted deferred action will be eligible to obtain an Employment Authorization Document (an "EAD" or "federal work permit") and a Social Security number. In other words, those granted deferred action and in possession of an EAD are legally authorized to work in the United States and can prove their identity.

29. As of March 31, 2016, the United States Citizenship and Immigration Services ("USCIS") has approved over 1.3 million initial and renewal requests for DACA.[3]

30. There is no federal or state law or regulation that restricts banks from providing financial products to customers because the customer is an alien. Under federal law, alienage is merely one factor among many used to verify enough information to confirm the true identity of the customer.

31. For instance, the Federal Financial Institutions Examination Council ("FFIEC") provides uniform principles and standards to offer guidance for federal regulators. The FFIEC annually publishes the Bank Secrecy Act/Anti-Money Laundering Examination Manual for Money Services, which contains a compliance program called the Customer Identification Program ("CIP"), as required by section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318. Pursuant to CIP, institutions providing financial services, including banks, must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer. The goal behind this requirement is to prevent the funding of terrorism both inside and outside of the United States.[4]

32. According to the Bank Secrecy Act/Anti-Money Laundering Examination Manual, a bank's CIP must contain account-opening procedures detailing the identifying information that must be

---

[3] USCIS, Number of I-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status: 2012-2016 (March 31), *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/I821d_performancedata_fy2016_qtr2.pdf (last visited June 28, 2019).

[4] *See* 12 C.F.R. 208.63(b), 211.5(m), 211.24(j) (Board of Governors of the Federal Reserve System); 12 C.F.R. 326.8(b) (Federal Deposit Insurance Corporation); 12 C.F.R. 748.2(b) (National Credit Union Administration); 12 C.F.R. 21.21 (Office of the Comptroller of the Currency); 12 C.F.R. 563.177(b) (Office of Thrift Supervision); and 31 C.F.R. 103.121 (FinCEN).

obtained from each customer. At a minimum, the bank must obtain the following information from each customer before opening an account: 1) name, 2) date of birth, 3) address, and 4) identification number (*e.g.*, Social Security number, taxpayer identification number or an alien identification number).[5]

33. The bank's procedure must also describe when it will use documents, non-documentary methods, or a combination of both. Federal banking agencies expect that banks will review an unexpired government-issued form of identification from most customers. The identification must include evidence of the customer's nationality or residence and bear a photograph or similar safeguard.[6]

34. Compliance with the CIP is to ensure that a bank verify enough information to form a reasonable belief that it knows the true identity of the customer.[7]

35. "Opening an account" and a financial services "customer" for purposes of the Bank Secrecy Act/Anti Money Laundering Examination Manual for Money Services includes an individual who has applied for a loan application.[8]

## STATEMENT OF FACTS

**Plaintiff Perez**

36. Ms. Perez is a DACA recipient with an EAD and Social Security number. She was a student at UC Riverside between Fall 2016 and Winter 2017.

37. On August 26, 2016, Ms. Perez sought a student loan through the Wells Fargo website to help pay for cost of attendance and college-incurred debt. After answering a few preliminary questions, including that she was seeking a loan to pay student expenses, that she was a junior in college, and that she was neither a U.S. citizen nor a permanent resident, she was denied a loan, receiving a message that read: "Thank you for your interest in a Wells Fargo student loan. However, based on information you provided, we do not have a student loan option that meets your needs. This could be due to the school you selected, your field of study, and/or your citizenship status."

---

5 Fed. Fin. Inst. Examination Council, Bank Secrecy Act/Anti-Money Laundering Examination Manual 54 (2010), *available at* http://www.ffiec.gov/bsa_aml_infobase/documents/bsa_aml_man_2010.pdf (last visited May 28, 2019).

6 *Id.* at 54 n.48.

7 *Id.* at 52-4.

8 *Id.* at 53.

38. In an attempt to better understand the reason for the denial, Ms. Perez returned to the prior screen and changed the response to the question about citizenship to "I am a permanent resident alien," and she received information about a student loan option. At the top of the screen there was a note that read: "Based on the citizenship status you provided, a U.S. citizen cosigner will be required for this application." Ms. Perez was thus denied a student loan due to her citizenship status. Had Ms. Perez been allowed to apply for a loan, she would have had a cosigner available to meet Wells Fargo's cosigner requirement.

