Jahan C. Sagafi  (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rsun@outtengolden.com
rdempsey@outtengolden.com

Thomas A. Saenz (Cal. Bar No. 159430)
Belinda Escobosa Helzer (Cal. Bar
No. 214178)
Joel Marrero (Cal. Bar No. 275601)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile:  (213) 629-0266
tsaenz@maldef.org
bescobosa@maldef.org
jmarrero@maldef.org

*Attorneys for Plaintiffs and the Proposed Class*
*(Additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

MITZIE PEREZ, ANDRES ACOSTA,
SERGIO BARAJAS, TERESA DIAZ
VEDOY, VICTORIA RODAS, and
SAMUEL TABARES VILLAFUERTE,
individually and on behalf of all others
similarly situated,

                        Plaintiffs,

        v.

WELLS FARGO BANK, N.A.,

                        Defendant.

Case No. 17-cv-00454-MMC-EDL

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF POINTS AND
AUTHORITIES**

Date:          February 7, 2020
Time:          9:00 a.m.
Courtroom:     7, 19th Floor
Judge:         Hon. Maxine M. Chesney

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 7, 2020, at 9 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 on the 19th floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue in San Francisco, California, Plaintiffs Victoria Rodas, Teresa Diaz Vedoy, Samuel Tabares Villafuerte, and Andres Acosta, individually and on behalf of all others similarly situated ("Representative Plaintiffs") will, and hereby do, move this Court for certification of the following classes and subclasses, appointment of Representative Plaintiffs as Class Representatives, and appointment of Plaintiffs' counsel as Class Counsel:

**42 U.S.C. § 1981 Classes:**

   a. All DACA Residents during the Covered Period who applied or will apply for a Wells Fargo student loan and were declined or will be declined by Wells Fargo under denial code "d01," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future (the "EFS Class");

   b. All DACA Residents during the Covered Period who applied or will apply for (i) a Wells Fargo unsecured credit card and were declined or will be declined by Wells Fargo under denial codes "1409" or "1614," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future, or (ii) a Wells Fargo unsecured personal loan and were declined or will be declined by Wells Fargo under denial code "34N," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future, and, between January 30, 2015 and February 13, 2015 only, denial code "321" (the "CFS Class");

   c. All DACA Residents during the Covered Period who applied or will apply for a Wells Fargo small business credit card or loan, whether secured or unsecured, and were declined or will be declined by Wells Fargo under denial codes "M93" or "Q14," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future (the "BD Class").

**California Unruh Civil Rights Act, Cal. Civ Code §§ 51 *et seq.* Subclasses:**

   a. All EFS Class members in California during the Covered Period (the "EFS California Subclass");

   b. All CFS Class members in California during the Covered Period (the "CFS California Subclass").

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in Support, any opposition and reply, the Declaration of Ossai Miazad, the

1   Declaration of Joel Marrero, the Court's record of this action, all matters of which the Court may

2   take notice, and oral and documentary evidence presented at the hearing on the motion.

3   Dated: November 1, 2019                    Respectfully submitted,

4                                              By: */s/ Ossai Miazad*

5                                              **OUTTEN & GOLDEN LLP**
                                               Ossai Miazad*

6                                              Michael N. Litrownik*
                                               Elizabeth V. Stork*

7                                              685 Third Avenue, 25th Floor
                                               New York, NY 10017

8                                              Telephone:  (212) 245-1000
                                               Facsimile:   (646) 509-2060

9                                              om@outtengolden.com

10                                             mlitrownik@outtengolden.com
                                               estork@outtengolden.com

11
                                               Jahan C. Sagafi (Cal. Bar No. 224887)
12                                             Relic Sun (Cal. Bar No. 306701)
                                               Rachel Dempsey (Cal. Bar No. 310424)
13                                             One California St, 12th Floor
                                               San Francisco, CA 94111
14                                             Telephone: (415) 638-8800
                                               Facsimile:   (415) 638-8810
15                                             jsagafi@outtengolden.com
                                               rsun@outtengolden.com
16                                             rdempsey@outtengolden.com

17
                                               Patrick David Lopez*
18                                             Daniel S. Stromberg*
                                               601 Massachusetts Avenue
19                                             Second Floor West Suite
                                               Washington DC, 20001
20                                             Telephone: (202) 847-4400
                                               Facsimile:  (202) 847-4410
21                                             pdl@outtengolden.com
                                               dstromberg@outtengolden.com
22

23                                             **MEXICAN AMERICAN LEGAL DEFENSE**
24                                             **AND EDUCATIONAL FUND**
                                               Thomas Saenz (Cal. Bar No. 159430)
25                                             Belinda Escobosa Helzer (Cal. Bar
                                               No. 214178)
26                                             Joel Marrero (Cal. Bar No. 275601)
                                               634 S. Spring St., 11th Floor
27                                             Los Angeles, CA 90014
                                               Telephone:  (213) 629-2512
28

MOTION FOR CLASS CERTIFICATION
                                               CASE No. 17-cv-454-MMC

1

Facsimile:   (213) 629-0266

2

tsaenz@maldef.org
jmarrero@maldef.org

3

4

*admitted *pro hac vice*
***Attorneys for Plaintiffs and the Proposed Class***

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 2

    A.    Lending to DACA Recipients. ........................................................ 2

          1.    DACA Provides Recipients with Employment Authorization and Protection from Deportation. ....................................................... 2

          2.    No Law or Regulation Prohibits DACA Recipients from Receiving Credit, and Many Large Banks Extend Credit to Them.......................................... 2

    B.    Wells Fargo's Lending Policies Make DACA Recipients Ineligible for Credit..... 3

          1.    EFS Policy Makes DACA Recipients Facially Ineligible for Student Loans. ....................................................................... 4

          2.    CFS Policy Makes DACA Recipients Facially Ineligible for Unsecured Credit Cards and Personal Loans. ............................................ 5

          3.    Business Direct Policy Makes DACA Recipients Facially Ineligible for Both Secured and Unsecured Loans and Credit Products.......................... 5

    C.    Wells Fargo's Lending Policies Acknowledge that Responsible Lending Requires an Individualized Consideration of Each Borrower But Deny DACA Recipients Such Consideration. ................................................................ 6

    D.    Wells Fargo's So-Called "Exceptions Policy" is Illusory...................................... 6

    E.    Plaintiffs and the Class Were Denied the Opportunity to Be Considered for Credit Pursuant to Wells Fargo's Discriminatory Policies. ................................. 7

          1.    Wells Fargo Denied Ms. Perez and Ms. Rodas the Opportunity to be Considered for Student Loans. .................................................. 7

          2.    Wells Fargo Denied Ms. Diaz Vedoy, Mr. Tabares Villafuerte, and Mr. Barajas All the Opportunity to Be Considered for CFS Products.............. 8

          3.    Wells Fargo Denied Mr. Acosta the Opportunity to Be Considered for a Business Direct Loan. ........................................................ 9

    F.    Wells Fargo's Application Data.......................................................... 10

III.    ARGUMENT ...................................................................................... 12

    A.    Legal Standard .......................................................................... 12

          1.    Federal Rule of Civil Procedure 23 ........................................ 12

2.      Section 1981 ........................................................................... 13

3.      Unruh Act ............................................................................... 14

B.      Plaintiffs' Section 1981 and Unruh Act Claims Satisfy Rule 23(a)...................... 15

1.      The Class Is Sufficiently Numerous. ....................................... 15

2.      There Are Common Questions of Law and Fact That Will Drive the
        Resolution of Plaintiffs' Claims............................................... 15

3.      Representative Plaintiffs' Claims Are Typical. ........................ 17

4.      The Representative Plaintiffs and Class Counsel Will Adequately Protect
        the Interests of the Class. ....................................................... 18

C.      Plaintiffs' Claims for Liability and Injunctive Relief Under Section 1981 Should
        Be Certified Under Rule 23(b)(2). .......................................................... 19

D.      Plaintiffs' Claims for Statutory Damages Under the Unruh Act Should Be
        Certified Under Rule 23(b)(3)................................................................. 21

1.      Common Issues Predominate Over Individual Issues.............................. 21

2.      A Class Action is a Superior Method for Plaintiffs' Claims.................... 22

E.      Plaintiffs' Proposed Notice Program. ..................................................... 24

IV.     CONCLUSION .................................................................................... 25

MOTION FOR CLASS CERTIFICATION
CASE No. 17-cv-454-MMC

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                   **Page(s)**

*Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*,
  277 F.R.D. 572 (N.D. Cal. 2011) ...................................................................................20

*Adamson v. Bowen*,
  855 F.2d 668 (10th Cir. 1988).........................................................................................20

*Abdullah v. U.S. Sec. Assocs.*,
  731 F.3d 952 (9th Cir. 2013)...........................................................................................16

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................1, 18, 19, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................12, 21

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001)......................................................................................16,17

*Barefield v. Chevron, U.S.A., Inc.*,
  No. 86 Civ 2427, 1988 WL 188433 (N.D. Cal. Dec. 6, 1988) ......................................20

*Bias v. Wells Fargo & Co.*,
  312 F.R.D. 528 (N.D. Cal. 2015).............................................................................17, 22

*Botosan v. Paul McNally Realty*,
  216 F.3d 827 (9th Cir. 2000).....................................................................................14, 22

*Bowerman v. Field Asset Servs., Inc.*,
  242 F. Supp. 3d 910 (N.D. Cal. 2017) ....................................................................23, 24

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121, 1128 (9th Cir. 2017)........................................................................24, 25

