MCGUIREWOODS LLP
JAMIE D. WELLS SBN #290827
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

MARY J. HACKETT
K. ISSAC DEVYVER
KARLA L. JOHNSON
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: 412-667-6000
Facsimile: 412-667-6050

Attorneys for Defendant Wells Fargo Bank, N.A.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MITZIE PEREZ, ANDRES ACOSTA, SERGIO BARAJAS, TERESA DIAZ VEDOY, VICTORIA RODAS, and SAMUEL TABARES VILLAFUERTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. 3:17-cv-454-MMC (JCS)<br><br>**WELLS FARGO'S ADMINISTRATIVE MOTION FOR LEAVE TO INCREASE PAGE LIMIT FOR WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT** |

**WELLS FARGO'S ADMINISTRATIVE MOTION FOR LEAVE TO INCREASE PAGE LIMIT FOR WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Civil Local Rule 7-2(b) and 7-11, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves the Court to increase the page limit from 25 pages to 45 pages for Wells Fargo's Motion for Summary Judgment, which will be filed on or before December 16, 2019. Wells Fargo will agree to a reciprocal number of pages for Plaintiffs' Opposition. This Motion is supported by the Declaration of K. Issac deVyver.

There is good cause for the Court to grant Wells Fargo leave to file a Motion for Summary Judgment not to exceed 45 pages. This case, which has been pending for almost three years and has 294 docket entries, is a complex one. Named Plaintiffs Perez, Rodas, Barajas, Diaz Vedoy, Villafuerte, and Acosta, each of whom is a DACA recipient, brought this class action lawsuit accusing Wells Fargo of lending discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") and the Unruh Civil Rights Act, California Civil Code §§ 51 and 52 *et seq*. ("Unruh"). Plaintiffs are challenging Wells Fargo's lending policies and underwriting guidelines as they relate to four different lines of business: student lending, credit card, small business lending, and personal lines and loans.

Wells Fargo intends to move for summary judgment on each of the six Plaintiff's claims and on Plaintiffs' overarching theory that Wells Fargo's lending policies are discriminatory against DACA recipients. In essence, Plaintiffs have brought six individual lawsuits and, in order to explain the reasons that Wells Fargo is entitled to summary judgment, the bank must spend 1-3 pages per Plaintiff outlining: (1) the circumstances around each Plaintiff's application for credit (and, in some cases, certain Plaintiffs never actually applied), and (2) why each Plaintiff failed to show that he or she was otherwise qualified for the credit allegedly sought from Wells Fargo or that other, similarly situated non-DACA recipients were provided credit on terms Plaintiffs should have received.

In addition, because Plaintiffs have challenged Wells Fargo's lending policies and underwriting guidelines as they relate to four different lines of business, the bank needs to explain how the policies and guidelines for each line of business operate and why they do not discriminate against DACA recipients.  Throughout the course of this case, Plaintiffs have sought to depict Wells Fargo's lending policies and underwriting guidelines as a single policy that "categorically exclude" DACA recipients from applying for certain types of credit.  Not so.  There are multiple lending policies and underwriting guidelines for each of the four lines of business and Wells Fargo requires additional pages to show that Plaintiffs are inaccurately portraying the policies and guidelines, and explain how those policies and guidelines do in fact allow for lending all types of credit, both secured and unsecured, to DACA recipients.  Wells Fargo also needs the additional pages to provide examples of when and how Wells Fargo has extended unsecured credit to DACA recipients, including that Wells Fargo extended an unsecured credit card to one of the named Plaintiffs, Victoria Rodas, after she became a DACA recipient.

Relatedly, in addition to the fact that Wells Fargo's lending policies and underwriting guidelines are not facially discriminatory, Wells Fargo requires additional pages to explain why its policies and guidelines satisfy Section 1981's legitimate non-discriminatory business reason defense and Unruh's business justification and compelling public policy defense.  While those defenses are similar, each requires a different analysis employing a separate legal standard.

Finally, Wells Fargo needs additional pages to explain Deferred Action for Childhood Arrivals, or DACA, and the lending risks associated with DACA.  Although DACA is regularly discussed in the media, what DACA is, and the rights it does (or does not) provide to recipients, is generally misunderstood.  Additional pages are essential for Wells Fargo explain DACA and how a borrower's DACA status impacts the credit analysis relating to whether and how to extend credit to a DACA recipient.  There is no dispute that the Equal Credit Opportunity Act (ECOA) and its implementing regulations allow lenders, like Wells Fargo, to inquire about, and consider, a

borrower's permanence of residence and immigration status when deciding whether to extend credit. Wells Fargo requires additional pages to explain how the bank's policies comply with ECOA and, at the same time, Section 1981 and Unruh.

All of these reasons demonstrate good cause for the Court to increase the page limit from 25 pages to 45 pages for Wells Fargo's Motion for Summary Judgment. *See Garcia v. Soule*, No. C07-0438 MMC (PR), 2010 WL 728041, at *1 n.1 (N.D. Cal. Feb. 26, 2010) (Chesney, J.) (granting motion to exceed page limits for good cause shown).

Wells Fargo met and conferred with Plaintiffs by both email and telephone on November 5, 2019, about the relief requested herein, but Plaintiffs declined to consent. At that time, Plaintiffs also indicated that Wells Fargo should be prohibited from moving for summary judgment at all until after the Court rules on Plaintiffs' Motion for Class Certification. There is, however, no basis for Plaintiffs' position. From the very beginning of this case, Wells Fargo has indicated that it would move for summary judgment prior to, or contemporaneously with, Plaintiffs' Motion for Class Certification. Wells Fargo raised this very issue at the initial case management conference on September 22, 2017, and Plaintiffs agreed that Wells Fargo could move for summary judgment *before* the Court set a dispositive motion deadline. To that end, the parties memorialized their agreement in parties' Joint Pretrial Preparation Order, which specifically provides that "no party shall be prohibited from filing a motion for summary judgment before the Court sets a deadline[.]" D.E. 84. That memorialization of the parties' agreement, which the Court endorsed, has been in every subsequent Joint Pretrial Preparation Order. D.E. 214 (Revised Joint Pretrial Preparation Order); 243 (Order Extending Joint Pretrial Preparation Order); 246 (Order Extending Joint Pretrial Preparation Order); 275 (Order Regarding Expert Discovery Cutoff and Class Certification Briefing Schedule, Continuing Hearing, Revised Joint Pretrial Preparation Order).

For the foregoing reasons, Wells Fargo respectfully requests that the Court increase the

page limit from 25 pages to 45 pages for Wells Fargo's Motion for Summary Judgment, which will be filed on or before December 16, 2019.

DATED:  November 7, 2019              Respectfully submitted,

MCGUIREWOODS LLP

By:  */s/ K. Issac deVyver*
K. Issac deVyver
Attorneys for Defendant Wells Fargo Bank, N.A.