1  Jahan C. Sagafi  (Cal. Bar No. 224887)
2  Rachel Dempsey (Cal. Bar No. 310424)
   OUTTEN & GOLDEN LLP
3  One California St, 12th Floor
   San Francisco, California 94111
4  Telephone: (415) 638-8800
   Facsimile:  (415) 638-8810
5  jsagafi@outtengolden.com
   rdempsey@outtengolden.com
6
7  Daniel S. Stromberg*
   Hannah Cole-Chu*
8  OUTTEN & GOLDEN LLP
   601 Massachusetts Avenue
9  Second Floor West Suite
   Washington, D.C. 20001
10 Telephone: (202) 847-4400
   Facsimile:  (202) 847-4410
11 dstromberg@outtengolden.com
   hcolechu@outtengolden.com
12
13 *Attorneys for Plaintiffs and*
   *the Proposed Class*
14  *admitted pro hac vice*
15

Ossai Miazad*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060
om@outtengolden.com

Thomas A. Saenz (Cal. Bar No. 159430)
Belinda Escobosa Helzer (Cal. Bar
No. 214178)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile:  (213) 629-0266
tsaenz@maldef.org
bescobosa@maldef.org

16            **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
17              **SAN FRANCISCO DIVISION**
18

19 MITZIE PEREZ and SERGIO BARAJAS,
   individually, and ANDRES ACOSTA,
20 TERESA DIAZ VEDOY, VICTORIA
   RODAS, and SAMUEL TABARES
21 VILLAFUERTE, individually and on behalf
   of all others similarly situated,
22
                        Plaintiffs,
23
24          v.
25 WELLS FARGO BANK, N.A.,
26                      Defendant.
27
28

Case No. 17-cv-00454-MMC

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR FINAL
SETTLEMENT APPROVAL ORDER**

Judge: Maxine M. Chesney
Hearing Date: January 8, 2021
Hearing Time: 9:00 a.m.
Courtroom: 7, 19th floor

-1-

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 8, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, via Zoom webinar at https://cand-uscourts.zoomgov.com/j/1606261089?pwd=Q3k3SEx5WC9BSm1FSWswOWM4bnB3Zz09, ID: 160 626 1089, Password: 091644, before the Honorable Maxine M. Chesney, Plaintiffs Mitzie Perez and Sergio Barajas, individually, and Plaintiffs Victoria Rodas, Samuel Tabares Villafuerte, Teresa Diaz Vedoy, and Andres Acosta, individually and as class representatives on behalf of the Class, will, and hereby do, move this Court for an order: (1) granting, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the Parties' proposed class action settlement (the "Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Rules 23(a) and 23(b)(3), final class certification of the Settlement Class conditionally certified in the Preliminary Approval Order.  ECF No. 339.

Plaintiffs make this motion on the grounds that the Settlement is fair, adequate, and reasonable, was reached through arm's-length negotiations with an experienced mediator, and has drawn a highly favorable response from the Class, as described in the attached memorandum. The motion is based on this notice of motion and motion; the memorandum in support of the motion; the Declaration of Ossai Miazad in Support of Plaintiffs' Notice of Motion and Motion for Final Settlement Approval Order; the Declaration of Jennifer Keough Regarding Settlement Administration; the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the hearing on the motion.

Dated: December 23, 2020                          Respectfully submitted,

                                                  By:  /s/ *Ossai Miazad*
                                                       Ossai Miazad

                                                  Ossai Miazad*
                                                  OUTTEN & GOLDEN LLP
                                                  685 Third Avenue, 25th Floor
                                                  New York, NY 10017
                                                  Telephone: (212) 245-1000
                                                  Facsimile:  (646) 509-2060
                                                  om@outtengolden.com

Daniel S. Stromberg*
Hannah Cole-Chu*
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue, 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile:  (202) 847-4410
dstromberg@outtengolden.com
hcolechu@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Thomas A. Saenz (Cal. Bar No. 159430)
Belinda Escobosa Helzer (Cal. Bar
No. 214178)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile:  (213) 629-0266
tsaenz@maldef.org
bescobosa@maldef.org

Tanya Gabrielle Pellegrini (Cal. Bar No.
285186)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
1512 14th Street
Sacramento, CA 95814
Telephone: (916) 444-3031
tpellegrini@maldef.org

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the
Proposed Class*

-2-

1

## <u>TABLE OF CONTENTS</u>

2

I. FACTUAL BACKGROUND ................................................................................2

3

    A.    Class Counsel Engaged in Years of Hard-Fought Litigation Prior

4
             to Settlement. ........................................................................................2

5

    B.    The Settlement Class. .........................................................................3

6

    C.    The Settlement. ....................................................................................4

7

    D.    Notice and Claims Process. ..................................................................5

8

             1.    The Administrator Adhered to Class Notice

9
                     Requirements. ...........................................................5

10

             2.    Thousands of Class Members Submitted Claim Forms. ....................6

11

             3.    CAFA Notice Requirements Were Satisfied. ...................................10

12

II. ARGUMENT ..................................................................................................10

13

    A.    The Best Practicable Notice of Settlement Has Been Provided to

14
             the Class. .............................................................................................10

15

    B.    Final Approval Is Appropriate Under Rule 23. ............................................11

16

             1.    Plaintiffs Faced Substantial Obstacles to Recovery. ........................12

17

             2.    The Risk, Expense, Complexity, and Delay of Further

18
                     Litigation Support Final Approval........................................................13

19

              3.    Plaintiffs Faced a Risk that the Court Would Deny Class

20
                     Certification. ....................................................................14

21

              4.    The Settlement Fairly and Adequately Compensates the

22
                     Class.................................................................................14

23

              5.    The Extent of Discovery Supports Approval....................................15

24

              6.    Counsel's Experience and Views Support Approval........................16

25

              7.    Class Members Have Reacted Positively to the

26
                     Settlement. ........................................................................16

27

              8.    The Requirements for Approval Under Rule 23(e)(2) Are

28
                     Met. ..................................................................................19

    C.    Class Counsel Have Incurred Additional Costs Since Filing Their

             Fee Petition. .......................................................................................21

i

1

D.    The Court Should Certify the Class as Final. ................................................ 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
    No. 17 Civ. 3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ............................................20

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017) ................................................................................................13

*Bert v. AK Steel Corp.*,
    No. 12 Civ. 467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...........................................20

*Betancourt v. Advantage Human Resourcing, Inc.*,
    No. 14 Civ. 1788, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ............................................15

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ..............................................................................................10

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) .........................................................................................15, 16

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................................17

*Churchill Village, LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...........................................................................................10, 19

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................................................................14

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ..................................................................................12

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................................12

*Donnenfeld v. Petro, Inc.*,
    No. 17 Civ. 2310 (E.D.N.Y. Mar. 5, 2020) ..........................................................................16

*Edwards v. Hearst Commc'ns*,
    No. 15 Civ. 9279 (S.D.N.Y. Apr. 4, 2019) ..........................................................................16

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...............................................................................................................10

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................16

*Ford v. CEC Entm't Inc.*,
    No. 14 Civ. 677, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015)..........................................11

*Fraley v. Batman*,
    638 F. App'x 594 (9th Cir. 2016) ...................................................................19

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ...........................................................19

*Gonzalez v. Pritzker*,
    No. 10 Civ. 3105, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016) ..........................20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................11, 12, 19

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..........................15