39. Ms. Perez suffered harm as a result of Wells Fargo's denial of her student loan application because she was denied the opportunity to contract and because she was forced to finance her cost of attendance using various credit cards with interest rates higher than she would have received through a student loan.

**Plaintiff Acosta**

40. Mr. Acosta is a DACA recipient with an EAD and Social Security number. He works at a real estate company and is a small business owner in Austin, Texas. He has a bachelor's degree in construction science and a master's degree in real estate from Texas A&M University.

41. On or around August 2015, Mr. Acosta applied for a commercial equipment loan for approximately $13,000 at a local Wells Fargo branch in Austin, Texas. Mr. Acosta wanted to use the loan to purchase a truck and expand his construction business. A personal banker from the branch assisted him with his application. Mr. Acosta informed the Wells Fargo personal banker that he was neither a U.S. citizen nor a permanent resident. The personal banker told Mr. Acosta that he would just go ahead and submit Mr. Acosta's application and await a response.

42. A couple of days later, the same Wells Fargo personal banker called Mr. Acosta and told him to return to the branch to provide further documentation for his Social Security number. Mr. Acosta provided a copy of his Social Security card, his EAD, and his driver's license.

43. At the time of his commercial equipment loan application, Mr. Acosta already had a Wells Fargo credit card which he maintained in good standing and a loan from Wells Fargo's dealership services, both of which he obtained in 2014. He also maintained both personal and business checking accounts with Wells Fargo.

44. Within two weeks after he provided additional documentation, the same Wells Fargo personal banker called Mr. Acosta and informed him that Wells Fargo did not approve his loan application because he was neither a U.S. citizen nor a permanent resident. The Wells Fargo personal banker told Mr. Acosta that this was pursuant to Wells Fargo's policy. A few days later, Mr. Acosta received a letter in the mail from Wells Fargo confirming his loan denial.

45. Shortly after Wells Fargo denied him the loan, Wells Fargo also abruptly cancelled Mr. Acosta's credit card account without giving him notice and sent his outstanding credit card balance—which was approximately $4,400—to its Wells Fargo Collections Department.

46. Mr. Acosta called Wells Fargo's customer service line to request re-activation of his credit card. The Wells Fargo customer representative who he spoke with told him that they would investigate and follow up. He did not hear back from Wells Fargo and his credit card was not reactivated.

47. Mr. Acosta suffered harm as a result of Wells Fargo's denial of his small business loan application because he was denied the opportunity to contract and because he had to take out a loan with the truck dealership directly at a higher interest rate than he would have obtained through a lending bank.

**Plaintiff Barajas**

48. Mr. Barajas is a DACA recipient with an EAD and Social Security number. He is a student at Chabot Community College in Hayward, California, pursuing an Associate's degree in Computer Science.

49. On or about June 2016, Mr. Barajas applied for a Wells Fargo credit card in person at a Wells Fargo branch in San Lorenzo, California. Mr. Barajas believed that because he already had a checking and savings account with Wells Fargo, that he could also obtain a credit card from the bank. Mr. Barajas wanted to use the credit card to pay for his educational expenses, such as tuition and books, so that he could attend school full-time. Full-time tuition was then approximately $2,000 per semester.

50. He filled out the Wells Fargo credit card application form and submitted it to a personal banker.

51. On or around June 22, 2016, Mr. Barajas received a letter from Wells Fargo asking him for his Social Security number.

52. After receiving a phone call from the personal banker to whom Mr. Barajas had submitted his application, Mr. Barajas went back to the San Lorenzo branch in person and provided Wells Fargo with a copy of his Social Security card and driver's license. Mr. Barajas also informed the personal banker of his DACA status at that time. The personal banker assisting him made copies of his documents and uploaded them with his application.

53. Later the same day, Wells Fargo called Mr. Barajas to request a copy of his "green card." The Wells Fargo representative told him that if he did not have a green card, Wells Fargo would deny his credit card application. Left with no choice, Mr. Barajas instructed the Wells Fargo representative to cancel his application.

54. Mr. Barajas suffered harm as a result of Wells Fargo's denial of his credit card application because he was denied the opportunity to contract and because he was forced to use savings to pay for his tuition.

**Plaintiff Diaz Vedoy**

55. Ms. Diaz Vedoy is a DACA recipient with an EAD. She is recently graduated from Cerritos College with an associate degree in Anthropology.

56. On or about January 28, 2017, Ms. Diaz Vedoy visited a Wells Fargo branch office seeking a credit card to consolidate the balances from three other cards and save on interest rate payments.