*Brown v. Hain Celestial Grp., Inc.*,
  No. 11 Civ. 03082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014).........................25

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
  No. 15 Civ. 224, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016)....................................15

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15 Civ. 04922, 2019 WL 251488 (N.D. Cal. Jan. 17, 2019) ...............................25

*Ellis v. Costco Wholesale Corp.*,
  285 F.R.D. 492 (N.D. Cal. 2012) .................................................................................21

*Enlow v. Salem–Keizer Yellow Cab Co.*,
    389 F.3d 802 (9th Cir. 2004) ................................................................................14

*In re First Am. Corp. ERISA Litig.*,
    258 F.R.D. 610 (C.D. Cal. 2009) ..........................................................................18

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ..............................................................................................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................17, 21

*Hopkins v. Stryker Sales Corp.*,
    No. 11 Civ. 2786, 2012 WL 1715091 (N.D. Cal. May 14, 2012) ..........................24

*In re Hulu Privacy Litig.*,
    No. 11 Civ. 3764, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ..........................25

*Huynh v. Harasz*,
    No. 14 Civ. 02367, 2015 WL 7015567 (N.D. Cal. Nov. 12, 2015) ........................16

*Johnson v. Hall*,
    No. 11 Civ. 2817, 2012 WL 1604715 (E.D. Cal. May 7, 2012) ............................14

*Johnson v. Triple Leaf Tea Inc.*,
    No. 14 Civ. 1570, 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ..........................17

*Jones v. Wells Fargo Bank, N.A.*,
    No. B237282, 2015 WL 661757 (Cal. Ct. App. Feb. 17, 2015) ......................21, 22

*Kamar v. Radio Shack Corp.*,
    254 F.R.D. 387 (C.D. Cal. 2008) ..........................................................................16

*Koire v. Metro Car Wash*,
    40 Cal. 3d 24 (1985) ......................................................................................14, 22

*Lamumba Corp. v. City of Oakland*,
    No. 05 Civ. 2712, 2007 WL 324582 (N.D. Cal. Nov. 2, 2007) ............................18

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 510 (9th Cir. 2013) ................................................................................22

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) ..........................................................................24

*Lindsey v. SLT Los Angeles, LLC*,
    447 F.3d 1138 (9th Cir. 2006) ..............................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................18

iv

*Munguia-Brown v. Equity Residential*,
No. 16 Civ. 1225, 2017 WL 4838822 (N.D. Cal. Oct. 23, 2017) .............................................24

*Nevarez v. Forty Niners Football Co., LLC*,
326 F.R.D. 562 (N.D. Cal. 2018) ........................................................................................23

*O'Connor v. Village Green Owners Ass'n*,
33 Cal. 3d 790 (1983) ..........................................................................................................14

*Oliver v. Alta Los Angeles Hosps., Inc.*,
No. B271206, 2017 WL 3124254 (Cal. Ct. App. July 24, 2017) ....................................14, 22

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014)...................................................................................... *passim*

*Rai v. Santa Clara Valley Transp. Auth.*,
308 F.R.D. 245 (N.D. Cal. 2015) ........................................................................................15

*Sagana v. Tenorio*,
384 F.3d 731 (9th Cir. 2004) ...............................................................................................13

*Satchell v. FedEx Corp.*,
Nos. 03 Civ. 2659, 03 Civ. 2878, 2005 WL 2397522 (N.D. Cal. Sept. 28, 2005) ..................20

*Schulken v. Wash. Mut. Bank*,
No. 09 Civ. 2709, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012).............................................24

*Semler v. Gen. Elec. Capital Corp.*,
196 Cal. App. 4th 1380 (2011)............................................................................................14

*Simpson v. Fireman's Fund. Ins. Co.*,
231 F.R.D. 391, 396 (N.D. Cal. 2005) ................................................................................18

*Stevens v. Harper*,
213 F.R.D. 358 (E.D. Cal. 2002) ........................................................................................16

*Stockwell v. City & Cty. of San Francisco*,
749 F.3d 1107 (9th Cir. 2014).............................................................................................13

*Teamsters v. United States*,
431 U.S. 324 (1977) ..............................................................................................................1

*Tierno v. Rite Aid Corp.*,
No. 05 Civ. 02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)........................................23

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016).............................................................................................21

*Trans World Airlines, Inc. v. Thurston*,
469 U.S. 111 (1985)..............................................................................................................13

v

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................................21

*United States v. Otherson*,
    637 F.2d 1276 (9th Cir. 1980) ......................................................................10

*Unthaksinkun v. Porter*,
    No. 11 Civ. 588, 2011 WL 4502050 (W.D. Wash. Sept. 28, 2011) ..............20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................12, 15, 16, 19

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ......................................................................20

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ........................................................................16

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. 05 Civ. 2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)................23

*Wren v. RGIS Inventory Specialists*,
    256 F.R.D. 180 (N.D. Cal. 2009) ................................................................16

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ................................................................24

**Statutes**

42 U.S.C. § 1981(a) ............................................................................10, 13

Cal. Civ. Code § 51(b) ...........................................................................14

Cal. Civ. Code § 52(a) ............................................................................22

**Regulations**

31 C.F.R. § 103.121(b)(2)(i) ...................................................................2, 10

**Procedural Rules**

Fed. R. Civ. P. 23 ........................................................................... *passim*

**Other Authorities**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &
    Procedure § 1775 (2d ed. 1986) ..................................................................20

1

2

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure § 1776 (3d ed.) ..................................................................................19

3

4

Barack Obama, Remarks by the President on Immigration (June 15, 2012),
https://obamawhitehouse.archives.gov/the-press-office/2012/06/15/remarks-
president-immigration ..................................................................................................2

5

6

Fact Sheet, Social Security Number and Card – Deferred Action for Childhood
Arrivals, https://www.ssa.gov/pubs/deferred_action.pdf............................................2

7

8

Janet Napolitano, Memorandum (June 15, 2012),
https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-
individuals-who-came-to-us-as-children.pdf .............................................................2

9

10

William B. Rubenstein, Newberg on Class Actions § 3:27 (5th ed. 2013).......................16, 20, 21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **I.      PRELIMINARY STATEMENT**

2          Wells Fargo's lending policies make applicants with Deferred Action for Childhood

3   Arrivals ("DACA") facially ineligible for student loans, unsecured credit cards, personal loans,

4   and small business credit, regardless of each applicant's actual creditworthiness.  Since at least

5   June 2012, when DACA was implemented, Wells Fargo has automatically rejected DACA

6   recipients' applications for these types of credit because DACA recipients are neither U.S.

7   citizens nor lawful permanent residents ("LPRs").  Representative Plaintiffs Victoria Rodas,

8   Teresa Diaz Vedoy, Andres Acosta, and Samuel Tabares Villafuerte ("Representative Plaintiffs")

9   seek class certification to challenge these discriminatory lending policies and practices under the

10  Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981") and California's

11  Unruh Civil Rights Act, as codified by California Civil Code §§ 51 *et seq*. ("Unruh Act"),

12  because they discriminate due to both alienage (lack of U.S. citizenship) and immigration status.[1]

13         Wells Fargo's lending policies fall in the uncommon category of facial discrimination, the

14  figurative "sign reading 'Whites Only' on the hiring-office door." *Teamsters v. United States*,

15  431 U.S. 324, 365 (1977).  The ultimate question in this matter is one uniquely suited for class

16  treatment: Whether it is unlawful discrimination to maintain lending policies that facially exclude

17  DACA recipients from consideration for credit simply because they are not U.S. citizens or LPRs.

18  This is precisely the sort of claim that Rule 23 of the Federal Rules of Civil Procedure was

19  designed to facilitate.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil

20  rights cases against parties charged with unlawful, class-based discrimination are prime

21  examples" of matters suitable for Rule 23(b)(2) class certification); Advisory Committee Notes to

22  Rule 23(b)(2) (Rule 23 was adopted in order to permit the prosecution of civil rights actions).

23         Plaintiffs seek certification of their Section 1981 claims for liability, declaratory and

24  injunctive relief, and nominal damages, under Rule 23(b)(2), and of their Unruh Act claims for

25  liability, declaratory and injunctive relief, and statutory damages under Rule 23(b)(3).  For the

26  reasons discussed below, the Court should grant Plaintiffs' motion.

27

28  ───────────────

[1]      Plaintiffs Mitzie Perez and Sergio Barajas do not seek appointment as class representatives and will proceed on their individual claims.

## II.    FACTUAL BACKGROUND

### A.    Lending to DACA Recipients.

#### 1.    DACA Provides Recipients with Employment Authorization and Protection from Deportation.

DACA, announced by President Obama on June 15, 2012, allows non-citizens who entered the United States as children and who met certain requirements to apply for work authorization and relief from deportation proceedings.[2]  DACA was implemented through a memorandum issued on the same date from Secretary of Homeland Security Janet Napolitano, entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children."[3]  In addition to work authorization, DACA recipients are eligible to apply for and receive Social Security numbers ("SSNs"), enabling them to identify themselves for employment and other contractual purposes.[4]  DACA was promulgated to provide opportunities to young people who came to the United States as children and "who want to staff our labs, or start new businesses, or defend our country"; its motivating principle was to strengthen its recipients' ability to actively participate in the American economy and to contribute to civic life.[5]

#### 2.    No Law or Regulation Prohibits DACA Recipients from Receiving Credit, and Many Large Banks Extend Credit to Them.