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................15

*Lopez-Valenzuela v. Maricopa Cty.*,
    No. 08 Civ. 00660, 2015 WL 12811366 (D. Ariz. June 25, 2015) ........................20

*Ma v. Covidien Holding, Inc.*,
    No. 12 Civ. 2161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) ....................15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................15, 19

*Mills v. Capital One, N.A.*,
    No. 14 Civ. 1937, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ........................20

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ......................................................................10

*In re MyFord Touch Consumer Litig.*,
    No. 13 Civ. 3072 (N.D. Cal. Nov. 7, 2019) ....................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ................................................................14, 15

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ......................................................................16

*Quiruz v. Specialty Commodities, Inc.*,
    No. 17 Civ. 3300, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ..........................17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................12, 16, 20

iv

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir. 2019) ............................................................12

*Schneider v. Chipotle Mexican Grill, Inc.,*
    No. 16 Civ. 02200, 2020 WL 6484833 (N.D. Cal. Nov. 4, 2020)...........16

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .............................................................11

*Stovall-Gusman v. W.W. Granger, Inc.,*
    No. 13 Civ. 2540, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ...........15

*Thomas v. Albright,*
    139 F.3d 227 (D.C. Cir. 1998).............................................................19

*Tumampos v. Cathay Pac. Airways LTD.,*
    No. 16 Civ. 6208, 2018 WL 5603702 (N.D. Cal. Sept. 21, 2018)...........14

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ......................................................................14

*United States v. Armour & Co.,*
    402 U.S. 673 (1971) ..........................................................................14

*Victorino v. FCA US LLC,*
    No. 16 Civ. 1617, 2020 WL 5064295 (S.D. Cal. Aug. 27, 2020) ...........10

**Statutes**

28 U.S.C. § 1715(d) .................................................................................10

Cal. Civ. Code § 52(a) .............................................................................13

**Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................10, 11, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Mitzie Perez and Sergio Barajas, individually, and Plaintiffs Victoria Rodas, Samuel Tabares Villafuerte, Teresa Diaz Vedoy, and Andres Acosta, individually and as class representatives on behalf of the Class (collectively, "Plaintiffs"), respectfully request final approval of this Settlement of the claims between Wells Fargo Bank, N.A. ("Wells Fargo") and a class of consumers with temporary protection from deportation, federal work authorization, and Social Security numbers under the June 2012 program known as Deferred Action for Childhood Arrivals ("DACA"). Plaintiffs' Sixth Amended Complaint ("6AC") alleges that Class Members submitted applications for and were denied loans and credit for several types of Wells Fargo consumer lending products on the basis of their alienage and immigration status, in violation of 42 U.S.C. § 1981 ("Section 1981") and California's Unruh Act, Cal. Civ. Code § 52. ECF No. 337 (6AC). In connection with this Settlement, Wells Fargo has agreed to change its lending policies to make credit and loans available to DACA recipients on the same terms and conditions as they are offered to U.S. citizens, and to provide monetary relief valued at up to $18.7 million, including payments to Class Members in a total amount ranging from $4,750,000 to $13,100,000; $450,000 in administration costs; $150,000 in service awards for four class representatives and two individual plaintiffs; and $5,000,000 in attorneys' fees and costs. *See* ECF No. 324-2, Settlement Agreement ("SA") §§ 3.3.1; 3.3.4; 3.37; 15.1; 15.2.

The Settlement, which the Court preliminarily approved on August 21, 2020, was reached after several years of litigation and extensive negotiation, and has received a positive response from the Class. In total, members of the California Class submitted at least 3,114 Claim Forms and members of the National Class submitted at least 2,594 Claim Forms during the claims period.[1] Declaration of Jennifer M. Keough ("JND Decl.") ¶ 18. Only a single Class Member submitted a valid opt-out, *id.* ¶¶ 20-21, and only five Class Members submitted valid

---

[1]     As of the date of this Motion, there were an additional 2,794 Claim Forms that could not be associated with a record on the list of potential Class Members to receive notice that Wells Fargo provided to the Settlement Administrator ("Notice List"). JND Decl. ¶ 18. The Settlement Administrator is continuing to review these records to evaluate potential Class membership and will provide an update prior to the Final Approval hearing. *Id.*

1   objection forms—none of which stated a substantive objection to the Settlement, ECF Nos. 344-

2   347, 349, 353-3.  To the contrary, the comments on the objection forms described how the denial

3   of credit impacted Class Members' lives and emphasized the significance of the relief associated

4   with the Settlement.  *See, e.g.*, ECF No. 346 (the denial of credit led the Class Member to

5   experience depression), ECF No. 347 (the denial of credit impacted the Class Member's ability

6   "to improve the future of my family and continue to invest in the country and continue growing

7   with my business").  Because the Settlement is fair, adequate, and reasonable, and provides

8   excellent relief to the Class, Plaintiffs respectfully request that the Court confirm as final the

9   certification of the Classes, appoint Plaintiffs Rodas, Tabares Villafuerte, Diaz Vedoy, and

10  Acosta as Class Representatives and Plaintiffs' Counsel as Class Counsel, and grant final

11  approval of the Settlement.

12  **I.    FACTUAL BACKGROUND**

13        **A.    Class Counsel Engaged in Years of Hard-Fought Litigation Prior to Settlement.**

14          Plaintiffs Perez and the California League of United Latin American Citizens filed this

15  lawsuit in January 2017, after months of in-depth pre-suit investigation, seeking to represent all

16  persons within the jurisdiction of the United States whom Wells Fargo denied the right to

17  contract for a loan or other financial product because they were not U.S. citizens.  ECF No. 1;

18  Declaration of Ossai Miazad in Support of Final Approval ("Miazad FA Decl.")) ¶ 4.  Over the

19  course of the next three years, Plaintiffs added five additional named plaintiffs—Barajas, Rodas,

20  Tabares Villafuerte, Diaz Vedoy, and Acosta—withdrew LULAC as a plaintiff, and narrowed

21  the allegations to seek relief as to the following Wells Fargo Lines of Business ("LOBs"): (1)

22  unsecured student loans, offered by Educational Financial Services ("EFS"); (2) unsecured credit

23  cards and (3) unsecured personal loans, offered by Consumer Financial Services ("CFS"); (4)

24  both secured and unsecured small business loans and credit cards, offered by Business Direct

25  (now called Small Business Lending); and (5) home mortgages, offered by Home Mortgage.