57. After completing paperwork for the credit card application and leaving the Wells Fargo branch office, she later received a telephone call asking her to return to the Wells Fargo branch office and provide a copy of her Social Security card.

58. On or about February 7, 2017, Ms. Diaz Vedoy returned to the Wells Fargo branch office with her Social Security card. A Wells Fargo employee made a photocopy of Ms. Diaz Vedoy's Social Security card and returned it to her.

59. In early February 2017, Ms. Diaz Vedoy received a letter from Wells Fargo dated February 8, 2017, stating that her application for a credit card was denied because she was "not a permanent United States resident."

60. Ms. Diaz Vedoy suffered harm as a result of Wells Fargo's denial of credit because she was denied the opportunity to contract and because she was forced to take out $3,000 from her personal savings to pay for her parents' immigration application and cover college-related expenses on credit cards with higher interest rates.

**Plaintiff Rodas**

61. Ms. Rodas is a DACA recipient with an EAD and Social Security number. She is a graduate student at LMU, studying counseling.

62. In early June 2016, Ms. Rodas contacted Wells Fargo to inquire about applying for a student loan to pay for her summer session. The Wells Fargo representative informed Ms. Rodas that she would need a co-signer because she was not a U.S. citizen, and that she would need to fill out her application online.

63. Soon thereafter, Ms. Rodas submitted a Wells Fargo student loan application online. She noted in her application that she was a "Temporary Resident Alien," and submitted her EAD and Social Security card.

64. Ms. Rodas obtained a co-signer, who also submitted paperwork by mail in connection with Ms. Rodas's application.

65. On or around June 13, 2016, a Wells Fargo representative contacted Ms. Rodas, requesting that she submit either an I-20 or an I-94 form. Ms. Rodas informed the Wells Fargo representative that she did not have either of those forms because she did not have the visas associated with those forms. The Wells Fargo representative suggested that she contact LMU and ask if they would assist her in obtaining an S-1 visa for international students. At Wells Fargo's behest, Ms. Rodas contacted LMU to inquire about the S-1 visa and LMU told her she was not qualified for such a visa.

66. Ms. Rodas called Wells Fargo sometime in July 2016 to follow-up on her student loan application. A Wells Fargo representative informed Ms. Rodas that her application had been denied

because she was not a permanent resident. Ms. Rodas later received confirmation about her denial in the mail.

67. Ms. Rodas suffered harm as a result of Wells Fargo's denial of her student loan application because she was denied the opportunity to contract and because she ended up borrowing thousands of dollars from various family members and had to pay some educational expenses from her own savings.

**Plaintiff Tabares Villafuerte**

68. Mr. Tabares Villafuerte is a DACA recipient with an EAD. He is a student at California State Polytechnic University, Pomona, California.

69. In January 2017, Mr. Tabares Villafuerte visited a Wells Fargo branch office in Riverside, California, seeking a student credit card to build a positive credit history and to pay for educational expenses. After completing the credit card application with a personal banker and leaving the Wells Fargo branch office, he later received a telephone call from the personal banker asking him to return to the branch office and provide a copy of his Social Security card.

70. Mr. Tabares Villafuerte returned soon thereafter to the Wells Fargo branch office with his Social Security card. The Wells Fargo representative made a photocopy of Mr. Tabares Villafuerte's Social Security card, as well as his work authorization card and driver's license, and returned them to him.

71. Soon thereafter, Mr. Tabares Villafuerte received a phone call from the same personal banker informing him that Wells Fargo denied his credit card application because his Social Security number was "a different kind of social." Then a few days later, he received a letter dated January 30, 2017, from Wells Fargo stating that his application for a credit card was denied because he was "not a permanent United States resident."

72. Mr. Tabares Villafuerte suffered harm as a result of Wells Fargo's denial of his student credit card application because he was denied the opportunity to contract and because he was forced to use personal savings for his educational expenses.

**Wells Fargo's Policies Are Unlawful and Harm Plaintiffs**

73. Wells Fargo's refusal to offer Plaintiffs an opportunity to contract for credit because of its arbitrary citizenship requirements is a violation of 42 U.S.C. § 1981.

74. Wells Fargo's refusal to offer Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte an opportunity to contract for credit violates California's Unruh Civil Rights Act.