There is no federal or state law or regulation that *prohibits* banks from lending to non-citizens generally, or DACA recipients specifically, based on their status as non-citizens.  Banks are required to maintain a compliance program called a Customer Identification Program ("CIP") pursuant to the USA PATRIOT Act, 31 U.S.C. § 5318, under which they must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer to whom they lend.  The CIP must obtain, at a minimum, each customer's (1) name, (2) date of birth, (3) address, and (4) identification number, such as an SSN.  31 C.F.R. § 103.121(b)(2)(i); Ex. A (Ex. 2, WF-PEREZ-000002688) ▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2]     Barack Obama, Remarks by the President on Immigration (June 15, 2012), https://obamawhitehouse.archives.gov/the-press-office/2012/06/15/remarks-president-immigration.
[3]     Janet Napolitano, Memorandum (June 15, 2012), https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf.
[4]     Fact Sheet, Social Security Number and Card – Deferred Action for Childhood Arrivals, https://www.ssa.gov/pubs/deferred_action.pdf.
[5]     Obama, *supra* note 2.

1  ████████████████████████████████████████████████████████

2  ██████████████████████; Ex. B (Tarchione 30(b)(6) Tr.) 29:1-21; Ex. C (Doll 30(b)(6) Tr.)

3  58:4-59:21; Ex. D (Strathman 30(b)(6) Tr.) 35:22-36:13; Ex. E (Belding 30(b)(6) Tr.) 43:16-24;[6]

4  Fifth Amended Complaint ("5AC"), ¶¶ 31-34.  There is no dispute in this case that Plaintiffs and

5  proposed class members have names, dates of birth, U.S. addresses, and valid SSNs.  Indeed,

6  Wells Fargo allows DACA recipients to open checking and savings accounts, even though it

7  excludes them from eligibility for unsecured consumer credit (and secured and unsecured small

8  business credit).  Ex. F (Ex. 15, WF-PEREZ-000012552-53).

9       Unlike Wells Fargo, many large banks do, in fact, offer unsecured credit to DACA

10  recipients.  For example, Plaintiffs have unsecured credit cards from a wide variety of lenders,

11  including American Express, Barclay's, and Chase Bank.[7]  And Wells Fargo's internal research

12  indicates that Bank of America allows non-resident aliens, or NRAs,[8] to apply for both secured

13  and unsecured credit cards.  *See, e.g.*, Ex. G (Ex. 8, WF-PEREZ-000012120).

14       **B.      Wells Fargo's Lending Policies Make DACA Recipients Ineligible for Credit.**

15       Plaintiffs challenge Wells Fargo's policies that make DACA recipients ineligible for four

16  different types of loans or credit from Wells Fargo: (1) unsecured student loans; (2) unsecured

17  credit cards; (3) unsecured personal loans; and (4) secured and unsecured small business credit

18  products.  Wells Fargo organizes consumer lending into different lines of business ("LOBs").

19  The lines of business at issue here are: (1) Educational Financial Services ("EFS"), which offers

20  student loans, (2) Consumer Financial Services ("CFS"), which offers credit cards and personal

21  loans, and (3) Business Direct (now called Small Business Lending), which offers small business

22  loans and credit cards.  5AC ¶ 2.  EFS, CFS, and Business Direct are all divisions of Wells

23  Fargo's Consumer Banking Group, formerly known as the Consumer Lending Group ("CLG").

24  Ex. H (Jenkins Tr.) 10:14-11:22.  Each LOB has promulgated uniform policies with respect to

25

26  [6]      Unless otherwise stated, all exhibits referenced herein are attached to the Declaration of
Ossai Miazad ("Miazad Decl.").

27  [7]      *See, e.g.*, Ex. I (Acosta Tr.) 120:20-125:7; Ex. J (Diaz Vedoy Tr.) 128:6-130:18; Ex. K
(Tabares Villafuerte Tr.) 74:19-83:9.

28  [8]      Non-resident alien ("NRA") is an umbrella term that Wells Fargo uses to refer to non-
U.S.-citizens who are also not LPRs, which covers those with DACA.

3

screening applicants for citizenship and immigration status when making lending eligibility

determinations.  Pursuant to these policies, U.S. citizens and LPRs (or green card holders) are

eligible for all credit products in the EFS, CFS, and Business Direct LOBs.  *Cf.* Ex. L (Ex. 21,

WF-PEREZ-000000004).  Conversely, Wells Fargo makes DACA recipients facially ineligible

for credit products in these LOBs based on the Bank's categorization of them as NRAs.[9]

### 1. EFS Policy Makes DACA Recipients Facially Ineligible for Student Loans.

Wells Fargo's EFS lending policy facially excludes DACA recipients from eligibility by

requiring that borrowers reside at a permanent residence within the United States, and be either

U.S. citizens, LPRs or, for some student loan products, holders of certain student visas (not

encompassing DACA, since DACA is not a visa).  Ex. M (Ex. 23, WF-PEREZ-000001077-78);

Ex. N (Ex. 24, WF-PEREZ-000001084); Ex. O (Jenkins 30(b)(6) Tr.) 84:8-24 (█████████

███████████████████████████████████████████████████); Ex. P (Ex. 22, WF-

PEREZ-000021627) (consumer lending eligibility matrix).

Consistent with this policy, EFS designed its application processes to reject DACA

applicants' applications without considering their individualized credit risk.  As Wells Fargo's

corporate witness for underwriting in the EFS LOB, Jason Belding, testified, ███████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████.  Ex. E (Belding 30(b)(6) Tr.) 37:4-

39:2.[10]  Even if a DACA applicant could proceed with an application because she mistakenly

identifies her status as "Temporary Resident Alien," as Representative Plaintiff Rodas did, she

will still ultimately be denied credit because she does not meet EFS eligibility requirements.  Ex.

Q (Rodas Depo. 95:21-99:8) (Ms. Rodas submitted application and provided co-signer but was

declined because she had DACA); Ex. R (WF-PEREZ-000008168 (customer service

representative notes regarding Ms. Rodas's application)); Ex. U (Rodas Depo. Ex. 58 (purported

---

[9]    *See, e.g.*, Ex. B (Tarchione 30(b)(6) Tr.) 77:19-23; 109:21-25; 110:9-13; Ex. S (Moss Tr.) 14:4-6; 21:3-7; 29:4-7; 76:11-19.  Wells Fargo frequently uses the term NRAs to apply to those individuals living in the U.S. who are neither U.S. citizens nor LPRs.  Ex. O (Jenkins 30(b)(6) Tr.) 119:16-121:4.
[10]    *See also* Ex. T (Perez Tr.) 86:6-92:5.

MOTION FOR CLASS CERTIFICATION
CASE No. 17-cv-454-MMC

transcript of call between Ms. Rodas and Wells Fargo customer service representatives)).

### 2. CFS Policy Makes DACA Recipients Facially Ineligible for Unsecured Credit Cards and Personal Loans.

As Geoff Jenkins, Wells Fargo's Head of Consumer Credit and corporate designee, testified, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████ [11] Ex. V (Ex. 1, WF-PEREZ-000002695-96) (emphasis added); *see also* Ex.

H (Jenkins Tr.) 41:3-46:24; Ex. O (Jenkins 30(b)(6) Tr.) 114:19-121:4 (██████████████

█████████████████████████████); Ex. P (Ex. 22, WF-PEREZ-000021627)

(consumer lending eligibility matrix).

Consistent with this policy, CFS designed its application processes to reject DACA applicants' applications without considering their individualized credit risk.  As Wells Fargo's corporate witness for credit cards in the CFS LOB, Troy Tarchione, testified, ██████████████

████████████████████████████████████████████████████████████████

████████████████████.  Ex. B (Tarchione 30(b)(6) Tr.) 39:9-14, 42:23-43:3.  For

personal loan applicants with DACA, Wells Fargo's corporate witness Erin Doll testified that ███

████████████████████████████████████████████████████████████████

█████████████████████.  Ex. C (Doll 30(b)(6) Tr.) 73:1-12,

75:14-77:23, 85:7-14.

### 3. Business Direct Policy Makes DACA Recipients Facially Ineligible for Both Secured and Unsecured Loans and Credit Products.

The Business Direct policy makes DACA recipients ineligible for all small business credit

products ██████████████████████████████████████████████████████████████

███████████████████████████████████████████.  Ex. W (Ex. 36, WF-

PEREZ-000006423-24); Ex. O (Jenkins 30(b)(6) Tr.) 190:23-191:13.  Accordingly, upon

---

[11]     DACA recipients are eligible for secured credit cards and certain secured personal loans pursuant to CFS policy.  Ex. P (Ex. 22, WF-PEREZ-000021627).  Secured credit cards are a niche product that are used predominantly "on a tier of people who have failed all of the credit criteria for Unsecured Credit."  Ex. O (Jenkins 30(b)(6) Tr.) 173:24-174:5.

1   completion of the application, Wells Fargo systematically rejects DACA applicants for Business

2   Direct credit.  Ex. D (Strathman 30(b)(6) Tr.) 25:9-26:14.

3          **C.      Wells Fargo's Lending Policies Acknowledge that Responsible Lending**
               **Requires an Individualized Consideration of Each Borrower But Deny DACA**
4              **Recipients Such Consideration.**

5          Underwriting is the process by which a bank determines an applicant's eligibility and

6   qualification for a loan or credit card.  Underwriting involves ████████████████████████

7   ███████████████████████████████████████████████████████████████████

8   Ex. L (Ex. 21, WF-PEREZ-000000001).  As Wells Fargo's corporate witness testified, ████

9   █████████████████████████████████████████████████████████████

10  ███████████████████████   Ex. O (Jenkins 30(b)(6) Tr.) 41:21-42:1 (emphasis added).  In

11  each LOB at issue here, █████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ███████████████████████.  Ex. B (Tarchione 30(b)(6) Tr.) 23:22-25:4 (CFS); Ex. C

14  (Doll 30(b)(6) Tr.) 48:3-19 (CFS); Ex. D (Strathman 30(b)(6) Tr.) 24:18-25:24 (Business Direct);

15  Ex. E (Belding 30(b)(6) Tr.) 26:5-28:4 (EFS).  Because Wells Fargo does not consider DACA

16  recipients as eligible for credit, it does not apply these underwriting processes to their applications

17  and does not consider whether they are creditworthy based on their individual characteristics.