26  ECF No. 337 (6AC).

27          As described in greater detail in Plaintiffs' Motion for Preliminary Approval of

28  Settlement ("PA Motion"), ECF No. 324, and Motion for Approval of Attorneys' Fees, Costs

1    and Service Awards ("Fee Motion"), ECF No. 342, the litigation of these claims was hard-

2    fought.  Plaintiffs' claims survived five different motions to dismiss or strike (some of which

3    were granted with leave to amend), *see* ECF Nos. 41, 74, 75, 89, 166, 219, and the Plaintiffs and

4    Wells Fargo (jointly, "Parties") engaged in over two years of contentious discovery, which

5    included the production of nearly 70,000 pages of discovery, 12 fact and corporate depositions,

6    and six expert depositions, *see* ECF No. 342 at 15.  On November 1, 2019, Plaintiffs filed a

7    Motion to Certify the Class.  ECF No. 289.  On the eve of Wells Fargo's December 16, 2019

8    deadline to file for summary judgment and oppose class certification, the parties stipulated to

9    stay the case pending mediation.  ECF No. 307.  At the January 29, 2020 mediation in Atlanta,

10   Georgia, the Parties laid the groundwork for a settlement in principle.  *See* ECF No. 342 at 16-

11   17.  The Parties spent the next several months, with the assistance of the mediator, actively

12   engaged in settlement negotiations.  On March 4, 2020, the Parties executed a term sheet, and on

13   June 16, 2020, they executed the Settlement Agreement.  *Id*. at 17.

14       **B.**    **The Settlement Class.**

15       On August 21, 2020, the Court preliminarily approved certification of two classes for

16   settlement purposes only, defined as follows:

17       • The "**National Class**" consists of all individuals who (1) applied for credit from

18         the Wells Fargo credit card, student lending, personal lines and loans, or small

19         business LOBs between January 30, 2015 and August 21, 2020, or from the home

20         mortgage LOB between January 29, 2018 and August 21, 2020, (2) held valid and

21         unexpired DACA status at the time they applied, (3) were denied as set forth in

22         the class list data produced by Wells Fargo, and (4) were residents any U.S. state

23         other than California, or, for the home mortgage LOB, residents of any U.S. state.

24         ECF No. 339 at 4-5.

25       • The "**California Class**" consists of all individuals who (1) applied for credit from

26         the Wells Fargo credit card, student lending, or personal lines and loans LOBs

27         between January 30, 2015 and August 21, 2020, or from the home mortgage LOB

28         between January 29, 2018 and August 21, 2020, (2) held valid and unexpired

3

DACA status at the time they applied, (3) were denied as set forth in the class list data produced by Wells Fargo, and (4) were California residents.[2]

*Id.* at 6-7. Wells Fargo did not record whether loan applicants had DACA but did keep track of why it denied loan applications. Miazad FA Decl. ¶ 10. To compile the Notice List, Wells Fargo identified all applications that were denied pursuant to agreed-upon denial codes that indicated that the denial was based on lack of citizenship or permanent residence ("Specified Denial Codes"). *Id.* ¶ 9. This data was further narrowed to include only applicants with U.S. addresses and valid Social Security numbers and who were not identified as U.S. citizens or Legal Permanent Residents.[3] *Id.* ¶ 12.

### C.    The Settlement.

In connection with the Settlement, Wells Fargo has agreed to change its lending practices for its credit card, student lending, small business lending, personal lines and loans, and home mortgage LOBs to extend credit and loans to current DACA recipients on the same terms and conditions as U.S. citizens, so long as there is an appropriate product. SA § 3.2.1. As the Plaintiffs' experiences and the comments submitted by Class Members made clear, people with DACA need access to consumer, student, small business, and mortgage loans in order to participate fully in many aspects of American society, from going to college to starting a business to buying a house. The relief afforded by this Settlement makes achieving these goals a reality.

In addition to the programmatic relief, the Settlement provides payments of up to $2,500 per denial to members of the California Class, and $100 per denial to members of the National Class. To qualify for a payment, Class Members are required to submit a Verified Claim.

---

[2]    Wells Fargo, its officers, directors, and employees, and any judges to whom this action is assigned, their staffs, and their immediate families are excluded from both the California and the National Classes. *See* ECF No. 339 at 5-7.

[3]    Due to an error, Class Representative Acosta's application identified him as a United States citizen. Miazad FA Decl. ¶ 19. United States citizens were filtered out of the Notice List, so Acosta did not appear on that list. *Id.* Because Acosta (1) had DACA, (2) was denied a loan from Wells Fargo (3) within the applicable time period, and (4) the denial was recorded under the applicable denial code, this data error does not affect his Class membership. *Id.*

4

1    Submitting a Verified Claim involves two steps: first, Class Members must submit a Claim Form

2    during the claims period, and then, once the Court has granted final approval, Class Members

3    must provide the Settlement Administrator with a copy of either (1) an I-797 Approval Notice

4    from an I-821D, or (2) an Employment Authorization Card containing the code "C-33" to show

5    either current, valid and unexpired DACA status or valid and unexpired DACA status at the time

6    of a denied application ("Official Documentation"). SA § 5.2.2. The California Class will be

7    funded as follows: (1) the first 2,000 Verified Claims from California Class Members will add

8    $2,500 per claim to the fund, up to $5,000,000; (2) the next 3,000 Verified Claims from

9    California Class Members will add $2,000 per claim to the fund, up to $6,000,000; and (3) the

10   next 2,000 Verified Claims from California Class Members will add $800 per claim to the fund,

11   up to $1,600,000, with a floor of $4,700,000 and a ceiling of $12,600,000. *Id*. § 3.3.4. Each

12   Verified Claim submitted by a member of the National Class shall add $100 per claim, with a

13   floor of $50,000 and a ceiling of $500,000. *Id*. at § 3.3.7. Based on current claim numbers, and

14   pending validation, Plaintiffs expect Wells Fargo's obligation for the claims of the California

15   Class will be approximately $7,228,000 and its obligation for the claims of the National Class

16   will be approximately $259,400. *See* JND Decl. ¶ 18.

17       As set forth in greater detail in the Fee Motion, ECF No. 342, the Settlement also

18   provides service award payments of $25,000 to each Named Plaintiff, $5,000,000 in attorneys'

19   fees and costs, and up to $450,000 in settlement administration costs.

20       **D.    Notice and Claims Process.**

21           **1.    The Administrator Adhered to Class Notice Requirements.**

22       The Parties have followed the Court-approved notice plan, as set forth in the Settlement

23   and the court's Preliminary Approval Order. ECF No. 324-2 (Settlement Agreement) § 7; ECF

24   No. 339. On September 1, 2020, Wells Fargo sent the Settlement Administrator the Notice List

25   data, which consisted of 369,923 records of possible Class Members who applied for a loan from

26   Wells Fargo's EFS, CFS, Business Direct, or Home Mortgage lines of business during the

27   applicable time periods, were denied under a Specified Denial Code, and had a U.S. address and

28   Social Security number. JND Decl. ¶ 6. After de-duplication, this left 368,760 unique records.

1  *Id*. ¶ 7.  On September 25, 2020, the Settlement Administrator mailed the Court-approved

2  Notice, Claim Form, Objection Form, and Opt-Out Form (collectively, the "Notice Packet") to

3  all 368,760 potential Class Members.  *Id*. ¶ 9.  Of these mailed Notice Packets, 45,778 were

4  returned as undeliverable.  *Id*. ¶ 10.  Five thousand six hundred and thirty-five of the

5  undeliverable Notice Packet mailings included forwarding address information, and an additional

6  27,486 were re-mailed after the Settlement Administrator performed a skip-trace to find updated

7  addresses.  *Id*.  Also on September 25, 2020, the Settlement Administrator sent emails to the

8  334,770 email addresses Wells Fargo provided with the Notice List.  *Id*. ¶ 8.  Of these e-mails,

9  9,940 were returned as undeliverable.  *Id*.  In total, the Notice Packet was mailed or e-mailed and

10  not returned as undeliverable to 98.43% of the individuals on the Notice List.  *Id*. ¶ 11.