75. There is an actual and substantial controversy between Plaintiffs and Wells Fargo.

**CLASS ACTION ALLEGATIONS**

76. Plaintiffs Rodas, Diaz Vedoy, Tabares Villafuerte, and Acosta bring their class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of three nationwide classes.

77. Plaintiffs Rodas, Diaz Vedoy, and Tabares Villafuerte also bring class allegations on behalf of two California subclasses.

78. Each class consists of all non-United States citizens who resided in the United States and held DACA status at the relevant time they applied for credit from Wells Fargo ("DACA Residents") from January 30, 2015 through the date of final judgment in this action ("Covered Period"), defined as follows:

a. All DACA Residents during the Covered Period who applied for a Wells Fargo student loan and were declined by Wells Fargo under decline code "d01" (the "EFS Class");

b. All DACA Residents during the Covered Period who applied for (i) a Wells Fargo unsecured credit card and were declined by Wells Fargo under decline codes "1409" or "1614," or (ii) a Wells Fargo unsecured personal loan and were declined by Wells Fargo under decline code "34N," or, between January 30, 2015 and February 13, 2015 only, decline code "321" (the "CFS Class");

c. All DACA Residents during the Covered Period who applied for a Wells Fargo small business credit card or loan, whether secured or unsecured, and were declined by Wells Fargo under decline codes "M93" or "Q14" (the "BD Class").

79. Each subclass consists of DACA Residents in California, defined as follows:

a. All DACA Residents in California during the Covered Period who applied for a Wells Fargo unsecured student loan and were declined by Wells Fargo under decline code "d01" (the "EFS California Subclass");

b. All DACA Residents in California during the Covered Period who applied for (i) a Wells Fargo unsecured credit card and were declined by Wells Fargo under decline codes "1409" or "1614," or (ii) a Wells Fargo unsecured personal loan and were declined by Wells Fargo under decline code "34N," or, between January 30, 2015 and February 13, 2015 only, decline code "321" (the "CFS California Subclass").

80. Plaintiff Rodas is a member of the EFS Class and the EFS California Subclass.

81. Plaintiffs Diaz Vedoy and Tabares Villafuerte are members of the CFS Class and the CFS California Subclass.

82. Plaintiff Acosta is a member of the BD Class.

83. EFS decline code "d01" reflects a credit denial based on alienage and immigration status.

84. CFS decline codes "1409," "1614," and "34N" reflect credit denials based on alienage and immigration status.

85. From January 30, 2015 through February 13, 2015 only, CFS decline code "321" reflected a credit denial based on alienage and immigration status.

86. BD decline codes "M93" and "Q14" reflect a denial based on alienage and immigration status.

87. Class Members in each of the three classes and two subclasses are so numerous that joinder of all of them is impracticable. There are over 500 members of the EFS Class, over 100,000 members of the CFS Class, and over 500 members of the BD Class. There are also over 200 members of the EFS California Subclass and over 25,000 members of the CFS California Subclass. Wells Fargo has offices throughout the United States and is one of the largest consumer lenders in the country, and USCIS has approved over 800,000 initial requests for DACA.

88. There are questions of law and fact common to the three classes and two subclasses, and these questions predominate over any questions affecting only individual members. Common questions

include, for each class, among others: (1) whether Wells Fargo maintains policies that categorically exclude Plaintiffs and Class Members outright from credit because of Plaintiffs' and Class Members' alienage or immigration status; (2) whether Wells Fargo's policies as set forth above deprives Plaintiffs and Class Members of the right to contract in violation of Section 1981; (3) whether Wells Fargo's policies as set forth above deprive Plaintiffs and Class Members in the EFS California Subclass and CFS California Subclass of rights under the Unruh Civil Rights Act; (4) whether Plaintiffs and the Class Members suffered harm by reason of Wells Fargo's unlawful policies; (5) whether Plaintiffs and Class Members in the EFS California Subclass and CFS California Subclass are entitled to statutory damages under the Unruh Civil Rights Act; (6) whether Plaintiffs and Class Members are entitled to punitive damages; (7) whether Plaintiffs and Class Members are entitled to equitable and injunctive relief, and if so, what equitable and injunctive relief is warranted; and (8) the scope of a resulting permanent injunction.