18         **D.      Wells Fargo's So-Called "Exceptions Policy" is Illusory.**

19         Wells Fargo may argue that it could make exceptions to its LOBs' policies that uniformly

20  render DACA recipients ineligible for credit.  But discovery demonstrated that Wells Fargo rarely

21  made exceptions.  The only LOB for which Wells Fargo produced *any* evidence that the company

22  made exceptions to its exclusionary policy for DACA recipients was EFS, ██████████████

23  ████████████████████████████████████████████████████████████

24  ███████████████   Ex. X (Supp. R&Os to Rodas's Second Set of Interrogatories).  No

25  exceptions for DACA recipients—or any NRAs at all—were identified for personal loans.  Ex. Y

26  (R&Os to Diaz Vedoy's Third Interrogatories).  For credit cards, ███████████████████

27  ██████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

1   ██████████████████████████████████████████████.  Ex. Z (Supp.

2   R&Os to Tabares Villafuerte's Third Interrogatories).  Similarly, ████████████

3   ███████████████████████████████████████████████████████████

4   ██████████████████████.  Ex. AA (Supp. R&Os to Acosta's Third Interrogatories).

5   This evidence is consistent with the fact that, rather than making exceptions on a case-by-

6   case basis, Wells Fargo has a *separate, special policy* that allows for credit to be underwritten and

7   extended to wealthy customers who do not otherwise meet its eligibility policies.  *See, e.g.*, Ex.

8   BB (WF-PEREZ-000020292) (███████████████████████████████████████

9   ███████████████████████████████); Ex C (Doll 30(b)(6) Tr.) 20:21-

10   21:14 (██████████████████████████████).[12]

## E.   Plaintiffs and the Class Were Denied the Opportunity to Be Considered for Credit Pursuant to Wells Fargo's Discriminatory Policies.

13   Plaintiffs Mitzie Perez, Andres Acosta, Sergio Barajas, Teresa Diaz Vedoy, Victoria

14   Rodas, and Samuel Tabares Villafuerte are all DACA recipients living in the United States with

15   valid SSNs who were denied the opportunity because they were not U.S. citizens or LPRs to be

16   considered for credit from Wells Fargo, pursuant to its lending policies.

### 1.   Wells Fargo Denied Ms. Perez and Ms. Rodas the Opportunity to be Considered for Student Loans.

19   On August 26, 2016, Plaintiff Mitzie Perez began an online application for a Wells Fargo

20   student loan to pay for student expenses such as housing and books.  Ex. T (Perez Tr.) 27:18-

21   28:15; 60:3-25.  In the application, Ms. Perez identified herself as an NRA and a native of

22   Guatemala.  Ex. CC (MITZIE_PEREZ 00000006-09).  When she tried to submit her application,

23   she received a message saying that it had been denied "based on the information [she] provided,"

24   which "could be due to the school [she] selected, [her] field of study, and/or [her] citizenship

25   status."  *Id.*; *see also* Ex. T (Perez Tr.) 27:1-25; 73:17-75:8; 84:20-22; 90:16-95:12.  Wells Fargo

26   blocked Ms. Perez from completing her application due to its uniform policies and practices.

27

---

28   [12]   *See also* Ex. B (Tarchione 30(b)(6) Tr.) 38:16-24, 45:23-46:11, 85:22-86:2, 90:13-91:9, 108:22-109:10; Ex. BB (WF-PEREZ-000020292); Ex. C (Doll 30(b)(6) Tr.) 140:1-14;141:12-150:1; Ex. H (Jenkins Tr.) 77:7-78:23.

Representative Plaintiff Victoria Rodas applied for a Wells Fargo student loan in the summer of 2016 via online application and phone call.  Ex. Q (Rodas Tr.) 72:1-24; 86:10-21.[13] The Wells Fargo representative Ms. Rodas spoke with informed her that she would need to find a cosigner and submit information to verify her residency and immigration status.  *Id*. (Rodas Tr.) 88:5-89:23.  Although Ms. Rodas submitted the requested documentation, her application for a student loan was ultimately denied because she did not meet Wells Fargo's requirement that she be a U.S. citizen, LPR, or student visa holder.  *Id*. (Rodas Tr.) 98:20-101:16; *see also* Ex. DD (WF-PEREZ-000002463).[14]  Ms. Rodas was declined pursuant to Wells Fargo's policies under denial code "d01," reflecting a failure to meet Wells Fargo's citizenship requirement.  Miazad Decl. ¶ 19.  As a result of the denial, Ms. Rodas was forced to drop a class she intended to take. Ex. Q (Rodas Tr.) 115:24-117:4.  Beginning in 2017, Ms. Rodas received three student loans from Sallie Mae that she used to pay for her education.  *Id*. (Rodas Tr.) 44:1-25; 117:5-127:6.

### 2. Wells Fargo Denied Ms. Diaz Vedoy, Mr. Tabares Villafuerte, and Mr. Barajas All the Opportunity to Be Considered for CFS Products.

On January 28, 2017, Representative Plaintiff Teresa Diaz Vedoy visited a Wells Fargo branch to apply for a credit card and a personal loan.  Ex. J (Diaz Vedoy Tr.) 59:21-63:7; 65:16-66:13.  Shortly after submitting her credit card application, she received a telephone call from a Wells Fargo employee telling her she needed to return to the branch to provide a copy of her Social Security card, which she did.  *Id*. (Diaz Vedoy Tr.) 63:12-24.  On February 8, 2017, Ms. Diaz Vedoy received a letter in the mail informing her that her credit card application had been denied because of her immigration status.  Ex. EE (Ex. 122, DIAZ_VEDOY00000053).[15]  Wells Fargo declined Ms. Diaz Vedoy's application pursuant to its lending policies under denial code

---

[13]     Ms. Rodas also started, but did not finish, an application for a student loan in November 2015, which she did not end up needing.  See Ex. Q (Rodas Tr.) 64:1-67:9.  That loan is not at issue in this case.
[14]     Wells Fargo denied Ms. Rodas's co-signer separately for credit-related reasons.  *See* Ex. FF (WF-PEREZ-000002479-80).
[15]     Ms. Diaz Vedoy's application for a personal loan was denied on the spot due to her credit profile.  Ex. GG (DIAZ_VEDOY00000048).  However, if it had proceeded further, Ms. Vedoy's application would have been denied because she was not a permanent U.S. resident.  Ex. C (Doll 30(b)(6) Tr.) 75:14-77:23.  In any case, Ms. Diaz Vedoy is not asserting a claim here against Wells Fargo arising out of the denial of her application for a personal loan.

MOTION FOR CLASS CERTIFICATION
CASE No. 17-cv-454-MMC

1   "1409," reflecting a denial because she was not a permanent U.S. resident.  Miazad Decl. ¶ 19.

2   Representative Plaintiff Samuel Tabares Villafuerte applied for a student credit card in

3   person in a Wells Fargo branch in Riverside, California in January 2017.  Ex. K (Tabares

4   Villafuerte Tr.) 52:12-53:1.  After he submitted his application, he also provided a Wells Fargo

5   representative with a copy of his Social Security card, work authorization, and driver's license.

6   *Id*.  A few days later, Mr. Tabares Villafuerte received a telephone call from a personal banker

7   informing him that his application had been denied because he had the "wrong" kind of social

8   security number.  *Id*. (Tabares Villafuerte Tr.) 53:2-12.  Sometime in approximately mid-

9   February 2017, Mr. Tabares Villafuerte received a follow-up letter from Wells Fargo confirming

10  that his application had been denied because of his citizenship status.  Ex. HH (Ex. 74,

11  TABARES_VILLAFUERTE 00000005).  As with Ms. Diaz Vedoy, Wells Fargo declined Mr.

12  Tabares Villafuerte's application pursuant to its lending policies under denial code "1409."

13  Named Plaintiff Sergio Barajas applied for a Wells Fargo credit card in person at a Wells

14  Fargo branch around June 2016.  Ex. II (Barajas Tr.) 53:11-54:25.  A few days later, he received a

15  phone call from a branch banker asking him to provide his Social Security card and Green Card.