11      As noted above, the list of possible Class Members who received notice was substantially

12  overinclusive, because there was no way to distinguish in Wells Fargo's records between

13  rejected applicants who had DACA and rejected applicants who had some other form of

14  immigration documentation, such as a work or other visa that would allow them to obtain a

15  Social Security number.  Miazad FA Decl. ¶ 10.  While it is impossible to say with certainty,

16  based on available information about the number of people in the United States with DACA,

17  TPS, and work visas, Class Counsel estimate that approximately 25% of the people in the Notice

18  List are DACA recipients, meaning that approximately 92,000 Class Members were sent the

19  Notice Packet, along with approximately 276,500 people who were not members of the Class.[4]

20  *Id*. ¶ 13.

21      **2.    Thousands of Class Members Submitted Claim Forms.**

22      In accordance with the Preliminary Approval Order, the claims period ran from

23  September 25, 2020 to November 24, 2020.  *See* ECF No. 339 ¶¶ 10-11; JND Decl. ¶ 17.  The

24  Settlement Administrator received 8,555 Claim Forms, including 3,114 timely Claim Forms

25

26  [4]      At the time of Preliminary Approval, Plaintiffs estimated that the Notice List would
27  comprise approximately 330,000 individuals, and that there would be approximately 80,000
Class Members.  *See* ECF No. 324 at 25.  Because the Notice List Wells Fargo ultimately
28  produced was larger, Class Counsel has adjusted its estimated number of Class Members.
Miazad FA Decl. ¶ 11.

6

1   from individuals on the Notice List for the California Class and 2,594 timely Claim Forms from

2   individuals on the Notice List for the National Class.  JND Decl. ¶ 18.[5]  Named Plaintiffs Rodas,

3   Tabares Villafuerte, and Acosta submitted late claim forms because of an administrative

4   oversight.  Each of these Plaintiffs reviewed and signed the Settlement Agreement, which they

5   considered confirmation of their interest and intent to participate in the Settlement.  Miazad FA

6   Decl. ¶ 18.  They submitted signed Claim Forms as soon as they became aware that it was

7   required in addition to their execution of the Settlement Agreement.  *Id.*  Plaintiffs respectfully

8   request the Court's leave to include their Claim Forms as timely.  Wells Fargo consents to the

9   inclusion of these claims as timely.  *Id.*  An additional 50 Claim Forms were submitted after the

10  November 24, 2020 deadline.  *Id*. ¶ 21.  Plaintiffs respectfully request the Court's leave to

11  include these 50 claims as timely for purposes of the Settlement.  While the Settlement

12  Administrator has not investigated the precise reason for each late claim, given the particular

13  challenges of this year for so many, including unexpected illness, loss of jobs, displacement, and

14  significant additional family responsibilities, Plaintiffs believe it would be reasonable to accept

15  these claims, all received by December 21, 2020, as timely.[6]  Plaintiffs have asked Wells Fargo

16  whether they will consent to this request, and as of the date of the filing of this Motion, have not

17  yet received a response.  *Id.*

18  _____

19  [5]       In addition to the timely claims submitted in this case, 20 Claim Forms were submitted in
20  *Peña v. Wells Fargo*, No. 19. Civ. 4065 (N.D. Cal.) by people who were not on the Notice List in
    *Peña*, but were on the Notice List in this action.  Miazad FA Decl. ¶ 20.  Plaintiffs believe that
21  these Claim Forms should be considered to have been timely submitted in this action.  *Id*.
    Plaintiffs have asked Wells Fargo whether they will consent, and as of the date of the filing of
22  this Motion, have not yet received a response.  *Id*.
23  [6]       The Settlement Administrator also received 41 submissions that included both an Opt-
    Out Form and a Claim Form, and 5 submissions that included an Opt-Out Form and an Objection
24  Form.  JND Decl. ¶ 22.  Individuals who submitted these forms were sent a Cure Form, in a form
    substantially similar to the Cure Forms attached as Exhibits E and F to the JND Declaration.  In
25  addition, several submissions included an Objection Form that was not accompanied by a Claim
    Form.  Miazad FA Decl. ¶ 16. The Parties agreed that anyone who submitted an Objection Form
26  without a Claim Form prior to the end of the claims period would receive a Cure Form and have
    14 days to submit a valid Claim Form, subject to the Court's approval.  *Id*. ¶ 16.  Due to the
27  mailing date, the 14-day deadline has not passed on some of the Cure Forms.  *Id*. ¶ 17.  If
    additional Claim Forms are submitted during this period, Class Counsel will submit a
28  supplement prior to the Final Approval Hearing.  *Id*.

1          Pursuant to the Settlement Agreement, within three days of the effective date of the

2   Settlement (*i.e.*, the date on which the Final Approval Order becomes final and non-appealable,

3   *see* SA § 1.19), the Settlement Administrator will contact those individuals who have submitted a

4   Claim Form and request that they submit Official Documentation (in the form of an I-797

5   Approval Notice from an I-821D or a Work Authorization Card containing the code "C-33") to

6   demonstrate their DACA status.  SA § 5.2.2, 5.3.2.  Claimants will have 18 days to return their

7   Official Documentation and confirm their membership in the Class, at which point their Claim

8   Forms will become Verified Claim Forms.  *Id.*  The Settlement Administrator will send

9   payments to all Verified Claimants within 85 days after the Effective Date.  SA § 5.2.4, 5.3.4.

10         Class Members were also given the opportunity to either opt out or submit a comment or

11   objection on the Settlement.  To opt out of the Settlement, Class Members were required to

12   submit a completed and signed Opt-Out Form from the Notice Packet to the Settlement

13   Administrator, as well as a form of Official Documentation.  SA § 11.1.  In total, five individuals

14   submitted Opt-Out Forms that were not accompanied by a Claim Form or Objection; however,

15   only one submitted the required Official Documentation.  JND Decl. ¶ 21.  Therefore, one Class

16   Member validly opted out of the Settlement.  Forty-six people submitted both an Opt-Out Form

17   and a Claim Form or Objection.  *Id.* ¶ 22.  The Settlement Administrator sent these individuals a

18   cure notice informing them that they could not both opt out and claim or object.  *Id.* ¶ 22 & Exs.

19   E-F.  Nine people responded and withdrew their Opt-Out Forms.  *Id.* ¶ 22.  The 34 remaining

20   submissions with an Opt-Out Form and Claim Form will be counted as claims.  *Id.*

21         To submit a valid objection, Class Members were required to submit a completed and

22   signed Objection Form directly to the Court.  SA § 12.3.  These Class Members were also

23   required to provide Official Documentation directly to the Settlement Administrator, but not to

24   the Court.  *Id.*  In total, eight Objection Forms were filed with the Court.  ECF Nos. 344-350,

25   351.  Of these, only six people also submitted valid Official Documentation to the Settlement

26   Administrator, and one of these six people did not state whether he intended to appear at the

27   Final Approval Hearing, as was required for a valid objection under the Settlement, meaning that

28   a total of five objections were valid.  JND Decl. ¶ 24; *see also* ECF No. 353-3.  None of these

1    Objection Forms—either valid or not—stated a substantive disagreement with or complaint

2    about the Settlement.  ECF No. 344-50, 51.