89. The claims of Plaintiffs Rodas, Diaz Vedoy, Tabares Villafuerte, and Acosta are typical of the claims of the Class Members in each of the three classes: (1) Plaintiffs were within the jurisdiction of the United States and held DACA status; (2) Plaintiffs applied to Wells Fargo for credit; (3) Plaintiffs were declined because they did not meet Wells Fargo's policies that restricted eligibility to U.S. citizens or legal permanent residents; and (4) Plaintiffs were declined under denial codes that reflect a credit denial based on alienage and immigration status. Each of these claims is substantially shared by every Class Member in each of the three classes. Each of the claims arises from the same course of conduct by Wells Fargo, and the relief sought is common.

90. In addition, Plaintiffs Diaz Vedoy's and Tabares Villafuerte's claims that Wells Fargo declined their applications for unsecured credit cards under decline codes "1409" or "1614" in violation of Section 1981 and the Unruh Act are typical of the claims of the CFS Class Members who were declined unsecured personal loans under decline code "34N," or, from January 30, 2015 through February 13, 2015 only, decline code "321," because unsecured credit cards and unsecured personal loans share the same credit policy that restricts eligibility to only U.S. citizens or legal permanent residents, both credit products are unsecured, and all four decline codes reflect a denial based on alienage and immigration status. Therefore, Plaintiffs Diaz Vedoy's and Tabares Villafuerte's claims

are "reasonably coextensive" and "so interrelated" with the claims of the CFS Class Members declined personal loans under decline code "34N" or, from January 30, 2015 through February 13, 2015 only, decline code "321," that the interests of those CFS Class Members declined personal loans "will be fairly and adequately protected." *See* ECF No. 197 at 5-6 (Order Granting In Part And Denying In Part Defendant's Motion To Strike And To Dismiss; Denying As Moot Defendant's Motion to Stay Discovery) (quoting *Parsons v. Ryan*, 654 F.3d 657, 685 (9th Cir. 2014)).

91. Plaintiffs Rodas, Diaz Vedoy, Tabares Villafuerte, and Acosta will fairly and adequately represent and protect the interests of the Class Members in each of the three classes. Plaintiffs have no conflict with any Class Member. Plaintiffs are committed to the goal of having Wells Fargo change its business practices to stop discriminating against Plaintiffs and others who hold DACA status.

92. Plaintiffs have retained counsel competent and experienced in complex discrimination class actions.

93. The universe of people affected by Wells Fargo's unlawful policies is ascertainable through Wells Fargo's company records and its website records, logs, and data and therefore each of the three proposed classes is ascertainable.

94. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wells Fargo has acted and/or refused to act on grounds generally applicable to each of the three nationwide classes, making appropriate declaratory, equitable, and injunctive relief with respect to Plaintiffs and the Class Members as a whole. Wells Fargo excludes Class Members in each of the three classes outright from credit due to alienage or immigration status. The Class Members in each of the three classes are entitled to declaratory, equitable, and injunctive relief to end Wells Fargo's common, unfair, and discriminatory policies.

95. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members in the three classes and the two California subclasses, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The Class Members have been damaged and are entitled to recovery of statutory penalties under the Unruh Civil Rights Act and other damages, not including actual damages,

because of Wells Fargo's common, unfair, and discriminatory policies. Damages are capable of measurement on a classwide basis. The propriety and amount of punitive damages are based on Wells Fargo's conduct, making these issues common each of the three classes. Plaintiffs and the Class Members will rely on common evidence to resolve their legal and factual questions, including the applicable credit policies in the relevant period. There are no pending actions raising similar claims. Wells Fargo engages in continuous, permanent, and substantial activity in California. There will be no undue difficulty in the management of this litigation as a class action.

**FIRST CLAIM FOR RELIEF**
**Alienage Discrimination**
**(42 U.S.C. § 1981)**

96. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

97. Plaintiffs bring this claim on their own behalf.

98. Plaintiff Rodas also brings this claim on behalf of the EFS Class.

99. Plaintiffs Diaz Vedoy and Tabares Villafuerte also bring this claim on behalf of the CFS Class.

100. Plaintiff Acosta also brings this claim on behalf of the BD Class.

101. Plaintiffs are persons within the jurisdiction of the United States.

102. Plaintiffs are aliens who hold DACA status.

103. Plaintiffs have the right to make and enforce contracts in the United States and are entitled to the full and equal benefits of the law.

104. Wells Fargo intentionally discriminated against Plaintiffs and the Class Members in each of the three classes because of alienage by denying them the opportunity to contract for credit.

105. Wells Fargo's intentional discrimination against Plaintiffs and the Class Members in each of the three classes interfered with their right to make and enforce contracts for credit.