16  *Id.* (Barajas Tr.) 56:10-57:2.  Mr. Barajas supplied the bank with his Social Security card but did

17  not have a Green Card.  *Id*.  Mr. Barajas then spoke with a Wells Fargo customer service agent

18  who informed him that if he did not withdraw his application, it would be denied as a result of his

19  citizenship status, resulting in a negative mark on his credit report.  *Id*. (Barajas Tr.) 63:23-64:12;

20  102:13-103:24.  Therefore, Mr. Barajas withdrew the application.  *Id*.  Wells Fargo discouraged

21  Mr. Barajas from submitting his application pursuant to Wells Fargo's lending policies.

22  **3.**   **Wells Fargo Denied Mr. Acosta the Opportunity to Be Considered for
         a Business Direct Loan.**

23

24  Around August 2015, Plaintiff Andres Acosta visited a Wells Fargo branch in Austin,

25  Texas to apply for a small business equipment loan to purchase a truck for use in his construction

26  business.  Ex. I (Acosta Tr.) 64:5-66:8.  After Mr. Acosta submitted his application, the banker

27  who assisted him called to tell him that he had been pre-approved for the loan and requested that

28  Mr. Acosta provide the bank with his work authorization, driver's license, and SSN.  *Id*. (Acosta

1   Tr.) 66:19-67:7.  Mr. Acosta did so, and shortly afterward received a call from the same banker

2   informing him that his application had been denied because he was not a U.S. citizen.  *Id.* (Acosta

3   Tr.) 67:4-68:1.  Mr. Acosta was declined credit pursuant to Wells Fargo's lending policies under

4   denial code "M93," which reflected a denial because the applicant was not headquartered in the

5   United States and owned by a U.S. citizen or permanent resident.  Miazad Decl. ¶ 19.  Following

6   that denial, Mr. Acosta received a letter informing him that his existing small business credit card

7   had also been cancelled.  *Id*. (Acosta Tr.) 73:8-78:1.  Mr. Acosta called Wells Fargo to ask about

8   the cancellation and was told that he would need to provide proof of citizenship to have the card

9   reinstated.  *Id*.  Because Mr. Acosta did not have proof of citizenship, he did not follow up.  *Id*.

10          **F.      Wells Fargo's Application Data.**

11          Although Wells Fargo does not systematically record in its application databases whether

12  applicants have DACA, the parties were able to apply various filters, using objective factors, to

13  best approximate Plaintiffs' proposed classes, i.e., declined applicants with DACA in the relevant

14  period,[16] from the relevant LOBs.  Miazad Decl. ¶¶ 17-21.  These filters included: (1) U.S.

15  address;[17] (2) valid SSN;[18] and (3) standard system denial codes that identify the reason(s) for

16  which Wells Fargo declined a particular applicant credit.  *Id.* ¶ 20.  To determine the relevant

17  system denial codes, Plaintiffs requested, and Wells Fargo produced, a "data pull" of each

18  Plaintiff's application data to determine which denial codes each Plaintiff was declined under.  *Id.*

19  ¶ 19.  The relevant denial codes, i.e., those that reflect reasons for denial that are based on

20  alienage or immigration status, are as follows:

| LOB | Product | Code | Reason |
|-----|---------|------|--------|
| EFS | Student loan | d01 | Applicant does not meet citizenship requirement. |
| CFS | Unsecured credit card | 1409 | Not a permanent United States resident. |

[16]     The relevant class period in this case is January 30, 2015 through the present.
[17]     A U.S. address is required because Section 1981 only protects those residing in the United States.  42 U.S.C. § 1981(a) ("All persons *within the jurisdiction* of the United States . . . .") (emphasis added); *see also United States v. Otherson*, 637 F.2d 1276, 1282 (9th Cir. 1980) (Section 1981 confers rights on "all persons present within the jurisdiction of the United States").
[18]     DACA recipients can receive SSNs, and applicants with valid SSNs can satisfy Wells Fargo's Customer Identification Program. 31 C.F.R. § 103.121(b)(2)(i); Ex. B (Tarchione 30(b)(6) Tr.) 29:1-21; Ex. C (Doll 30(b)(6) Tr.) 58:21-59:21; Ex. D (Strathman 30(b)(6) Tr.) 35:22-36:13; Ex. E (Belding 30(b)(6) Tr.) 43:16-24.

| CFS | Unsecured credit card | 1614 | Unable to verify permanency of residence. |
|-----|-----------------------|------|-------------------------------------------|
| CFS | Unsecured personal loan | 34N | Applicant is not a permanent United States resident. |
| CFS | Unsecured personal loan | 321 | We do not offer credit of this type or on the terms requested.[19] |
| BD | Small business loan or credit card | M93 | Product only available to businesses headquartered in the U.S., and owned by citizens or permanent residents |
| BD | Small business loan or credit card | Q14 | Product only available to businesses headquartered in the U.S., and owned by and whose debt is guaranteed by citizens or permanent residents |

*Id.*

Plaintiffs then requested, for the relevant LOBs in this case, that Wells Fargo filter its application databases of declined applicants using the relevant fields to attempt to fit the characteristics of DACA recipients, i.e., applicants with U.S. addresses and valid SSNs who are not identified as U.S. citizens or LPRs (if that field is available) and who had at least one of the system denial codes above, resulting in class lists that included DACA recipients denied credit. *Id.* ¶¶ 20-21.  These class lists identify applicants since January 30, 2015 who have the characteristics of DACA recipients, as set forth in the chart below.

| LOB | Product | Applicants Nationwide | Applicants in CA |
|-----|---------|----------------------|------------------|
| EFS | Student loan | 978 | 332 |
| CFS | Unsecured credit card or personal loan | 161,001 | 29,220 |
| Business Direct | Small business loan or credit card | 1,004 | N/A |

*Id.* ¶¶ 22-23.

As explained below, Plaintiffs propose identifying the precise California subclass members (i.e., applicants with DACA declined based on their immigration status) for EFS and CFS via a self-identification process that is part of the notice process.  *See infra*, Section II.E.

---

[19]     This denial code is only used to identify class members between January 30, 2015 and February 13, 2015.  After February 13, 2015, class members are identified by the 34N denial code.  *See* ECF No. 247.

III.    **ARGUMENT**

    A.    **Legal Standard**

        1.    **Federal Rule of Civil Procedure 23**

       The Court may certify a class or classes if the requirements of Federal Rule of Civil Procedure 23(a) are met, along with one of the prongs of Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Although "a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, . . . [m]erits questions may be considered . . . only to the extent [] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes*, 564 U.S. at 351) (quotation marks omitted).

       Here, Plaintiffs seek class certification of their Section 1981 claims for liability and injunctive and declaratory relief under Rule 23(b)(2), and of their Unruh Act claims for liability and statutory damages under Rule 23(b)(3).  With respect to their Section 1981 claims, Plaintiffs seek to certify three classes as follows, each consisting of all non-United States citizens who resided in the United States and held DACA and a valid SSN at the relevant time they applied for credit from Wells Fargo ("DACA Residents") from January 30, 2015 through the date of final judgment in this action ("Covered Period"), defined as follows:

    d.    All DACA Residents during the Covered Period who applied or will apply for a Wells Fargo student loan and were declined or will be declined by Wells Fargo under denial code "d01," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future (the "EFS Class");

    e.    All DACA Residents during the Covered Period who applied or will apply for (i) a Wells Fargo unsecured credit card and were declined or will be declined by Wells Fargo under denial codes "1409" or "1614," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future, or (ii) a Wells Fargo unsecured personal loan and were declined or will be declined by Wells Fargo under denial code "34N," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future, and, between January 30, 2015 and February 13, 2015 only, denial code "321" (the "CFS Class");

    f.    All DACA Residents during the Covered Period who applied or will apply for

a Wells Fargo small business credit card or loan, whether secured or unsecured, and were declined or will be declined by Wells Fargo under denial codes "M93" or "Q14," or another code or codes reflecting the same basis for declination that Wells Fargo might use in the future (the "BD Class").

With respect to their Unruh Act claims, Plaintiffs seek to certify two subclasses:

c. All EFS Class members in California during the Covered Period (the "EFS California Subclass");

d. All CFS Class members in California during the Covered Period (the "CFS California Subclass").

Members of the EFS Class, CFS Class, and BD Class, and the EFS and CFS California Subclasses, shall hereinafter be referred to as "Class Members" for purposes of this Motion.

To determine whether the requirements of Rule 23 are met, the Court must first look to the elements of the underlying substantive claims. *See Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014); *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014).

## 2.   Section 1981

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  Section 1981 "protects against discrimination on the basis of alienage." *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004) ("Just as the word 'white' indicates that § 1981 bars discrimination on the basis of race, the word 'citizen' attests that a person cannot face disadvantage in the activities protected by § 1981 solely because of his or her alien status.").

To state a claim under Section 1981, a plaintiff must allege that (1) she is "a member of protected class"; (2) she "attempted to contract for certain services"; and (3) she "was denied the right to contract for those services." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006).  A plaintiff must also show that she "was deprived of services while similarly situated persons outside the protected class were not." *Id.* (citation omitted).  Where, as here, there is direct evidence of disparate treatment in the form of facially discriminatory policies, the court does not engage in the *McDonnell-Douglas* burden-shifting analysis that is required for disparate impact discrimination cases. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121

1    (1985); *accord Enlow v. Salem–Keizer Yellow Cab Co*., 389 F.3d 802, 812 (9th Cir. 2004)

2    ("When a plaintiff alleges disparate treatment based on direct evidence in a[] [discrimination]

3    claim, we do not apply the burden-shifting analysis set forth in *McDonnell Douglas*[].").

### 3.      Unruh Act

5           California's Unruh Civil Rights Act provides that "all persons" within California "are free

6    and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability,

7    medical condition, genetic information, marital status, sexual orientation, *citizenship*, primary

8    language, or *immigration status* are entitled to the full and equal accommodations, advantages,

9    facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal.

10   Civ. Code § 51(b) (emphasis added).  The blanket "[e]xclusion of persons based on a

11   generalization about the class to which they belong" is typically sufficient to show unlawful

12   discrimination under the statute.  *O'Connor v. Village Green Owners Ass'n*, 33 Cal. 3d 790, 794

13   (1983); *see also Semler v. Gen. Elec. Capital Corp.,* 196 Cal. App. 4th 1380, 1391 (2011).