3        In addition to the Objection Forms filed with the Court, seven timely and complete

4    Objection Forms were sent only to the Settlement Administrator.  JND Decl. ¶ 25.

5    Approximately 131 signed Objection Forms were submitted directly to the Settlement

6    Administrator and were incomplete.  *Id*. ¶ 26.  Pursuant to the terms of the Settlement

7    Agreement, none of these objections are valid.  *See* SA § 12.3.  Moreover, even if they had been

8    valid, the vast majority of Objection Forms submitted did not actually state an objection.  Based

9    on Class Counsel's review of the Objection Forms received by the Settlement Administrator,

10    approximately 101 included a signature but were blank on the part of the form that provided

11    space to state the reason for the objection.  Miazad FA Decl. ¶ 22.  Of the 35 signed Objection

12    Forms submitted directly to the Settlement Administrator that were not blank, 31 of them

13    provided comments on the Settlement or on the circumstances of the denial of credit that did not

14    indicate a substantive disagreement with or complaint about the Settlement.  *Id.* Ex. D.  Of the

15    remaining four, two do not appear to have had an application for credit that Wells Fargo rejected

16    because they are DACA recipients, and therefore are not impacted by the Settlement.  *Id*. Ex. E.

17    Only two Objection Forms state substantive objections that appear to come from Class Members.

18    The first objects to the difference between the award amounts for Class Members who reside in

19    California and Class Members who do not.  *Id*.  The second objects to the need for Class

20    Members to pay taxes on the amount of their Settlement awards.  *Id*.

21        Throughout the claims period, the Settlement Administrator received a total of 2,068 calls

22    regarding the Notice Packet and claims process.  JND Decl. ¶ 16.  In addition, the Settlement

23    Administrator set up a dual-language website in Spanish and English at

24    www.WFDACALawsuit.com to provide Class Members with information on the Settlement and

25    a portal to submit claims.  *Id*. ¶ 13.  The site received 85,930 pageviews from 20,379 unique

26    users.  *Id*. ¶ 14.  Outten & Golden and MALDEF, who together serve as Class Counsel, also

27    received nearly 150 calls and emails from potential Class Members.  Miazad FA Decl. ¶ 15.

28

3. **CAFA Notice Requirements Were Satisfied.**

On June 26, 2020, Wells Fargo satisfied its obligation to serve the appropriate settlement notice documents on the relevant federal and state attorneys general.  JND Decl. ¶ 5.  The Final Approval Hearing, set for January 8, 2021, is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

## II.    ARGUMENT

### A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).  "'[T]he rule does not insist on actual notice to all class members in all cases' and 'recognizes it might be *impossible* to identify some class members for purposes of actual notice.'"  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)).  For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing and emailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was provided to Class Members.  Although the Notice List was overinclusive, courts widely recognize that notice mailed to "a broader group than the class definition" meets the definition of the best notice practicable under the circumstances "as long as there is some link or connection between the method of class notice and the class definition."  *Victorino v. FCA US LLC*, No. 16 Civ. 1617,

10

1    2020 WL 5064295, at *2 (S.D. Cal. Aug. 27, 2020) (collecting cases).  Here, the Notice List was

2    developed from a database of all Wells Fargo applicants to the credit products at issue who were

3    denied based on their citizenship status, and then filtered by characteristics common to people

4    with DACA.  *See* Miazad FA Decl. ¶¶ 9-12.  In accordance with the Northern District's

5    Procedural Guidance for Class Action Settlements, the Notice was easily understandable, and

6    included contact information to Class Counsel, the address for the settlement administration

7    website, and instructions on how to access the case docket.  *See* ECF No. 339-1.

8          The Parties and the Settlement Administrator have complied with the notice procedures

9    of the Settlement, which the Court endorsed in its Preliminary Approval Order.  *See* ECF No.

10   339 ¶ 10.  Because Class Members have been given a full and fair opportunity to consider the

11   terms of the proposed Settlement and make an informed decision on whether to participate, the

12   Court should find that the notice was adequate and the best practicable.  *See Ford v. CEC Entm't*

13   *Inc.*, No. 14 Civ. 677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding notice

14   standards satisfied when claims administrator provided notice in accordance with the procedures

15   previously approved by the court in its preliminary approval order).

16         **B.      Final Approval Is Appropriate Under Rule 23.**

17         The touchstone for the final approval inquiry is whether the settlement is "fair, adequate

18   and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

19   component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

20   938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

21   (internal quotation marks and alterations omitted)).  Pursuant to Rule 23(e)(2), a court must

22   consider whether "(A) the class representatives and class counsel have adequately represented

23   the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is

24   adequate . . . [and] (D) the proposal treats class members equitably to each other."  In analyzing

25   whether class relief is adequate, the court must consider the costs, risks, and delay of trial and

26   appeal; the method of processing class member claims and distributing relief; the terms of any

27   attorneys' fee awards; and any agreement made in connection with the settlement proposal.  Fed.

28   R. Civ. P. 23(e)(2)(C)(i)-(iv); 23(e)(3).

This standard overlaps with the requirement set forth in *Hanlon v. Chrysler Corp.* that courts balance the following factors in assessing a class action settlement proposal:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (same). The inquiry required upon settlement is heightened where a case is settled prior to formal class certification. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019).

Because further developments between preliminary and final approval, as well as the comments of objectors, may reveal unfairness in the settlement, even a "rigorous inquiry" at the preliminary approval stage does not "convert final review to a mere formality." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016). Here, a rigorous review of the Settlement confirms that it merits final approval, as evidenced by a consideration of the factors set forth in *Hanlon*.

### 1.  Plaintiffs Faced Substantial Obstacles to Recovery.

The Parties balanced "plaintiffs' expected recovery . . . against the value of the settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal citation and quotation marks omitted). While Plaintiffs believe that they can prevail on all issues, to recover full damages and relief, they would have to certify a class, survive Wells Fargo's anticipated motion for summary judgment, and prevail at trial. The risk here is especially significant because Plaintiffs' claims raise several untested legal issues, such as whether DACA recipients qualify for the protections of Section 1981. In addition, Wells Fargo may point to specific incidents in which it extended credit to applicants with DACA through a process allowing for formal exceptions to its lending policies to argue that it did not have a uniform policy of denying loans to DACA recipients, argue that many members of the putative class may have been ineligible for credit for reasons

1    other than having DACA, or argue that its lending policies are justified because of DACA's

2    temporary and legally controversial nature.  Because it was not possible to identify with

3    specificity in Wells Fargo's records who was denied a loan because they had DACA, as opposed

4    to another immigration status, Wells Fargo could also have argued that the case presented

5    manageability issues.

6           In addition, Plaintiffs withdrew their claims for actual and economic damages under

7    Section 1981 on behalf of the National Class after consulting with economic experts who

8    determined that there were significant obstacles associated with accurately modeling money

9    damages associated with a specific denial of credit.  ECF No. 324 at 21; Miazad FA Decl. ¶ 5.

10   These obstacles included having to show that Class Members could not receive comparable

11   credit elsewhere and having to recreate the interest rate Wells Fargo would have offered Class

12   Members had they received the credit they applied for, which was based on information such as

13   credit score at the time of application that was no longer available.  Miazad FA Decl. ¶ 6.

14   Section 1981 does not have a provision for statutory damages.  As a result, at trial the National

15   Class stood to achieve only injunctive and equitable relief in the form of nominal damages.  6AC

16   ¶¶ 120-128.  Nominal damages, which "are divorced from any compensatory purpose," are

17   "damages 'in name only' and by nature minimal in amount."  *Bayer v. Neiman Marcus Grp.,*

18   *Inc.*, 861 F.3d 853, 872 (9th Cir. 2017).