106. Wells Fargo's policies of denying credit based on Plaintiffs' and the Class Members' alienage harmed Plaintiffs and the Class Members and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

107. Plaintiffs and the Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive and equitable relief sought in this action is the only

means of securing complete and adequate relief. Plaintiffs and the Class Members they seek to represent are now suffering, and will continue to suffer, irreparable injury from Wells Fargo's discriminatory acts and omissions.

**SECOND CLAIM FOR RELIEF**
**Violation of the Unruh Civil Rights Act**
**(California Civil Code §§ 51 and 52 et seq.)**

108. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

109. Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte bring this claim on their own behalf.

110. Plaintiff Rodas also brings this claim on behalf of the EFS California Subclass.

111. Plaintiffs Diaz Vedoy and Tabares Villafuerte also bring this claim on behalf of the CFS California Subclass.

112. Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are persons within the State of California.

113. Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are aliens who hold DACA status.

114. Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever no matter their immigration status and no business establishment of any kind whatsoever may refuse to contract with Plaintiffs because of their immigration status.

115. Wells Fargo intentionally discriminated against Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the EFS California Subclass and CFS California Subclass on the basis of immigration status by denying them the opportunity to contract for credit, and in doing so denied them the full and equal services of its business.

116. Wells Fargo's intentional discrimination against Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the EFS California Subclass and CFS California Subclass interfered with their right to full and equal services and their right to make and enforce contracts for credit.

117. Wells Fargo's policies of denying credit based on the immigration status of Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte, and the Class Members in the EFS California Subclass and CFS California Subclass Class harmed Plaintiffs and the Class Members and constitutes unlawful discrimination in violation of Sections 51(b) and 51.5 of the Unruh Civil Rights Act.

118. Pursuant to the Section 52(a) of the Unruh Civil Rights Act, Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the EFS California Subclass and CFS California Subclass are entitled to statutory damages of up to three times the amount of actual damages suffered per violation, but no less than $4,000, and attorneys' fees. Pursuant to Section 52(c) of the Unruh Civil Rights Act, Plaintiffs Perez, Barajas, Diaz Vedoy, Rodas, and Tabares Villafuerte and the Class Members in the EFS California Subclass and CFS California Subclass are also entitled to injunctive and other equitable relief against such unlawful practices in order to prevent future damages, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class Members in each of the three classes pray for relief as follows:

119. Certification of the case as a class action on behalf of the proposed Class Members in the EFS Class, CFS Class, BD Class, EFS California Subclass, and CFS California Subclass.

120. Designation of Plaintiff Rodas as the representative on behalf of the EFS Class and EFS California Subclass.

121. Designation of Plaintiffs Diaz Vedoy and Tabares Villafuerte as representatives on behalf of the CFS Class and CFS California Subclass.

122. Designation of Plaintiff Acosta as a representative on behalf of the BD Class.

123. Designation of Plaintiffs' counsel of record as Class Counsel;

124. A declaratory judgment that the practices complained of herein are unlawful and violate Section 1981 and Sections 51(b) and 51.5 of the Unruh Civil Rights Act;

125. A preliminary and permanent injunction against Wells Fargo and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

126. All damages sustained as a result of Wells Fargo's conduct, according to proof;

127. Statutory damages to the extent allowable by law;

128. Exemplary and punitive damages in an amount commensurate with Wells Fargo's ability to pay and to deter future conduct;

129. Injunctive remedies including restitution;

130. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

131. Pre-judgment and post-judgment interest, as provided by law; and

132. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: New York, New York
July 15, 2019

Respectfully submitted,

By: */s/ Ossai Miazad*

**OUTTEN & GOLDEN LLP**

Ossai Miazad*
Michael N. Litrownik*
Elizabeth V. Stork*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com
estork@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Rachel Dempsey (Cal. Bar No. 310424)
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rsun@outtengolden.com
rdempsey@outtengolden.com

Patrick David Lopez*
Daniel S. Stromberg*
601 Massachusetts Avenue
Second Floor West Suite
Washington DC, 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
pdl@outtengolden.com
dstromberg@outtengolden.com

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
Thomas A. Saenz (Cal. Bar No. 159430)
Joel Marrero (Cal. Bar No. 275601)
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
tsaenz@maldef.org
jmarrero@maldef.org

*admitted *pro hac vice*

***Attorneys for Plaintiffs and the proposed Class***