14          To prevail on a discrimination claim under the Unruh Act, a plaintiff must establish that:

15   "(1) he was denied the full and equal accommodations, advantages, facilities, privileges, or

16   services in a business establishment; (2) his [protected characteristic] was a motivating factor for

17   this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages,

18   facilities, privileges, or services; and (a4) defendants' wrongful conduct caused plaintiff to suffer

19   injury, damage, loss or harm."  *Johnson v. Hall*, No. 11 Civ. 2817, 2012 WL 1604715, at *3 (E.D.

20   Cal. May 7, 2012) (citing Cal. Civil Jury Instructions (BAJI), No. 7.92); *see also Oliver v. Alta*

21   *Los Angeles Hosps., Inc.*, No. B271206, 2017 WL 3124254, at *5 (Cal. Ct. App. July 24, 2017)

22   (substantially same, relying on Cal. Civil Jury Instructions (CACI) No. 3060).

23          As to the last element, a "plaintiff seeking statutory damages . . . does not need to

24   demonstrate causation or harm, because the Legislature has determined that arbitrary

25   discrimination by businesses 'is per se injurious.'"  *Oliver*, 2017 WL 3124254, at *3 (quoting

26   *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985)); *Botosan v. Paul McNally Realty*, 216 F.3d

27   827, 835 (9th Cir. 2000) ("[P]roof of actual damages is not a prerequisite to recovery of statutory

28   minimum damages.").

1

### B.   Plaintiffs' Section 1981 and Unruh Act Claims Satisfy Rule 23(a).

2       Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is

3   impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

4   defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

5   representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

6   23(a).  These requirements seek to "limit the class claims to those fairly encompassed by the

7   named plaintiff's claims."  *Dukes*, 564 U.S. at 349 (internal citation and quotation marks omitted).

8                    ### 1.   The Class Is Sufficiently Numerous.

9       Rule 23(a)(1) requires that members of a class are "so numerous that joinder . . . is

10  impracticable."  Fed. R. Civ. P. 23(a)(1).  "A class of forty or more members raises a presumption

11  of impracticability of joinder based on numbers alone."  *Rai v. Santa Clara Valley Transp. Auth.*,

12  308 F.R.D. 245, 253-54 (N.D. Cal. 2015) (internal citation and quotation marks omitted).

13  Even before class list and data discovery had commenced, Wells Fargo represented, after

14  conducting a manual review, that a significant number of the individuals declined because of their

15  immigration status had DACA.  ECF No. 183 (March 27, 2018 Hearing Tr.) 5:19-10:6 (counsel

16  for Wells Fargo representing that EFS class has at least "a couple of hundred" individuals).

17  Applying key characteristics of DACA recipients to Wells Fargo's data on applicants who did not

18  meet Wells Fargo's citizenship or immigration status requirement reveals that hundreds of

19  individuals were denied student loans and small business loans and thousands of individuals were

20  denied unsecured credit cards or personal loans.  Given the large number of Class Members in

21  each of the three classes and two subclasses, and the fact that the proposed Class Members are

22  "geographically dispersed" nationwide, including within California, numerosity is easily

23  satisfied.  *See Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15 Civ. 224, 2016 WL

24  314400, at *6 (N.D. Cal. Jan. 25, 2016) ("Joinder may be impracticable where

25  a class is geographically dispersed" (citation omitted)).

26                    ### 2.   There Are Common Questions of Law and Fact That Will Drive the
27                           Resolution of Plaintiffs' Claims.

28      Commonality is satisfied where there are questions of law or fact common to the class that

MOTION FOR CLASS CERTIFICATION
CASE No. 17-cv-454-MMC

1   are "capable of class wide resolution." *Dukes*, 564 U.S. at 350.  A question meets this criterion if

2   "the determination of its truth or falsity will resolve an issue that is central to the validity of each

3   one of the claims in one stroke." *Id.*; *see also Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957

4   (9th Cir. 2013) (class treatment should "generate common answers apt to drive the resolution of

5   the litigation" (quoting *Dukes*, 564 U.S. at 350)).  To establish commonality, "[p]laintiffs need

6   not show that every question in the case, or even a preponderance of questions, is capable of

7   classwide resolution.  So long as there is 'even a single common question,' a would-be class can

8   satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737

9   F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 359).

10       Both Plaintiffs' Section 1981 and Unruh claims raise common questions of law and fact as

11   to all Class Members.  Such questions include, for example, (1) whether Wells Fargo's lending

12   policies deny Plaintiffs and Class Members the opportunity to be considered for credit because of

13   Plaintiffs' and Class Members' alienage or DACA status; and (2) whether Wells Fargo's policies

14   as set forth above violate Section 1981 or the Unruh Act.

15       Where, as here, Plaintiffs assert liability based on uniform lending policies that apply to

16   all class members, commonality is easily satisfied.  *See Stevens v. Harper*, 213 F.R.D. 358, 377

17   (E.D. Cal. 2002) (in civil rights context, "commonality is satisfied 'where the lawsuit challenges a

18   system-wide practice or policy that affects all of the putative class members'" (quoting *Armstrong*

19   *v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001))); *see also Wren v. RGIS Inventory Specialists*, 256

20   F.R.D. 180, 204 (N.D. Cal. 2009) ("[W]here the employer has a uniform policy that is uniformly

21   applied, the appropriateness of class certification is easily established." (quoting *Kamar v. Radio*

22   *Shack Corp.*, 254 F.R.D. 387, 398-99 (C.D. Cal. 2008))); *Newberg on Class Actions* § 3:27 (5th

23   ed.) ("A claim that the opposing party 'has acted or refused to act on grounds that apply generally

24   to the class' necessarily presents a common question of fact; similarly, a claim that injunctive or

25   declaratory relief is appropriate for the class as a whole presents a common question of law."

26   (internal citation omitted)); *Huynh v. Harasz*, No. 14 Civ. 02367, 2015 WL 7015567, at *7 (N.D.

27   Cal. Nov. 12, 2015) (commonality in discrimination cases can be established by presenting

28   "significant proof that a defendant operated under a general policy of discrimination").

16

### 3. Representative Plaintiffs' Claims Are Typical.

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Under the rule's "permissive" standard, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Johnson v. Triple Leaf Tea Inc.*, No. 14 Civ. 1570, 2015 WL 8943150, at *3 (N.D. Cal. Nov. 16, 2015) (Chesney, J.) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Given the focus on defendants' common course of conduct and whether plaintiffs' and class members' claims are "interrelated," the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiff Rodas proposes to represent the EFS Class and the EFS California Subclass; Plaintiffs Diaz Vedoy and Tabares Villafuerte propose to represent the CFS Class and the CFS California Subclass; and Plaintiff Acosta proposes to represent the BD Class. These plaintiffs are all typical of the classes and subclasses they propose to represent because (1) each lived in the United States (and for the subclasses, in California), (2) each held DACA and a valid SSN when they applied for credit from Wells Fargo; (3) each applied for a credit product offered by the LOB whose respective class they propose to represent, and (4) each was denied credit because they were not U.S. citizens or LPRs pursuant to Wells Fargo's policies.

Because Plaintiffs and the Class Members they respectively seek to represent were subject to the "same, injurious course of conduct" by Wells Fargo, their claims are typical for purposes of Rule 23(a). *Armstrong*, 275 F.3d at 869; *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 537-38 (N.D. Cal. 2015) (typicality satisfied for RICO claims alleging that Wells Fargo charged plaintiffs and class members undisclosed mark-up fees). While the facts surrounding each Class Member's rejection and resulting injuries might differ, typicality is satisfied because "the

[court's] focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 618 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund. Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)); *see also Parsons*, 754 F.3d at 685 ("[T]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."); *Lamumba Corp. v. City of Oakland*, No. 05 Civ. 2712, 2007 WL 324582, at *9 (N.D. Cal. Nov. 2, 2007) (typicality satisfied for Section 1981 claims where plaintiffs and the class all "suffered from the City's discriminatory policies or practices in loan collection and management").

### 4. The Representative Plaintiffs and Class Counsel Will Adequately Protect the Interests of the Class.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met where representatives: (1) have common, not antagonistic, interests with unnamed class members, and (2) vigorously prosecute the interests of the class through qualified counsel. *Amchem Prods., Inc.*, 521 U.S. at 614, 625-26; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Here, adequacy is easily met because Representative Plaintiffs have the same interests as other Class Members and have shown that they can fairly and adequately protect Class Members' interests. Like all Class Members, Representative Plaintiffs were denied credit by Wells Fargo under specific denial codes pursuant to Wells Fargo's lending policies. Miazad Decl. ¶ 19. Representative Plaintiffs have no conflicts of interest with the Class Members and, indeed, Class Members stand to benefit substantially from Representative Plaintiffs' pursuit of injunctive relief and, for the subclasses, statutory damages on their behalf. Representative Plaintiffs (along with fellow Plaintiffs Perez and Barajas) have vigorously represented the interests of their fellow Class Members and devoted substantial time to the prosecution of this action, including by responding to extensive discovery, reviewing documents produced by Wells Fargo, sitting for depositions, and having numerous phone calls and in-person meetings with counsel. Miazad Decl. ¶¶ 24; Ex. Q (Rodas Tr.) 176:6-179:25, 201:8-202:11; Ex. K (Tabares Villafuerte Tr.) 17:24-20:9; Ex. J (Diaz Vedoy Tr.) 22:7-23:22; Ex. I (Acosta Tr.) 34:1-36:18.