19          Particularly in light of these obstacles, this Settlement offers excellent value to members

20   of the Class.  National Class Members, who have Section 1981 claims only, will receive awards

21   of $100 per denied application.  And California Class Members with claims under the Unruh Act

22   are estimated to receive awards of approximately $2,321 per denied application, which is 58

23   percent of the $4,000 statutory penalty recoverable under the statute.  Cal. Civ. Code § 52(a).

24

               **2.      The Risk, Expense, Complexity, and Delay of Further Litigation
25                        Support Final Approval.**

26          Settlement now saves Class Members from the significant risk of no recovery, the cost of

27   individual litigation, and the delay inherent in further litigation and possible appeals.  Plaintiffs'

28   claims in this action are highly complex, both procedurally and substantively.  Settling Class

1    Members' claims saves the Parties from completing briefing on class certification and briefing

2    summary judgement, as well as going to trial.  For these reasons, the law strongly favors

3    settlements, particularly where complex class litigation is concerned.  *See Class Plaintiffs v. City*

4    *of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (describing the "strong judicial policy that favors

5    settlements, particularly where complex class action litigation is concerned").  This principle is

6    particularly true where, as here, Plaintiffs' claims present "novel legal questions."  *Tumampos v.*

7    *Cathay Pac. Airways LTD*., No. 16 Civ. 6208, 2018 WL 5603702, at *5 (N.D. Cal. Sept. 21,

8    2018).

9              **3.      Plaintiffs Faced a Risk that the Court Would Deny Class
                         Certification.**

10             As noted above, Plaintiffs would have risked an adverse decision had this action

11   proceeded to the class certification stage.  Although Plaintiffs believe that this case is well-suited

12   for resolution on a class-wide basis because it involves Wells Fargo's uniform policy of denying

13   loans to DACA recipients, Wells Fargo may have argued that individual issues predominate over

14   questions that are common to the class, *see Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

15   1045 (2016), and that the ability to make exceptions to its uniform policy of denying loans to

16   DACA recipients defeated commonality.

17             **4.      The Settlement Fairly and Adequately Compensates the Class.**

18             The settlement amount, as with any settlement, represents a compromise between

19   receiving full damages and other relief on the one hand, and total defeat on the other.  "Naturally,

20   the agreement reached normally embodies a compromise; in exchange for the saving of cost and

21   elimination of risk, the parties each give up something they might have won had they proceeded

22   with litigation."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615,

23   624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  Given

24   the risks and complexity of this litigation and the cost savings obtained through settlement, the

25   compromise amount here is fair and adequate.

26             As noted above, the Settlement provides Class Members who submit a Verified Claim

27   with as substantial portion of their maximum possible recovery, along with programmatic relief

28   that effectively eliminates the harm that Plaintiffs alleged.  The financial compensation to Class

                                              14

Members of more than half of the potential maximum recovery at trial constitutes an

"exceptional result."[7] *See In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594403, at

*19 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an "exceptional

result").  The high value of the programmatic relief, which entirely eliminates the harm Plaintiffs

allege and makes a wide variety of loans available to people with DACA on the same terms as

U.S. citizens, makes the Settlement even stronger, as even "a cash settlement amounting to only

a fraction of the potential recovery will not per se render the settlement inadequate or unfair . . .

where monetary relief is but one form of the relief requested by the plaintiffs."  *Officers for

Justice*, 688 F.2d at 628.  Accordingly, the Settlement amount and programmatic relief strongly

favors granting final approval.

### 5.    The Extent of Discovery Supports Approval.

Adequate discovery is required to justify any class settlement.  Here, Class Counsel did

not settle until after the close of formal discovery, which entailed approximately 70,000 pages of

document discovery, 12 depositions of fact and corporate witnesses, and six depositions of

expert witnesses.  Miazad FA Decl. ¶ 7.  This factor strongly favors settlement.  *See, e.g.,

Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122 (9th Cir. 2020) (finding that the extent of

discovery supported settlement when "the case proceeded to nearly the close of discovery before

settling, which was 'much further than almost every other class action' for which the judge had

overseen settlement 'in the past 17 years'"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

(9th Cir. 2000) (stating the touchstone of the analysis is whether "the parties have sufficient

information to make an informed decision about settlement," including formal and informal

discovery (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998))).

---

[7]    Indeed, California courts frequently approve settlements that provide Class Members with a far lower percentage of the total maximum recovery. *See, e.g., Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 WL 344532, at *5 (N.D. Cal. Jan. 28, 2016) (granting final approval of settlement providing approximately 9.7% of total maximum potential recovery if class members had prevailed on all claims); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13 Civ. 2540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (finding that a settlement constituting 7.3% of plaintiff's estimated trial award to be "within the range of reasonableness" (quoting *Ma v. Covidien Holding, Inc.*, No. 12 Civ. 2161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014))).

1

### 6.    Counsel's Experience and Views Support Approval.

2          The judgment of experienced counsel regarding the settlement is entitled to great weight.

3   *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th

4   Cir. 1981).  "Parties represented by competent counsel are better positioned than courts to

5   produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*,

6   563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Here,

7   Class Counsel strongly endorse the Settlement as fair, adequate, and reasonable.  Class Counsel

8   are some of the most experienced and active class action litigators in the country, with extensive

9   experience in prosecuting and litigating civil rights actions.  *See* ECF No. 347-1 (Decl. of Ossai

10  Miazad Decl. in Support of Plaintiffs' Mot. for Approval of Attorneys' Fees, Costs, and Service

11  Awards) ¶¶ 4-9; ECF No. 342-5 (Declaration of Belinda Escobosa Helzer) ¶¶ 8-9.  The fact that

12  qualified and well-informed counsel endorse the Settlement as fair, reasonable, and adequate

13  favors final approval of the Settlement.  *See, e.g.*, *Campbell*, 951 F.3d at 1122 (advocacy of

14  "highly experienced" class counsel weighed in favor of settlement).

15

### 7.    Class Members Have Reacted Positively to the Settlement.

16         Class Members in this case have reacted very positively to the Settlement.  While the

17  precise number of Class Members is unknown, Plaintiffs' applied assumptions lead to an

18  estimate of 92,000 Class Members.  Approximately 5,708 submitted Claim Forms, JND Decl.

19  ¶ 18, which is approximately 6% of the estimated Class size.  This return rate falls within the 5-

20  15% Claim Form return rate that Plaintiffs estimated with the help of the Settlement

21  Administrator at Preliminary Approval, and is comparable to or greater than the claims rate in

22  other consumer settlements.  *See* ECF No. 324 at 21 (citing *Donnenfeld v. Petro, Inc.*, No. 17

23  Civ. 2310 (E.D.N.Y. Mar. 5, 2020), ECF No. 80-1 (8,074/91,807 or 8.6% of class members filed

24  claims); *In re MyFord Touch Consumer Litig.*, No. 13 Civ. 3072 (N.D. Cal. Nov. 7, 2019), ECF

25  No. 542 (claims submitted on behalf of 4.5% of class); *Edwards v. Hearst Commc'ns*, No. 15

26  Civ. 9279 (S.D.N.Y. Apr. 4, 2019), ECF No. 310 (294,748/3,930,421 or 7% of class members

27  filed claims); *see also Schneider v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 02200, 2020 WL

28  6484833, at *9 (N.D. Cal. Nov. 4, 2020) (a "0.83% claims rate . . . is on par with other consumer

1    cases").