1    Meanwhile, proposed class counsel, Outten & Golden LLP and the Mexican American

2   Legal Defense and Educational Fund ("MALDEF"), have extensive experience litigating complex

3   civil rights and employment class actions and have vigorously prosecuted this action on behalf of

4   Plaintiffs through extensive motion practice and fact and expert discovery, including each party's

5   disclosure of three proposed testifying experts. Miazad Decl. ¶¶ 3-16; Marrero Decl. ¶¶ 6-17.

6    **C.    Plaintiffs' Claims for Liability and Injunctive Relief Under Section 1981 Should Be Certified Under Rule 23(b)(2).**

7    "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party

8   opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil

9   rights cases against parties charged with unlawful, class-based discrimination are prime

10  examples." *Amchem Prods., Inc.*, 521 U.S. at 614 (citations omitted); *see also Parsons*, 754 F.3d

11  at 686 ("[T]he primary role of this provision has always been the certification of civil rights class

12  actions."). In fact, "subdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that

13  civil-rights suits for injunctive or declaratory relief can be brought as class actions." 7AA

14  Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1776

15  (3d ed.); *see also* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (noting that

16  actions in the "civil-rights field where a party is charged with discriminating unlawfully against a

17  class" are "illustrative" of those suitable for class adjudication under Rule 23(b)(2)).

18   As the Supreme Court explained in *Dukes*:

19   The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory
     remedy warranted—the notion that the conduct . . . can be enjoined or declared
20   unlawful only as to all of the class members or as to none of them. In other words,
     Rule 23(b)(2) applies only when a single injunction or declaratory judgment would
21   provide relief to each member of the class. It does not authorize class certification
     when each individual class member would be entitled to a *different* injunction or
22   declaratory judgment against the defendant.

23

24  564 U.S. at 360 (quotation marks and citation omitted).

25   Here, Plaintiffs seek a declaration that Wells Fargo's lending policies in the LOBs at issue

26  violate Section 1981 by excluding DACA recipients from eligibility. Plaintiffs also seek an order

27  enjoining Wells Fargo from engaging in such policies and practices, as well as requiring a third-

28  party monitor to ensure compliance with federal and state civil rights laws. Because all Class

19

1  Members have been subjected to such policies and practices, and declaratory and injunctive relief

2  prohibiting such policies and practices would provide substantial relief to all Class Members by

3  allowing them to apply and be considered for credit, certification under Rule 23(b)(2) is plainly

4  warranted. *See Parsons*, 754 F.3d at 688 ("[Rule 23(b)(2)'s] requirements are unquestionably

5  satisfied when members of a putative class seek uniform injunctive or declaratory relief from

6  policies or practices that are generally applicable to the class as a whole.").

7       Courts have long recognized that claims for declaratory and injunctive relief under civil

8  rights statutes are appropriate for certification under Rule 23(b)(2),[20] notwithstanding

9  individualized differences among the class members' claims and resulting injuries. *See Walters v.*

10  *Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (holding that certification of Rule 23(b)(2) class of

11  non-citizens raising due process claims was appropriate, "[e]ven if some class members have not

12  been injured by the challenged practice" (citing 7A Charles Alan Wright, Arthur R. Miller &

13  Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed. 1986) ("All the class members

14  need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them

15  to seek relief under Rule 23(b)(2).")); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)

16  (although "the claims of individual class members may differ factually," certification under Rule

17  23(b)(2) is a proper vehicle for challenging "a common policy")).

18       Here, Wells Fargo's "blanket policy" of exclusion is either "legally permissible . . . or it is

19  not." *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 277 F.R.D. 572, 577 (N.D. Cal. 2011).

20  Because "[t]hat issue may be resolved on a class-wide basis without regard to the specific

21  circumstances of each class member," certification under Rule 23(b)(2) is appropriate. *Id.*

22

---

23  [20]    *See, e.g.*, *Unthaksinkun v. Porter*, No. 11 Civ. 588, 2011 WL 4502050, at *6, *25 (W.D. Wash. Sept. 28, 2011) (certifying Rule 23(b)(2) class in challenge to state's application of

24  "facially discriminatory" standards to exclude certain aliens from health insurance coverage); *Satchell v. FedEx Corp.*, Nos. 03 Civ. 2659, 03 Civ. 2878, 2005 WL 2397522, at *1, *9 (N.D.

25  Cal. Sept. 28, 2005) (certifying Rule 23(b)(2) classes of minority employees raising section 1981 and related claims where plaintiffs challenged a "set of policies, procedures and systems that

26  allegedly affect class members in a similar fashion"); *Barefield v. Chevron, U.S.A., Inc.*, No. 86 Civ. 2427, 1988 WL 188433, at *2 (N.D. Cal. Dec. 6, 1988) (plaintiffs' section 1981 and Title

27  VII discrimination claims for injunctive relief "fall squarely within the ambit of [Rule 23(b)(2)]") (citing civil rights cases certifying (b)(2) class actions);  William B. Rubenstein, Newberg on

28  Class Actions § 21:5 (5th ed.) ("[I]f a creditor maintains a policy that facially discriminates in a prohibited manner, class certification would be straightforward. . . .").

MOTION FOR CLASS CERTIFICATION
CASE No. 17-cv-454-MMC

**D.      Plaintiffs' Claims for Statutory Damages Under the Unruh Act Should Be Certified Under Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). Because both of these requirements are met with respect to Plaintiffs' statutory damages claims under the Unruh Act, the Court should certify Plaintiffs' two California Unruh Act subclasses.

**1.      Common Issues Predominate Over Individual Issues.**

The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc.*, 521 U.S. at 623).  Predominance does not require "that each elemen[t] of [a plaintiff's] claim [is] susceptible to classwide proof."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (second alteration added).  Rather, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting  William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed.)); *see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) ("[M]ore important questions apt to drive the resolution of the litigation are given more weight . . . over individualized questions which are of considerably less significance. . . .").

Here, Plaintiffs challenge discriminatory policies that apply to all members of the EFS and CFS Subclasses.  Common questions as to the nature and legality of these blanket policies can be adjudicated collectively, and will drive the resolution of Plaintiffs' Unruh Act claims. Predominance is therefore satisfied.  *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509, 538 (N.D. Cal. 2012) (predominance requirement satisfied as to discrimination claims where plaintiffs challenged "specific employment practices" that applied "companywide"); *cf. Jones v. Wells Fargo Bank, N.A.*, No. B237282, 2015 WL 661757, at *8, 15 (Cal. Ct. App. Feb. 17, 2015) (affirming class certification under California law for Unruh Act claims challenging Wells Fargo's practices resulting in race-based lending discrimination); *id.* at *14 ("Claims that a

1   uniform policy was consistently applied to a group are proper for class treatment.").

2   As for damages, it is well-established in this circuit that courts "cannot decline to certify a

3   class simply because the damages inquiry will be individualized."  *Bias v. Wells Fargo & Co.*,

4   312 F.R.D. 528, 536 (N.D. Cal. 2015) (citing *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514

5   (9th Cir. 2013)).  In any event, here, because Plaintiffs seek statutory damages of $4,000, *see* Cal.

6   Civ. Code § 52(a) (minimum statutory penalty of $4,000 for "each and every" violation), the fact-

7   finder need not engage in individualized inquiries as to severity of each Class Member's injury or

8   the amount of damages owed.  *Jones*, 2015 WL 661757, at *4 (because minimum statutory

9   penalties are mandatory once liability is established, "there is no need to wade into individual

10  issues surrounding actual damages").

11  Wells Fargo will likely argue that certain EFS or CFS California Subclass members are

12  ineligible to receive statutory damages under the Unruh Act because they may not have received

13  credit even absent Wells Fargo's discriminatory policy, but this argument misunderstands the

14  nature of the injury suffered by victims of discrimination under the Unruh Act.  A "plaintiff

15  seeking statutory damages for a violation of the Unruh Act does not need to demonstrate

16  causation or harm, because the Legislature has determined that arbitrary discrimination by

17  businesses 'is per se injurious.'"  *Oliver v. Alta L.A. Hosps., Inc.*, No. B271206, 2017 WL

18  3124254, at *3 (Cal. Ct. App. July 24, 2017) (quoting *Koire*, 40 Cal. 3d at 33); *see also Botosan*

19  *v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) (actual damages and statutory damages

20  are "two separate categories of damages" and "proof of actual damages is not a prerequisite to

21  recovery of statutory minimum damages"); *Jones*, 2015 WL 661757, at *12 (rejecting Wells

22  Fargo's argument that "plaintiffs cannot establish damages under the Unruh Act unless they can

23  show they received less favorable loan terms" than those who did not experience allegedly

24  discriminatory conduct because the injury "occur[s] when the discriminatory policy [is] applied").

25  **2.     A Class Action is a Superior Method for Plaintiffs' Claims.**

26  The superiority inquiry directs the Court to consider four factors—the class members'

27  interests in controlling litigation, the nature and extent of litigation, the desirability of

28  concentrating the litigation of the claims, and the manageability of the case as a class action.  Fed.

1    R. Civ. P. 23(b)(3)(A)-(D).  All four factors easily support a finding that a class action is superior

2    to individual adjudication of Class Members' claims.

3          As to the first three factors, "there is no indication that class members seek to individually

4    control their cases, that individual litigation is already pending in other forums, or that this

5    particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520,

6    2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006).  Class Members likely lack the resources

7    and incentives to secure qualified counsel, or to see litigation through to completion on their own.