2         In addition, only a single Class Member validly opted out of the Settlement.  JND Decl.

3    ¶ 21.  Four additional people submitted Opt-Out Forms to the Settlement Administrator but did

4    not meet the requirement to prove their membership in the Class, as set forth in the Settlement

5    Agreement.  *Id*.  Another 46 people submitted both Opt-Out and Claim or Objection Forms and

6    will be treated as members of the Class.  JND Decl. ¶ 22.  One opt-out, particularly in such a

7    large class, is extraordinarily low; even "[o]pt-out percentages of nearly 5% have been deemed

8    so 'overwhelmingly positive' as to support approval of the class action settlement."  *Quiruz v.*

9    *Specialty Commodities, Inc.*, No. 17 Civ. 3300, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9,

10   2020) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010))

11   (approving settlement where 23 class members of the 25,005 who received notice opted out).

12        Further, only five Objection Forms were filed with the Court and met all of the

13   requirements in the Settlement Agreement for validity.  JND Decl. ¶ 24.  All five of these

14   Objection Forms reported factual information about the claimant's loan denial and did not state a

15   substantive objection to the Settlement.  *See* ECF No. 344 ("Was denied a credit card on the

16   basis of 'not a U.S. Citizen' even when in possession of a valid and un-expired DACA card and

17   all appropriate papers and documentation."); ECF No. 345 ("They denied [] me multipl[e]

18   times."); ECF No. 346 ("Wells Fargo denied credit card services because of my status at the

19   time[.]  I had a valid work permit and social security [number.]  I was d[i]scriminated [against]

20   and that le[]d to depression[].");  ECF No. 347 ("I was denied some loans to improve the future

21   of my family and continue to invest in the country and continue growing with my business.");

22   ECF No. 349 ("When I originally applied for a personal loan to pay off some debts, Wells Fargo

23   in Yuba City had denied me because I had a 'DACA' social security number and I had a job to

24   pay off the loan payments if approved.").  Three other Objection Forms were also filed with the

25   Court, but the objections did meet the requirements for valid objections set forth in the

26   Settlement Agreement.  JND Decl. ¶ 24.  None of these Objection Forms stated a substantive

27   objection to the Settlement either.  ECF No. 348 ("I was part of the loans denied[], and was

28   affect[ed] by those deni[al]s."); ECF No. 350 ("I was looking for additional credit line and

17

1    because of which I had applied for credit card.  Wells Fargo denied credit card saying that I am

2    not US citizen or green card holder.  I really needed a credit access line for my spouse's MBA

3    related expenses."); ECF No. 352 ("I was denied a credit card on more than one occasion.  I was

4    told to go get a bill in my name if I wanted to establish any credit and it would still be up to the

5    bank even after.").

6        Approximately 138 Objection Forms were submitted to the Settlement Administrator but

7    not filed with the Court.  JND Decl. ¶¶ 25-26.  Of these, seven met the other requirements for

8    validity set forth in the Settlement Agreement, but were not valid because they were not filed.

9    *Id*. ¶ 24.  Based on counsel's review of the Objection Forms, 101 of them were blank.  Miazad

10   FA Decl. ¶ 22.  Another 31 included information about the loan denial, but did not make a

11   substantive objection to the Settlement.  *Id*. & Ex. D.[8]  Two appeared to be from non-Class

12   Members objecting to the fact that their claims were not included in the Settlement.  *Id*. & Ex. E.

13   Only two Objection Forms that appeared to be from Class Members stated a substantive

14   objection: one objected that claims were valued differently for California Class Members and

15   National Class Members, and the other objected to the taxability of the awards.  *Id*.  Neither of

16   these objections should impact the Court's evaluation of the Settlement.  As described in Section

17   II.B.1 and 2, *supra*, while the Unruh Act claims of the California Class were potentially subject

18   to a statutory penalty of $4,000 per violation, the Section 1981 claims of the National Class are

19   not.  The decision to value them differently in settlement acknowledged this reality, and did not

20   reflect a judgment as to the relative impact a denial of credit would have on a Class Member

21   inside and outside of California.  And the taxability of settlement awards is a matter of tax law,

22   not a product of the Settlement.

23       On the whole, the response from the Class to the Settlement was remarkably favorable,

24   with only one valid opt-out, no valid substantive objections, and only two Objection Forms

25

26   _____

     [8]        Several Objection Forms appeared to indicate an intent to claim from the Settlement but

27   were not accompanied by a Claim Form.  Cure notices in a form agreed upon by the Parties were
     sent to everyone who submitted an Objection Form without an accompanying Claim Form

28   providing them with a second opportunity to properly submit a claim.  Miazad FA Decl. ¶ 16;
     JND Decl. Ex. H (template cure notice for an Objection Form submitted without a Claim Form).

18

1    submitted that objected to a substantive settlement provision.  Courts have found a favorable

2    reaction to class settlements with far greater numbers of opt-outs or objectors.  *See, e.g.,*

3    *Churchill Village, LLC*, 361 F.3d at 577 (finding that objections from only 45 class members out

4    of 90,000 favored final approval); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (one opt-out

5    and a "handful" of objectors out of 5,400 potential class members favored final approval); *see*

6    *also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)

7    ("[T]he absence of a large number of objections to a proposed class action settlement raises a

8    strong presumption that the terms of a proposed class settlement action are favorable to the class

9    members.").  For example, the D.C. Circuit affirmed final approval of a settlement when "15%

10   of the class members objected," because that means "85% accepted the settlement" and the

11   "paramount consideration" must be "the best interests of the class as a whole."  *Thomas v.*

12   *Albright*, 139 F.3d 227, 232-33 (D.C. Cir. 1998).  Thus, "a settlement can be fair even though a

13   significant portion of the class and some of the named plaintiffs object to it."  *Id.* at 232

14   (collecting cases from the Second, Fourth, Seventh and Fifth Circuits in which settlements were

15   approved despite large portions of the class members objecting, including objections from 70%

16   of class members in one case).

17          "Settlement is the offspring of compromise; the question [courts] address is not whether

18   the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free

19   from collusion."  *Hanlon*, 150 F.3d at 1027.  Here, as in *Hanlon*, "the fact that the overwhelming

20   majority of the class willingly approved the offer and stayed in the class presents at least some

21   objective positive commentary as to its fairness." *Id*.; *see also Fraley v. Facebook, Inc*., 966 F.

22   Supp. 2d 939, 945 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th

23   Cir. 2016) (holding that "in evaluating a settlement, the question is not whether it is perfect, or

24   even whether a better result could be envisioned").  Accordingly, the Court should grant final

25   approval.

26          **8.      The Requirements for Approval Under Rule 23(e)(2) Are Met.**

27          As noted above, Rule 23(e)(2) specifies several requirements for approval of a class

28   action settlement.  Each of these requirements is met here.  **First**, Class Representatives and

                                                    19

1    Class Counsel must have adequately represented the Class.  Fed. R. Civ. P. 23(e)(2)(A).  As set

2    forth in greater detail in the PA and Fee Motions, this requirement has been met.  See ECF No.

3    324, 342.  Class Representatives have the same interests as other Class Members, and have

4    devoted hundreds of hours advocating on the Class's behalf.  *See* ECF No. 342 at 31-36.  And, as

5    noted above, Class Counsel are highly experienced and well-regarded in the field of class action

6    civil rights litigation.  *Supra* § II.B.6; *see also Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 WL

7    5395905, at *4 (S.D.N.Y. Sept. 20, 2016) (noting that Outten & Golden are "nationally

8    recognized employment class action litigators" in a Title VII disparate impact case); *Mills v.