8    Few Class Members, many of whom are students and all of whom, due to the requirements of

9    DACA, are under 40 years of age, would invest the time and money, plus the stress inherent in

10   litigation, for a chance to possibly recover modest damages.  In addition, individual lawsuits from

11   hundreds of plaintiffs would be wasteful and inefficient for the court system.  *See, e.g.*, *Whiteway*

12   *v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 WL 2642528, at *11 (N.D.

13   Cal. Sept. 14, 2006) (superiority is met where "[t]he needless expenditure of additional time,

14   effort and money that would be attendant to numerous individual suits is greatly reduced, and the

15   potential for differing outcomes is avoided as well").  Employing the class device here will

16   achieve economies of scale, conserve judicial resources, and preserve confidence in the judicial

17   system by avoiding repetitive proceedings and preventing inconsistent adjudications.

18         As to the fourth factor, a class action is manageable.  As described in further detail below,

19   class notice is not required for the Section 1981 nationwide classes.  For the California

20   subclasses, Wells Fargo's database has application data that the parties have filtered to identify

21   California applicants who were rejected based on their immigration status or alienage.  From this

22   population, Plaintiffs have identified applicants who have characteristics directly associated with

23   DACA to whom notice can be sent inviting class members to self-identify via affidavit.  As noted

24   below, self-identification is a well-accepted method of for identifying class members within the

25   Ninth Circuit.  *See infra* at II.E.; *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 576

26   (N.D. Cal. 2018) ("*Briseno* 'foreclos[es] . . . [Defendants'] argument that a self-identifying class

27   is not 'administratively feasible' at the certification stage.'").  Further, the Ninth Circuit has a

28   "well-settled presumption that courts should not refuse to certify a class merely on the basis of

1    manageability concerns." *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D.

2    Cal. 2017) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017)).

3    Accordingly, any minor manageability concerns are not sufficient to deny class certification.

4         **E.    Plaintiffs' Proposed Notice Program.**

5         Plaintiffs propose a self-identification notice program that comports with Rule 23(b)(3)'s

6    class notice requirements. *See* Ex. JJ (Proposed Class Notice). The Section 1981 nationwide

7    classes under Rule 23(b)(2) need not be sent a notice and provided an opportunity to opt out.

8    Fed. R. Civ. P. 23(c)(2)(A) (court has discretion to authorize notice in class certified under Rule

9    23(b)(2)). "As the focus of a Rule 23(b)(2) class is 'on the nature of the remedy sought . . . the

10   identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action,'"

11   and Rule 23(b)(2) does not require the same procedural safeguards, such as notice and ability to

12   opt out, as Rule 23(b)(3). *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015).

13        As for the Rule 23(b)(3) California subclasses, Plaintiffs propose that a third-party

14   administrator send class notice, after certification, to the applicants identified by the parties in the

15   California subclasses only.[21] Plaintiffs' proposed notice informs potential subclass members as to

16   all matters required under Rule 23(c)(2)(B), as well as the need for them to demonstrate their

17   subclass membership by submitting a confidential affidavit that attests to their membership in the

18   subclass.[22] Ex. JJ (Proposed Class Notice). Courts in this district regularly permit identification

19   via affidavit for consumer classes. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal.

20

---

21   [21]    If classes are certified, Plaintiffs request that Wells Fargo supplement its class list
     production for just the EFS and CFS California Subclasses to cover the entire relevant period, i.e.,
22   January 30, 2015 through the present, and de-anonymize the class lists and provide contact
     information, so Plaintiffs can send notice as required by Rule 23(b)(3) and (c)(2)(B). Courts
23   routinely order defendants to supplement or produce class list contact information with names,
     addresses, email addresses, and phone numbers after Rule 23 certification. *See, e.g.*, *Munguia-
24   Brown v. Equity Residential*, No. 16 Civ. 1225, 2017 WL 4838822, at *7 (N.D. Cal. Oct. 23,
     2017) (certifying Rule 23 class and ordering defendant to produce class list including names, last
25   known addresses and email addresses, phone numbers); *Hopkins v. Stryker Sales Corp.*, No. 11
     Civ. 2786, 2012 WL 1715091, at *12 (N.D. Cal. May 14, 2012) (ordering production of class
26   list); *Schulken v. Wash. Mut. Bank*, No. 09 Civ. 2709, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5,
     2012) (same).
27   [22]    Plaintiffs propose that Subclass members affirm that they held DACA and a valid SSN at
     the time they were declined credit by Wells Fargo. Plaintiffs recognize Wells Fargo's right to
28   challenge the affidavits and expect that the parties will be able to meet and confer and agree on a
     process that protects the interests of both Wells Fargo and potential class members.

1   2014) (granting certification where plaintiffs' notice plan would "require at least some potential

2   class members to respond to a general notice and then assert their class membership by attesting

3   to the fact that they purchased the challenged products"); *Brown v. Hain Celestial Grp., Inc.*, No.

4   11 Civ. 03082, 2014 WL 6483216, at *9-10 (N.D. Cal. Nov. 18, 2014) (permitting class members

5   to self-identify based on recollection of whether they purchased allegedly falsely advertised

6   product, as product labels varied little and as such would pose few problems with class members'

7   recollections); *Dickey v. Advanced Micro Devices, Inc.*, No. 15 Civ. 04922, 2019 WL 251488, at

8   *7 (N.D. Cal. Jan. 17, 2019) ("[S]elf-selection via affidavit is a viable means to ascertain class

9   members, and the defendant's interest in challenging individual claims can be protected through

10  the claims administration process." (citing *Briseno*, 844 F.3d at 1129-32)).[23]

11      Plaintiffs' proposed notice therefore meets the requirements under Rule 23(c)(2)(B) by

12  letting eligible class members decide whether to stay in the class and potentially be able to

13  receive statutory damages, or exclude themselves.  Ex. JJ (Proposed Class Notice).[24]

14  **IV.   CONCLUSION**

15      For the reasons set forth above, Plaintiffs request that the Court certify the Section 1981

16  Classes and California Unruh Act Subclasses, appoint Ms. Rodas, Ms. Diaz Vedoy, Mr. Tabares

17  Villafuerte, and Mr. Acosta as class representatives, appoint Outten & Golden and MALDEF

18  firms as class counsel, authorize Plaintiffs to issue their proposed notice, and order Wells Fargo to

19  supplement its class list production within two weeks of the Court's certification order.

20

---

21  [23]    Unlike cases where courts rejected self-identification of some class members via affidavit,
22  here class membership can be established through objective criteria—every class member will
    either have DACA status (and documents supporting that status, if necessary), or they will not.
    Whether an individual has DACA status is not difficult to recall and does not present "subjective
23  memory problems."  *In re Hulu Privacy Litig.*, No. 11 Civ. 3764, 2014 WL 2758598, at *15
    (N.D. Cal. June 17, 2014) (rejecting self-identification where it would require putative class
24  members to recall their browser settings and whether they logged into Facebook and Hulu from
    the same browser); *see also Brown*, 2014 WL 6483216, at *9 (noting self-identification was
25  inappropriate in a false advertising case where putative class members were exposed to numerous
    product labels and label changes making it difficult to recall which labels they were exposed to).
26  [24]    Plaintiffs request that the Court authorize distribution of the Class Notice via email and
    regular mail, and that the Court permit submission of claims and requests for exclusion via email,
27  mail, or directly through a website maintained by the notice administrator.  Plaintiffs also request
    that the Court authorize a reminder notice via mail and e-mail half-way through the notice period,
28  in order to ensure class members have adequate notice and opportunities to submit evidence of
    their eligibility in the class, or request exclusion.

Dated:  November 1, 2019                  Respectfully submitted,

                                          By:  /s/ Ossai Miazad
                                                  Ossai Miazad

                                          **OUTTEN & GOLDEN LLP**
                                          Ossai Miazad*
                                          Michael N. Litrownik*
                                          Elizabeth V. Stork*
                                          685 Third Avenue, 25th Floor
                                          New York, NY 10017
                                          Telephone:  (212) 245-1000
                                          Facsimile:   (646) 509-2060
                                          om@outtengolden.com
                                          mlitrownik@outtengolden.com
                                          estork@outtengolden.com

                                          Jahan C. Sagafi (Cal. Bar No. 224887)
                                          Relic Sun (Cal. Bar No. 306701)
                                          Rachel Dempsey (Cal. Bar No. 310424)
                                          One California St, 12th Floor
                                          San Francisco, CA 94111
                                          Telephone: (415) 638-8800
                                          Facsimile:   (415) 638-8810
                                          jsagafi@outtengolden.com
                                          rsun@outtengolden.com
                                          rdempsey@outtengolden.com

                                          Patrick David Lopez*
                                          Daniel S. Stromberg*
                                          601 Massachusetts Avenue
                                          Second Floor West Suite
                                          Washington DC, 20001
                                          Telephone:  (202) 847-4400
                                          Facsimile:   (202) 847-4410
                                          pdl@outtengolden.com
                                          dstromberg@outtengolden.com

                                          **MEXICAN AMERICAN LEGAL DEFENSE
                                          AND EDUCATIONAL FUND**
                                          Thomas Saenz (Cal. Bar No. 159430)
                                          Belinda Escobosa Helzer (Cal. Bar
                                          No. 214178)
                                          Joel Marrero (Cal. Bar No. 275601)
                                          634 S. Spring St., 11th Floor
                                          Los Angeles, CA 90014
                                          Telephone:  (213) 629-2512
                                          Facsimile:   (213) 629-0266

MOTION FOR CLASS CERTIFICATION
CASE No. 17-cv-454-MMC

tsaenz@maldef.org
jmarrero@maldef.org

*admitted *pro hac vice*
***Attorneys for Plaintiffs and the Proposed Class***