9    Capital One, N.A.*, No. 14 Civ. 1937, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015)

10   (noting Outten & Golden's "excellent and well-deserved reputation"); *Lopez-Valenzuela v.

11   Maricopa Cty.*, No. 08 Civ. 00660, 2015 WL 12811366, at *3 (D. Ariz. June 25, 2015) (noting

12   MALDEF's "special expertise and experience in the areas of civil rights and immigration law").

13       **Second**, the Settlement was negotiated at arms' length.  Fed. R. Civ. P. 23(e)(2)(B).  The

14   Parties attended no fewer than three mediations over the course of two years with experienced

15   mediator Hunter Hughes, who is a "a nationally-respected and experienced class action neutral."

16   *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 17 Civ. 3852, 2019 WL 387409, at *1

17   (S.D. Tex. Jan. 30, 2019).  Once the Parties finally reached an agreement in principle at the

18   January 29, 2020 mediation, negotiations over a term sheet took an additional two months, and

19   the Settlement Agreement took an additional three months of negotiation after that.  Miazad FA

20   Decl. ¶ 8.  This is precisely the type of "an arms-length, non-collusive, negotiated resolution" in

21   which Ninth Circuit courts place "a good deal of stock."  *Rodriguez*, 563 F.3d at 965; *see also

22   Bert v. AK Steel Corp.*, No. 12 Civ. 467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)

23   (noting, in approving a settlement reached after a mediation with Mr. Hughes, that "participation

24   of an independent mediator in settlement negotiations virtually insures that the negotiations were

25   conducted at arm's length and without collusion between the parties").

26       **Third**, as discussed above in greater detail, the relief provided by the Settlement is

27   adequate, particularly considering the untested nature of Plaintiffs' claims.  Fed. R. Civ. P.

28   23(e)(2)(C); *supra* § II.B.1.  Settlement checks will be distributed to Class Members who

20

1    submitted valid Claim Forms within 85 days of the Effective Date of the Settlement once their

2    claims are verified pursuant to the procedures set forth in the Settlement Agreement, and Class

3    Members will have 120 days from the date of issuance to cash their checks.  SA § 5.3.4.

4    Attorneys' fees, which are described in greater detail in the Fee Motion, ECF No. 342, will be

5    paid 21 days after the Effective Date, *id*. § 15.1.4.

6            **Fourth**, the Settlement treats similarly-situated Class Members the same.  All California

7    Class Members who submit Verified Claim Forms will receive awards in the amount of

8    approximately $2,321 for each application that Wells Fargo denied.  Miazad FA Decl. ¶ 14; *see*

9    *also* SA §§ 1.47, 3.3.2.  All National Class Members who submit Verified Claim Forms will

10   receive awards in the amount of approximately $100 for each application that Wells Fargo

11   denied.  Miazad FA Decl. ¶ 14; *see also* SA §§ 1.47, 3.3.5.  As described above, *supra* § II.B.7,

12   the difference in award amounts for the different subclasses is justified by the difference in

13   possible financial recovery for claims brought under the Unruh Act and claims brought under

14   Section 1981.

15           **C.     Class Counsel Have Incurred Additional Costs Since Filing Their Fee**
16           **         Petition.**

17           On September 25, 2020, Plaintiff filed a Motion for Attorneys' Fees, Costs, and Service

18   Awards.  ECF No. 342.  As of that date, Class Counsel had incurred a total lodestar of

19   $4,799,771.50, and costs amounting to $321,482.54.  *Id*. at 7-8.  In the last three months, Class

20   Counsel has incurred an additional $75,523.50 in fees and an additional $3,095.96 in costs, for a

21   total of $4,875,295.00 in fees and $324,578.50 in costs.  Miazad FA Decl. ¶ 23 & Exs. A-C.

22   These amounts will increase through the completion of the claims and settlement distribution

23   process.  *Id.* ¶ 22.

24           **D.     The Court Should Certify the Class as Final.**

25           The Court's Preliminary Approval Order provisionally certified the Settlement Class

26   pursuant to Rule 23(a) and (b)(3).  PA Order ¶ 6.  The Court ruled that, for the purposes of the

27   Settlement, the Class meets Rule 23's requirements.  *Id*.  The Court also conditionally

28   appointed Plaintiffs Rodas, Acosta, Tabares Villafuerte, and Diaz Vedoy as Class

21

1    Representative and Plaintiffs' counsel as Class Counsel.  *Id.* ¶ 7.

2         The Settlement has drawn a very favorable response from the Class.  For the foregoing

3    reasons and the reasons set forth in Plaintiff's Preliminary Approval Motion, Plaintiffs

4    respectfully request that the Court grant Final Approval to the Settlement, grant final

5    certification to the Class, designate Plaintiffs Rodas, Acosta, Tabares Villafuerte, and Diaz

6    Vedoy as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

7

8

9    Dated: December 23, 2020                         Respectfully submitted,

10                                                    By:  /s/ *Ossai Miazad*
                                                             Ossai Miazad

11

12                                                    Ossai Miazad*
                                                      OUTTEN & GOLDEN LLP
13                                                    685 Third Avenue, 25th Floor
                                                      New York, NY 10017
14                                                    Telephone: (212) 245-1000
                                                      Facsimile:  (646) 509-2060
15                                                    om@outtengolden.com

16                                                    Daniel S. Stromberg*
                                                      Hannah Cole-Chu*
17                                                    OUTTEN & GOLDEN LLP
18                                                    601 Massachusetts Avenue, 200W
                                                      Washington, D.C. 20001
19                                                    Telephone: (202) 847-4400
                                                      Facsimile:  (202) 847-4410
20                                                    dstromberg@outtengolden.com
                                                      hcolechu@outtengolden.com
21

22                                                    Jahan C. Sagafi (Cal. Bar No. 224887)
                                                      Rachel Dempsey (Cal. Bar No. 310424)
23                                                    OUTTEN & GOLDEN LLP
                                                      One California St., 12th Floor
24                                                    San Francisco, CA 94111
                                                      Telephone: (415) 638-8800
25                                                    Facsimile:  (415) 638-8810
                                                      jsagafi@outtengolden.com
26                                                    rdempsey@outtengolden.com

27

28                                                    Thomas A. Saenz (Cal. Bar No. 159430)
                                                      Belinda Escobosa Helzer (Cal. Bar

22

1   No. 214178)
    MEXICAN AMERICAN LEGAL
2   DEFENSE AND EDUCATIONAL
    FUND
3   634 S. Spring St., 11th Floor
4   Los Angeles, CA 90014
    Telephone: (213) 629-2512
5   Facsimile:  (213) 629-0266
    tsaenz@maldef.org
6   bescobosa@maldef.org

7
    Tanya Gabrielle Pellegrini (Cal. Bar No.
8   285186)
    MEXICAN AMERICAN LEGAL
9   DEFENSE AND EDUCATIONAL
    FUND
10  1512 14th Street
    Sacramento, CA 95814
11  Telephone: (916) 444-3031
    tpellegrini@maldef.org
12

13  *admitted *pro hac vice*

14  *Attorneys for Plaintiffs and the
    Proposed Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

23